MERRICK B. GARLAND
Attorney General

PHILIP R. SELLINGER
United States Attorney

MICHAEL E. CAMPION
Chief
SUSAN MILLENKY
Assistant U.S. Attorney
Civil Rights Division
U.S. Attorney's Office
970 Broad Street
Newark, NJ 07102
(973) 645-2700

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

SAMEENA SHINA MAJEED
Chief
JON M. SEWARD
Principal Deputy Chief
MARTA CAMPOS
JENNIFER A. SLAGLE PECK
Trial Attorneys
Housing and Civil Enforcement Section
950 Pennsylvania Ave. NW – 4CON
Washington, DC 20530
(202) 514-4713

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff,*<br><br>v.<br><br>LAKELAND BANK,<br><br>*Defendant.* | Civil Action No.<br><br>**COMPLAINT AND JURY DEMAND** |

## INTRODUCTION

1.     The United States of America (the "United States") brings this action against Lakeland Bank ("Lakeland" or the "Bank") under the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601–3619 and the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691–1691f to remedy discrimination in Lakeland's residential

mortgage lending.

2.     The FHA and ECOA prohibit creditors, such as banks, from discriminating in home loans on the basis of race, color, national origin, and other characteristics.  Under the FHA, it is unlawful to discriminate against any person in making available residential real estate-related credit transactions, in making available or denying a dwelling, and in the terms, conditions, or privileges of sale of a dwelling or the provision of services in connection with such a sale, on the basis of race, color, national origin, and other characteristics.  42 U.S.C. §§ 3604(a)–(b), 3605(a).  ECOA and its implementing regulation, Regulation B, 12 C.F.R. pt. 1002, make it unlawful for a creditor to discriminate against an applicant in any aspect of a credit transaction on the basis of race, color, national origin, or other prohibited bases.  ECOA and Regulation B also prohibit any statements, acts, or practices that would discourage on a prohibited basis a prospective applicant from applying for credit.  15 U.S.C. § 1691(a); 12 C.F.R. § 1002.4(b); 12 C.F.R. pt. 1002, Supp. I, ¶ 4(b)(1).

3.     "Redlining" is one type of discrimination prohibited under the FHA and ECOA.  Redlining occurs when lenders deny or discourage applications by avoiding providing loans and other credit services in neighborhoods based on the race, color, or national origin of the residents of those neighborhoods.

4.     From 2015 through at least 2021 (the "Relevant Time Period"), Lakeland engaged in a pattern or practice of unlawful redlining.  As alleged in detail herein, Lakeland avoided providing home loans and other mortgage services in

2

majority-Black and Hispanic neighborhoods in the Newark, NJ-PA Metro Division, as delineated in 2015 (Newark MD).[1]  Lakeland thereby discriminated against applicants and prospective applicants living in, or seeking credit to purchase properties in, majority-Black and Hispanic neighborhoods in the Newark MD. Lakeland also engaged in acts or practices directed at applicants and prospective applicants that discouraged those living in, or seeking credit to purchase properties in, these neighborhoods from seeking or applying for credit from Lakeland.

5.      During the Relevant Time Period, Lakeland's redlining practices included locating and maintaining all of its branches in the Newark MD outside of majority-Black and Hispanic neighborhoods, creating an assessment area within the Newark MD that excluded the majority-Black and Hispanic neighborhoods in Essex, Somerset, and Union counties, and largely excluding majority-Black and Hispanic neighborhoods from its marketing and outreach efforts. As a result of these practices, Lakeland discouraged applicants and prospective applicants, generated disproportionately low numbers of loan applications and home loans from majority-Black and Hispanic neighborhoods in the Newark MD compared to similarly-situated lenders.

6.      Lakeland's conduct and practices were intended to deny, and had the effect of denying, equal access to home loans for those residing in, or seeking credit for properties located in, majority-Black and Hispanic neighborhoods, and otherwise

---

[1] In 2019, Somerset County was removed from the Newark MD but remains part of the relevant geographic area.

discouraged such individuals from applying for home loans on the basis of the race, color, or national origin of the residents of those neighborhoods. The Bank's conduct was not justified by a business necessity and was not necessary to achieve a substantial, legitimate, non-discriminatory interest.

7.     Lakeland's conduct and practices reinforced and perpetuated segregated housing patterns because of race, color, or national origin. Lakeland's conduct was not justified by a legitimate, nondiscriminatory reason or business necessity and was not necessary to achieve a substantial, legitimate, nondiscriminatory interest.

## JURISDICTION AND VENUE

8.     This Court has subject-matter jurisdiction over this action. The action arises under federal laws, 42 U.S.C. § 3614(a), 15 U.S.C. § 1691e(h); it presents a federal question, 28 U.S.C. § 1331; and the United States brings this action as plaintiff, 28 U.S.C. § 1345.

9.     Venue is proper in this district under 28 U.S.C. § 1391 because Lakeland's principal place of business is located within this judicial district and Lakeland conducts business in, and a substantial part of the events or omissions giving rise to the claims occurred in, this judicial district.

## PARTIES

10.     The United States brings this action to enforce the provisions of the FHA and ECOA. The FHA and ECOA authorize the Attorney General to bring a civil action in federal district court whenever he has reason to believe that an entity

is engaged in a pattern or practice of resistance to the full enjoyment of rights secured by the FHA and ECOA. 42 U.S.C. § 3614(a); 15 U.S.C. § 1691e(h). The FHA further authorizes the Attorney General to bring suit when the defendant has denied rights to a group of persons and that denial raises an issue of general public importance. 42 U.S.C. § 3614(a).

11. Defendant Lakeland Bank is a bank headquartered in Newfoundland, New Jersey that offers lending, depository, and related financial services throughout central and northern New Jersey and portions of the Hudson Valley region of New York. As of June 30, 2022, the Bank operated 68 full-service branches in New Jersey and New York, of which 23 were in the Newark MD and 3 were in Somerset County. As of June 30, 2022, Lakeland's total assets equaled $10.4 billion.

12. Lakeland is subject to the regulatory authority of the Federal Deposit Insurance Corporation (the "FDIC").

13. Lakeland is subject to the FHA, ECOA, and their respective implementing regulations, 24 C.F.R. pt. 100, and Regulation B.

14. Lakeland is a "creditor" within the meaning of ECOA, 15 U.S.C. § 1691a(e), and is an entity whose business includes engaging in "residential real estate-related transactions" under the FHA, 42 U.S.C. § 3605.

## FACTUAL ALLEGATIONS

### The Newark MD and Lakeland's Assessment Area

15. At various points during the Relevant Time Period, the Newark MD included six counties in New Jersey and one county in Pennsylvania: Essex,

5

Hunterdon, Morris, Somerset,[2] Sussex, and Union counties in New Jersey and Pike County in Pennsylvania.

16.     The Newark MD has over 2.1 million residents.  According to data from the United States Census Bureau, in 2020, the region was 50 percent non-Hispanic white ("white"), 20 percent non-Hispanic Black ("Black"), and 21% Hispanic or Latino.

17.     In 2015 and 2016, 207 of the 571 census tracts in the Newark MD were majority-Black and Hispanic.  In 2017, the 5-year American Community Survey showed there was a slight increase in the number of majority-Black and Hispanic census tracts from 207 to 212.  In 2019 through 2021, after Somerset County was removed from the Newark MD, the total number of tracts in the MD dropped to 503 tracts.  In 2019 and 2020, 204 of the 503 census tracts of the newly delineated MD were majority-Black and Hispanic and 8 of the 68 tracts in Somerset County were majority-Black and Hispanic.

18.     Throughout the Relevant Time Period, over 35% percent of census tracts in the Newark MD were majority-Black and Hispanic.  As used in this Complaint, a "majority-Black and Hispanic" tract is one where more than 50 percent of the residents are identified as either "Black or African American" or "Hispanic or Latino" by the United States Census Bureau.  A "majority-white" tract is one where more than 50 percent of the residents are identified as "non-Hispanic white" by the

---

[2] *See supra* n.1.

United States Census Bureau.[3]

19.     As a depository bank, Lakeland is subject to the requirements of the Community Reinvestment Act ("CRA"), 12 U.S.C. §§ 2901–2908, and its enabling regulations, which require covered banks to meet the credit needs of the communities that they serve.   Each bank subject to the CRA self-identifies the communities that it serves in the bank's "assessment areas."   Federal regulators look at a bank's assessment area in evaluating whether an institution is meeting the credit needs of its entire community.

20.     As of 2021, Lakeland's assessment area included some, but not all, of the counties in the Newark MD.  Some of the counties in the Newark MD, including Essex, Somerset, and Union counties, were only partially included in Lakeland's assessment area.   Lakeland's assessment area included majority-white areas of Essex, Somerset, and Union counties and excluded the portions of those counties that contain majority-Black and Hispanic neighborhoods.   Indeed, none of the majority-Black and Hispanic tracts in Somerset County and Union County were included in Lakeland's assessment area, and Lakeland only included a small fraction of the majority-Black and Hispanic tracts in Essex County in its assessment

---

[3] The complaint uses "majority-Black and Hispanic census tract," "majority-Black and Hispanic area," and "majority-Black and Hispanic neighborhood" interchangeably. The complaint does the same for "majority-white tract," "majority-white area," and "majority-white neighborhood." A "majority-minority" census tract is one where more than 50 percent of the residents identify as something other than non-Hispanic white. A "high-minority" tract is one where more than 80 percent of the residents identify as something other than non-Hispanic white.

area.  In 2015 and 2016, 10 of the 137 majority-Black and Hispanic tracts in Essex County were included in Lakeland's assessment area.  In 2017 through 2021, 11 of the 141 majority-Black and Hispanic tracts in Essex County were included in the Lakeland's assessment area.

21.     Newark, the largest city in New Jersey, is located in Essex County and accounts for a significant share of the Black and Hispanic populations in the Newark MD.  Essex County has 210 census tracts, of which over 65% are majority-Black and Hispanic.

22.     The United States' claims are limited to Essex, Morris, Somerset, Sussex, and Union counties in New Jersey ("the Newark Lending Area").

**Lakeland Has No Branches in Majority-Black and Hispanic Neighborhoods**

23.     Lakeland was founded in 1969 and has grown significantly since 2014 due to increases in loan size and volume, as well as through acquisitions of other banks.

24.     As of December 31, 2021, Lakeland had 49 full-service branches in New Jersey and New York.  Of those branches, 25 were located in the Newark Lending Area.

25.     During the Relevant Time Period, and accounting for branch openings and closings, Lakeland operated a total of 39 branches in the Newark Lending Area. None of those branches were located in a majority-Black and Hispanic census tract. *See* Exhibit A (depicting Lakeland's branches in the Newark Lending Area from 2015 to 2021).

8

26. Lakeland knew its branches were not serving the credit needs of majority-Black and Hispanic areas but did not take meaningful steps to address this failure for years.

27. By concentrating all of its branches outside of majority-Black and Hispanic neighborhoods, Lakeland discouraged residents of, or those seeking credit for properties located in, majority-Black and Hispanic neighborhoods from applying for and obtaining home loans and restricted their access to the Bank's credit and mortgage lending services.

**Lakeland Relied on Mortgage Loan Officers Concentrated in Majority-White Neighborhoods in Lieu of Advertising to Majority-Black and Hispanic Neighborhoods to Generate Mortgage Loan Applications**

28. During the Relevant Time Period, Lakeland's mortgage loan officers served the credit needs of majority-white neighborhoods but did not serve the credit needs of majority-Black and Hispanic neighborhoods in the Newark Lending Area.

29. During the Relevant Time Period, all of Lakeland's branches within the Newark Lending Area were located in majority-white census tracts, and none of the loan officers at those branches were assigned to target customers within majority-Black and Hispanic neighborhoods.

30. In the majority-white neighborhoods in the Newark Lending Area, where mortgage loan officers were assigned branch offices, residential mortgage lending services were available to walk-in customers. These services were not available in majority-Black and Hispanic neighborhoods in the Newark Lending

Area.

31.   During the Relevant Time Period, Lakeland relied almost entirely on mortgage loan officers, all but one of whom were assigned offices in branches in majority-white neighborhoods, to develop referral sources, conduct outreach to potential customers, and distribute marketing materials related to the Bank's residential mortgage lending services.

32.   The Bank did not monitor nor document the locations where its mortgage loan officers developed referral sources or to whom loan officers distributed marketing or outreach materials related to residential mortgage lending services to ensure that such sources or distribution occurred in all neighborhoods throughout the Newark Lending Area.

33.   The Bank took no meaningful steps to supplement the efforts of mortgage loan officers to generate mortgage applications from majority-Black and Hispanic areas in the Newark Lending Area.

34.   It was not until December 2020 that Lakeland directed marketing efforts to majority-Black and Hispanic neighborhoods in Essex County and Union County.  Even then, the marketing campaign was minimal and did not lead to a significant increase in customers in majority-Black and Hispanic neighborhoods in the Newark Lending Area.

**Lakeland's Inadequate Internal Fair-Lending Monitoring**

35.   During the Relevant Time Period, Lakeland's internal fair lending policies and procedures were inadequate to ensure that the Bank was positioned to

10

provide equal access to credit to majority-Black and Hispanic neighborhoods in the Newark Lending Area.

36.    Lakeland's own fair lending assessment indicated that, as far back as 2015, the Bank knew of its redlining risk but failed to address the issue.  Specifically, by 2015, the Bank was aware of shortfalls in applications between Lakeland and its peer lenders in majority-Black and Hispanic neighborhoods and shortfalls in applications from individuals identifying as Black or Hispanic compared to the local demographics and aggregate HMDA averages.  The Bank's internal fair lending reviews made similar observations throughout the Relevant Time Period.

37.    The Bank formed a Community Development Action Committee in 2017, with the goal of improving the Bank's lending performance in low- and moderate-income areas ("LMI") and majority-minority and high-minority areas, but significant shortfalls between the Bank and its peer lenders persisted.

38.    Despite knowing of disparities between applications received from majority-white areas and majority-Black and Hispanic areas, Lakeland failed to conduct meaningful outreach or marketing directed toward borrowers within majority-Black and Hispanic neighborhoods.

**Disproportionately Low Numbers of Home Loan Applications from Majority-Black and Hispanic Neighborhoods in the Newark Lending Area**

39.    Lakeland's acts and lending policies and practices, including those alleged in Paragraphs 15 to 38, have discouraged applicants and prospective applicants in majority-Black and Hispanic neighborhoods in the Newark Lending

11

Area from applying for home loans and other mortgage-related services.

40.    Lakeland's own data on loan applications and originations that it is required to report to regulators under the Home Mortgage Disclosure Act of 1975 ("HMDA"), 12 U.S.C. §§ 2801–2811, confirms that Lakeland has avoided serving majority-Black and Hispanic neighborhoods. *See* Exhibit B (depicting Lakeland's applications from majority-Black and Hispanic tracts in the Newark Lending Area from 2015 to 2021).

41.    During the Relevant Time Period, Lakeland significantly underperformed its "peer lenders" in generating home loan applications from majority-Black and Hispanic areas in the Newark Lending Area. "Peer lenders" are similarly-situated financial institutions that received between 50 percent and 200 percent of the Bank's annual volume of home loan applications.

42.    The disparity between the rate of applications generated by Lakeland and the rate generated by its peer lenders from majority-Black and Hispanic areas is both statistically significant—meaning unlikely to be caused by chance—and sizable across the seven-year Relevant Time Period.

43.    During the Relevant Time Period, Lakeland received 5,957 HMDA-reportable mortgage loan applications within the Newark Lending Area.  Of those applications, 4.7 percent came from individuals seeking credit for properties located in majority-Black and Hispanic census tracts.  By contrast, during the same time period, Lakeland's peers generated 25 percent of their 226,075 total applications from individuals seeking credit for properties located in these same majority-Black

and Hispanic census tracts.

44.   In other words, Lakeland's peers generated applications from individuals seeking credit for properties located in majority-Black and Hispanic census tracts at over 5 times the rate of Lakeland.  When disparities were calculated for individual years, Lakeland's peers generated applications at a rate between 3.1 and 8.3 times the rate of Lakeland.  These disparities are statistically significant— meaning, unlikely to have been produced by chance—in every year analyzed across the seven-year Relevant Time Period.

45.   The statistically significant disparities between home loan applications Lakeland generated from majority-Black and Hispanic neighborhoods and those that its peers generated show that Lakeland's low rate of applications in majority-Black and Hispanic areas in the Newark Lending Area cannot be attributed to a lack of individuals seeking credit for properties located in those areas.  Lakeland had no legitimate, non-discriminatory reason to draw so few applications from these areas.

46.   These figures show a statistically significant failure by Lakeland, relative to its peer lenders, to draw home loan applications from and provide residential mortgage services to residents of, and those seeking credit for properties located in, majority-Black and Hispanic census tracts in the Newark Lending Area on a non-discriminatory basis during the Relevant Time Period.

### Disproportionately Low Number of Home Loans Made in Majority-Black and Hispanic Neighborhoods of the Newark Lending Area

47.   In addition to discouraging applicants and prospective applicants from

applying for home loans, Lakeland's acts and lending policies and practices, including those alleged in Paragraphs 15 to 46, have also discouraged applicants and prospective applicants in majority-Black and Hispanic neighborhoods from obtaining home loans and other mortgage-related services. As a result, the Bank made a smaller percentage of HMDA-reportable residential mortgage loans in these neighborhoods compared to its peers from 2015 through 2021. *See* Exhibit C (depicting Newark's loan originations from majority-Black and Hispanic tracts in the Newark Lending Area from 2015 to 2021).

48.     From 2015 to 2021, Lakeland made 3,887 HMDA-reportable residential mortgage loans in the Newark Lending Area. Of those loans, 3.9 percent were made to residents of majority-Black and Hispanic census tracts. By contrast, Lakeland's peers made over 20 percent of their 132,255 total HMDA-reportable residential mortgage loans in the same area to residents of majority-Black and Hispanic census tracts—more than 5 times the rate of Lakeland.

49.     When disparities were calculated for individual years, Lakeland's peers made loans at a rate between 2.5 and 6.8 times the rate of Lakeland. The disparities are statistically significant for each individual year across the seven-year Relevant Time Period.

50.     The statistically-significant disparities between the number of home loans Lakeland made from majority-Black and Hispanic neighborhoods and those that its peers made show that Lakeland's low rate of lending in majority-Black and Hispanic areas in the Newark Lending Area cannot be attributed to a lack of

14

individuals seeking credit for properties located in those areas. Lakeland had no legitimate, non-discriminatory reason to make so few home loans from these areas.

51.   These figures show a statistically significant failure by Lakeland, relative to its peer lenders, to make home loans and provide residential mortgage services to residents of, and those seeking credit for properties located in, majority-Black and Hispanic census tracts in the Newark Lending Area on a non-discriminatory basis during the Relevant Time Period.

52.   Lakeland's discriminatory practices as described herein were intended to discriminate and have had the effect of discriminating on the basis of race, color, and national origin.

## COUNT I – VIOLATION OF THE FAIR HOUSING ACT

53.   The United States incorporates all prior paragraphs of the Complaint as if fully set forth herein.

54.   Lakeland's policies and practices constitute the unlawful redlining of majority-Black and Hispanic communities in the Newark Lending Area on account of the racial and national origin composition of those communities. Lakeland's policies and practices were intended to deny, and had the effect of denying, equal access to home loans to residents of majority-Black and Hispanic communities and those seeking credit for properties located in those communities. The Bank's conduct was not justified by a business necessity or legitimate business considerations.

55.   Lakeland's actions as alleged herein constitute:

      a.   Discrimination on the basis of race, color, and national origin in

making available residential real estate-related transactions, or in the terms or conditions of residential real estate-related transactions, in violation the Fair Housing Act, 42 U.S.C. § 3605(a), and its implementing regulations, 24 C.F.R. §§ 100.110(b), 100.120;

b.     The making unavailable or denial of dwellings to persons because of race, color, and national origin, in violation of the Fair Housing Act, 42 U.S.C. § 3604(a), and its implementing regulations, 24 C.F.R. § 100.50(b)(3);

c.     Discrimination on the basis of race, color, and national origin in the terms, conditions, or privileges of the sale or rental of dwellings, or the provision of services or facilities in connection with the sale or rental of dwellings, in violation of the Fair Housing Act, 42 U.S.C. § 3604(b), and its implementing regulations, 24 C.F.R. §§ 100.50(b)(2), 100.65.

56.     Lakeland's policies and practices as alleged herein constitute:

a.     A pattern or practice of resistance to the full enjoyment of rights secured by the FHA; and

b.     A denial of rights granted by the FHA to a group of persons that raises an issue of general importance.

57.     Lakeland's pattern or practice of discrimination was intentional and willful and was implemented with reckless disregard for the rights of individuals

16

based on their race, color, and national origin.

58.     Persons who have been victims of Lakeland's discriminatory policies and practices are "aggrieved" as defined in 42 U.S.C. § 3602(i), and may have suffered damages as a result of the Bank's conduct in violation of the Fair Housing Act, as described above.

## COUNT II –VIOLATION OF THE EQUAL CREDIT OPPORTUNITY ACT

59.     The United States incorporates all prior paragraphs of the Complaint as if fully set forth herein.

60.     Lakeland's policies and practices as alleged herein constitute unlawful discrimination against applicants and prospective applicants, including by redlining majority-Black and Hispanic communities in the Newark Lending Area and engaging in acts and practices directed at prospective applicants that would discourage prospective applicants from applying for credit on the basis of race, color, and national origin in violation of ECOA and Regulation B.  15 U.S.C. § 1691 *et seq*; 12 C.F.R. § 1002.4(a)–(b).

61.     Lakeland's policies and practices as alleged herein constitute a pattern or practice of discrimination and discouragement and resistance to the full enjoyment of rights secured by the Equal Credit Opportunity Act, 15 U.S.C. § 1691e(h).

62.     Lakeland's pattern or practice of discrimination was intentional and willful and was implemented with reckless disregard for the rights of individuals based on their race, color, and national origin.

17

63.     Persons who have been victims of Lakeland's discriminatory policies and practices are "aggrieved" as defined in 15 U.S.C. § 1691e(i), and may have suffered damages as a result of the Bank's conduct in violation of the Equal Credit Opportunity Act, as described above.

## REQUEST FOR RELIEF

WHEREFORE, the United States requests that the Court enter an order that:

(1)     Declares that the conduct of Defendant Lakeland Bank violates the Fair Housing Act;

(2)     Declares that the conduct of Defendant Lakeland Bank violates the Equal Credit Opportunity Act;

(3)     Enjoins Defendant, its officers, agents, servants, employees, assignees, and successors in interest, and all other persons in active concert or participation with Defendant, from:

A.     Discriminating on account of race, color, or national origin in any aspect of their lending business practices;

B.     Discouraging applicants or prospective applicants on account of race, color, or national origin;

C.     Failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the victims of Defendant's unlawful practices to the position they would be in but for the discriminatory conduct;

D.     Failing or refusing to take such affirmative steps as may be necessary

18

to prevent the recurrence of any discriminatory conduct in the future and to eliminate, to the extent practicable, the effects of Defendant's unlawful practices, and providing policies and procedures to ensure all segments of Defendant's market areas are served without regard to prohibited characteristics;

(4)    Awards monetary damages against Defendant in accordance with 42 U.S.C. § 3614(d)(1)(B) and 15 U.S.C. §§ 1691c(a)(9), 1691e(h).

(5)    Assesses a civil penalty against Defendant in an amount authorized by 42 U.S.C. § 3614(d)(1)(C), in order to vindicate the public interest; and

(6)    Awards the United States any additional relief the interests of justice may require.

**JURY DEMAND**

The United States demands a trial by jury of all issues triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated:  September 28, 2022

Respectfully submitted,

MERRICK B. GARLAND
Attorney General

PHILIP R. SELLINGER
United States Attorney

*s/ Michael E. Campion*
MICHAEL E. CAMPION
Chief
*s/ Susan Millenky*
SUSAN MILLENKY
Assistant U.S. Attorney
Civil Rights Division
U.S. Attorney's Office
970 Broad Street
Newark, NJ 07102
Phone: (973) 645-2700
Fax: (973) 297-2010
Emails:
michael.campion@usdoj.gov
susan.millenky@usdoj.gov

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

SAMEENA SHINA MAJEED
Chief
JON M. SEWARD
Principal Deputy Chief

*s/ Marta Campos*
MARTA CAMPOS
*s/ Jennifer A. Slagle Peck*
JENNIFER A. SLAGLE PECK
Trial Attorneys
Housing & Civil Enforcement Section
950 Pennsylvania Ave. NW – 4CON
Washington, DC 20530
Phone: (202) 514-4713
Fax: (202) 514-1116
E-mails:
marta.campos@usdoj.gov
jennifer.slagle.peck@usdoj.gov

*Attorneys for Plaintiff United States of America*