UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LAKELAND BANK,<br><br>Defendant. | Civil Action No. 2:22-cv-05746 |

## CONSENT ORDER

## I.   INTRODUCTION

The Parties jointly submit this Consent Order for approval and entry by the Court.  The Order resolves all claims of the United States of America ("United States") simultaneously filed in a Complaint, alleging that Lakeland Bank ("Lakeland" or "the Bank") engaged in a pattern or practice of unlawful redlining in violation of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601–3619, and the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691–1691f, Regulation B, 12 C.F.R. § 1002.1 *et seq.*, by discriminating on the basis of race, color, and national origin.  Specifically, the United States alleges that Lakeland engaged in illegal redlining by avoiding providing home loans and other mortgage services, and engaged in discrimination and conduct that would discourage mortgage applications from prospective applicants who are residents of or seeking credit in majority-Black and Hispanic census tracts in its Assessment Area ("AA") located within the Newark, NJ-PA Metro Division, as constituted in 2015 ("the Newark MD").[1]

---

[1] In 2015-2016, the Newark MD included Essex, Morris, Somerset, Sussex, and Union counties in

The Court has jurisdiction over the Parties and subject matter of this action. There have been no factual findings or adjudication in this case. The Parties enter into this Consent Order to voluntarily resolve all claims arising from the conduct alleged in the Complaint. Entry of this Consent Order is in the public interest. The Parties agree that the full implementation of the terms in this Consent Order will provide a resolution to the claims asserted in the Complaint in a manner consistent with Lakeland's legitimate business interests. The Bank neither admits nor denies any of the allegations in the Complaint except that, for the purposes of this Consent Order, the Bank admits facts necessary to establish this Court's jurisdiction over it and over the subject matter of this action.

## II.    BACKGROUND

Lakeland is a state-chartered bank headquartered in Newfoundland, New Jersey. Lakeland offers commercial, consumer, mortgage, and wealth management banking services. As of June 30, 2022, Lakeland had 68 full-service branches in New Jersey and New York, 23 of which are in the Newark MD and three are in Somerset County, New Jersey. The Newark MD is within the New York-Newark-Jersey City, NY-NJ-PA Metropolitan Statistical Area. As of June 30, 2022, Lakeland had total assets of $10.4 billion. Lakeland is a wholly-owned subsidiary of Lakeland Bancorp, Inc., a holding company.

By letter dated December 14, 2021, the United States notified Lakeland that it was opening an investigation into whether Lakeland had engaged in unlawful redlining in violation of the FHA and ECOA. After conducting its investigation and reviewing the information provided by the Bank, the United States contends that, between 2015 and 2021, Lakeland avoided serving the credit needs of borrowers in majority-Black and Hispanic census tracts in the Newark MD and discouraged borrowers in majority-Black and Hispanic census tracts in the Newark MD from obtaining mortgage

---

New Jersey. In 2019, Somerset County was removed from the Newark MD, but remains in the relevant geographic area of this Order.

loans, while acting to serve the credit needs for mortgage loans in majority-white census tracts.

## III.    TERMS OF THE ORDER

### A.    Lending Practices

1.    Lakeland, including all of its officers, agents, servants, employees, and all other persons in active concert or participation with them who have actual notice of this Consent Order, assignees, and successors in interest, is hereby enjoined from engaging in any act or practice that discriminates on the basis of race, color, or national origin that: (a) violates the FHA in any aspect of a residential real estate-related transaction; or (b) violates ECOA and Regulation B in any aspect of a credit transaction.

2.    Lakeland will ensure that it offers and provides all persons with an equal opportunity to apply for and obtain credit, regardless of the demographic composition of the area in which a person lives or the location of the property securing the loan.

3.    For purposes of this Consent Order, Lakeland's "Newark Lending Area" consists of the entirety of Essex, Morris, Somerset, Sussex, and Union counties in New Jersey.

4.    For purposes of this Consent Order, a "majority-Black and Hispanic" census tract is one where more than 50 percent of the residents are identified as either "Black or African American" or "Hispanic or Latino" by the United States Census Bureau.  A "majority-white" census tract is one where more than 50 percent of the residents are identified as "non-Hispanic white" by the United States Census Bureau.

### B.    Fair Lending Compliance

5.    The date this Consent Order is entered by the Court is the "Effective Date."  Within 90 days of the Effective Date, Lakeland must conduct a detailed assessment of Lakeland's fair lending program in the Newark Lending Area, specifically as it relates to fair lending obligations and lending in majority-Black and Hispanic census tracts.  Lakeland must produce a written report ("Fair Lending

Status Report and Compliance Plan") that includes a review of Lakeland's existing fair lending policies and practices, an analysis of Lakeland's policies and practices related to branch locations; loan officers' solicitation of applications, training, oversight, and compensation; loan officer recruitment, including recruitment of loan officers of color; marketing; and fair lending compliance monitoring.

6.    Within 120 days of the Effective Date, Lakeland will submit the Fair Lending Status Report and Compliance Plan described in Paragraph 5 to the United States, subject to its non-objection.  The Fair Lending Status Report and Compliance Plan will specifically include, at least:

    a.   A description of steps Lakeland has taken to revise all of Lakeland's mortgage lending policies and practices that pose redlining risks, including at a minimum, risk that may arise from branch locations or assignment of loan officers to office locations; types of loan products; and marketing;

    b.   The adopted written policies and procedures regarding training and monitoring the activities of loan officers in marketing Lakeland's mortgage loan products, soliciting, and originating mortgage loans;

    c.   A description of Lakeland's formal process for ongoing statistical monitoring of mortgage underwriting, pricing, and redlining risk, including statistical peer analysis of applications and originations from majority-Black and Hispanic census tracts; and

    d.   Steps Lakeland will take to effectively and promptly revise its mortgage lending policies and practices to ensure compliance with ECOA, Regulation B, and the FHA.

7.    If the United States objects to any portion of Lakeland's Fair Lending Status Report and Compliance Plan, Lakeland will make revisions and resubmit its proposal within 14 days of

receiving the objection.  Lakeland will begin implementation of its Fair Lending Status Report and Compliance Plan within 14 days of receiving the United States' non-objection.  Any material changes to Lakeland's Fair Lending Status Report and Compliance Plan are subject to non-objection by the United States.

### C.    Fair Lending Training

8.    Within 60 days of the Effective Date, Lakeland will provide a copy of the Complaint and Consent Order in this matter to all employees with substantive involvement in mortgage lending, marketing, or fair lending or CRA compliance, or who have management responsibility over such employees; senior management with fair lending and marketing oversight; and members of the Board of Directors (collectively, "the Relevant Bank Staff and Officials").  Lakeland will provide an opportunity for the Relevant Bank Staff and Officials to ask any questions concerning the Complaint and Consent Order, and the Bank will provide answers.  Lakeland will implement a system for each individual to acknowledge that they received a copy of the Complaint and Consent Order and had the opportunity to ask questions.  Lakeland will provide a report that includes these acknowledgements to the United States, as well as a list of all persons and their titles to whom this Consent Order was delivered within 75 days of the Effective Date.

9.    Lakeland will provide training to the Relevant Bank Staff and Officials on Lakeland's obligations under ECOA, Regulation B, and the FHA and Lakeland's obligations under this Consent Order.  The training will be conducted by an independent, qualified third-party trainer selected by Lakeland and subject to non-objection by the United States.  Within 60 days of the Effective Date, Lakeland will submit the qualifications of the third-party trainer to the United States for non-objection.  Within 60 days of receiving non-objection from the United States regarding the independent, qualified third-party trainer, Lakeland will submit the proposed training curriculum to the United States for non-objection.  Within 30 days of receiving non-objection from the United

5

States regarding the proposed training curriculum, Lakeland will deliver the training described in this paragraph. Lakeland will implement a system for each individual to acknowledge that they completed fair lending training and will provide a report that includes these acknowledgements to the United States within 30 days after it has delivered the training.

10. Lakeland will provide the training described in Paragraph 9 annually to the Relevant Bank Staff and Officials. The training may be held virtually or in person. Lakeland will implement a system for each individual to acknowledge that they completed fair lending training. Lakeland will provide a report that includes these acknowledgements to the United States within 30 days after it has delivered the training. Any proposed changes to the third-party trainer or the training curriculum are subject to non-objection by the United States.

11. Any individual who becomes a Relevant Bank Staff or Official will, within 30 days of beginning the covered position, receive a copy of the Complaint and Consent Order, with the opportunity to ask questions, as discussed in Paragraph 8. Any individual who becomes a Relevant Bank Staff or Official will, within 60 days of beginning the covered position, receive the training discussed in Paragraph 9. Lakeland will implement a system for each such individual to acknowledge that they received a copy of the Complaint and Consent Order, were given the opportunity to ask questions, and that they completed fair lending training. Lakeland annually will provide a report to the United States that these acknowledgements were obtained within 30 days from the date that a Relevant Bank Staff or Official received the training.

12. Lakeland will bear all costs associated with the trainings.

**D.    Community Credit Needs Assessment**

13. Lakeland will submit to the United States for non-objection a Community Credit Needs Assessment for majority-Black and Hispanic census tracts within its Newark Lending Area. A Community Credit Needs Assessment is a research-based market study to help a lender identify

the needs for financial services in an area.  This assessment must include the following information about majority-Black and Hispanic census tracts within Lakeland's Newark Lending Area: (1) an evaluation (to include market research and interviews) of residential mortgage credit needs and current lending opportunities available in the area; (2) recent demographic and socioeconomic data; (3) potential strategies for Lakeland to provide residential mortgage lending services in these census tracts; (4) a review of loan products offered by other lenders and their success in the market; (5) an overview of federal, state, and local programs that are available to residents seeking and obtaining residential mortgage loans; and (6) recommendations that address how each requirement of this Consent Order should be carried out to best achieve the remedial goals of this settlement.

14.    The Community Credit Needs Assessment will be conducted by an independent, qualified third-party consultant selected by Lakeland and subject to non-objection by the United States.  Within 60 days of the Effective Date, Lakeland will submit the qualifications of the third-party consultant to the United States for non-objection.  Within 30 days of receiving non-objection from the United States regarding the third-party consultant, Lakeland must submit to the United States, for non-objection, a statement of work from the independent third-party consultant describing their methodology for the assessment.  Within 60 days of receiving non-objection from the United States regarding the statement of work, Lakeland will submit to the United States the Community Credit Needs Assessment described in Paragraph 13.

15.    Once the United States has non-objected to the Community Credit Needs Assessment, Lakeland will present the Assessment to all Lakeland committees responsible for overseeing fair lending compliance.

16.    Within 60 days of receiving non-objection from the United States of the Community Credit Needs Assessment, Lakeland will submit a remedial plan that details, in light of the recommendations made in the Assessment, the actions Lakeland proposes to take to comply with the

requirements of this Consent Order (e.g., physical expansion, loan subsidy, community partnerships, and advertising), including specific timeframes and implementations of these actions. The proposals within the remedial plan will be subject to non-objection by the United States.

### E. Community Development Officer

17. The full-time Senior Vice President / Community Development Officer of the Bank, or similar officer designated with the community lending function as described below, ("Community Development Officer") will be designated with the primary responsibility of overseeing the development of the Bank's lending in majority-Black and Hispanic census tracts in its Newark Lending Area. The Bank will maintain this position throughout the term of this Consent Order.

18. The Community Development Officer is, and will be, an officer-level position that reports directly to the Executive Vice President / Chief Retail Officer of the Bank or similar officer. The Community Development Officer will provide reports on at least a quarterly basis to the Board of Directors and the Chief Executive Officer of the Bank regarding the following responsibilities:

      a. monitoring loan officers' solicitation and origination of loans in majority-Black and Hispanic census tracts in the Bank's Newark Lending Area, including the loan subsidy fund described herein;

      b. coordinating the Bank's involvement in community lending initiatives and outreach programs;

      c. encouraging and developing more lending within majority-Black and Hispanic census tracts;

      d. promoting financial education;

      e. providing financial counseling; and

      f. building relationships with community groups.

### F.    Physical Expansion to Serve Majority-Black and Hispanic Census Tracts

19.    In the first quarter of 2022, Lakeland established a loan production office ("LPO") in Newark and began plans to open a full-service branch in a majority-Black and Hispanic census tract in Newark, New Jersey.  Subject to appropriate regulatory approval, Lakeland must establish the de novo full-service branch in a majority-Black and Hispanic census tract in Newark, New Jersey and must establish one more full-service branch ("new branch"), either de novo, through acquisition or merger, or otherwise, in a majority-Black and Hispanic census tract in the Newark Lending Area. The specific site of de novo branches will be subject to non-objection by the United States.  The new branches must provide, at a minimum, the full range of mortgage products typically offered by Lakeland's mortgage loan officers and community lending specialists, and must maintain hours of operation equivalent to Lakeland's other full-service branches.

20.    Lakeland must make all reasonable efforts to open the new branches within 18 months of the Effective Date.  If Lakeland fails to open the new branches within 18 months of the Effective Date, Lakeland will provide to the United States a written proposal describing how it will comply with Paragraph 19.  Lakeland will maintain the two new branches for the term of the Order.

21.    Lakeland will evaluate future opportunities for expansion within its Newark Lending Area, whether by merger or acquisition or opening new branches or LPOs, in consideration of the goals of this Consent Order and the Community Credit Needs Assessment.  Lakeland must notify the United States of any plans to open or acquire any new branches or other LPOs within its Newark Lending Area at the same time that it notifies other regulators.

22.    As soon as practicable, but at least within 12 months of the Effective Date, Lakeland will assign no fewer than four mortgage loan officers to solicit mortgage applications in majority-Black and Hispanic census tracts in the Newark Lending Area.  Additionally, at least one of these

mortgage loan officers will be assigned to each Lakeland branch or LPO located within majority-Black and Hispanic census tracts in the Newark Lending Area.

**G.    Loan Subsidy Fund**

23.    Lakeland will invest a minimum of $12 million in a loan subsidy fund to increase credit for home mortgage loans, home improvement loans, and home refinance loans for consumers applying for loans in majority-Black and Hispanic census tracts in its Newark Lending Area.  No more than twenty-five percent of the loan subsidy fund may be used for home refinances.

24.    Loan subsidies under the loan subsidy fund can be provided by the following means:

a.   a direct grant for the purpose of down payment assistance (when the subsidy is less than the loan balance);

b.   a direct grant for the purpose of closing cost assistance;

c.   payment of mortgage insurance premiums on loans subject to such mortgage insurance;

d.   life of loan interest discount payments and/or points that are in the range of the generally prevailing rates (the intent of which will reduce the interest rate below market); and

e.   any other appropriate assistance measures approved by the United States in writing.

The combined forms of subsidies set forth in this paragraph cannot exceed $15,000 per qualified applicant unless Lakeland receives a non-objection from the United States to increase that amount.

25.    Under the loan subsidy fund, Lakeland will subsidize loans made to "qualified applicants."  A "qualified applicant" is any applicant who: (a) qualifies for a mortgage or home improvement loan under Lakeland's underwriting standards; and (b) applies for a loan secured by

residential property located in a majority-Black and Hispanic census tract in the Newark Lending Area that will serve as the borrower's primary residence.

26.    No provision of this Consent Order, including any loan subsidy or equivalent program, requires Lakeland to make any unsafe or unsound loan or to make a loan to a person who is not qualified for the loan based upon lawful, nondiscriminatory terms; however, Lakeland may choose to apply more flexible underwriting standards in connection with its programs under this Consent Order. Lakeland's underwriting standards applied to residents of majority-Black and Hispanic census tracts must be no less favorable than the standards applied in majority-white census tracts.

### H.    Community Development Partnership Program

27.    Lakeland will partner with one or more community-based or governmental organizations that provide the residents of majority-Black and Hispanic census tracts in the Newark Lending Area with services related to credit, financial education, homeownership, and foreclosure prevention. Lakeland will develop these partnerships in a manner consistent with achieving the goals of this Consent Order. Through these partnerships, Lakeland must spend a minimum of $400,000 over the term of this Consent Order on services to residents of majority-Black and Hispanic census tracts in the Newark Lending Area that increase access to residential mortgage credit.

28.    Within 180 days of the Effective Date, Lakeland will submit a proposal to the United States describing how it will implement the requirements of Paragraph 27. The proposal will include an explanation of its proposed partner(s). The proposal should also describe, to the extent available, Lakeland's plans to implement the partnership(s), as well as a description of how the partnership(s) will be used to meet the credit needs identified in the Community Credit Needs Assessment. The proposal will be subject to non-objection by the United States.

29.    Lakeland will evaluate the partnership(s) outlined in Paragraph 27 annually, including by considering the Community Credit Needs Assessment, in order to identify any needed changes to

the program or better assist residents of majority-Black and Hispanic census tracts in the Newark Lending Area in obtaining credit. Lakeland will present a summary of its evaluation and any proposed changes to the United States as part of its annual reporting requirement under Paragraph 44. Any proposed changes will be subject to non-objection by the United States.

I.    **Advertising, Community Outreach, Consumer Financial Education, and Credit Counseling Initiatives**

30.    Lakeland will spend at least $150,000 per year on advertising, outreach, consumer financial education, and credit counseling in the Newark Lending Area described in this Section.

31.    Within 180 days of the Effective Date, Lakeland will submit an Advertising, Outreach, and Education Plan ("Outreach Plan") to the United States detailing how it will spend these funds for the period remaining in the term of this Consent Order. The Outreach Plan will include an explanation of why Lakeland selected certain approaches and community partnerships and how Lakeland's advertising, community outreach, education, and credit counseling initiatives will meet the credit needs identified in the Community Credit Needs Assessment. The Outreach Plan will be subject to non-objection by the United States. If the United States objects to any portion of the Outreach Plan, Lakeland will make revisions and resubmit its proposal within 14 days of receiving the United States' objection. Lakeland will begin implementation of its Outreach Plan within 14 days of receiving non-objection from the United States.

32.    Lakeland will evaluate the strategies outlined in its Outreach Plan annually, including by considering the Community Credit Needs Assessment, in order to identify any changes necessary to better assist residents of majority-Black and Hispanic census tracts in its Newark Lending Area in obtaining credit. Lakeland will present a summary of its evaluation and any proposed changes to the United States as part of its annual reporting requirement under Paragraph 44. Any proposed changes will be subject to non-objection by the United States.

### i.    Advertising

33.    Lakeland will advertise its residential loan products, including products for which the loan subsidy fund outlined in Section III.G will be applied, to majority-Black and Hispanic census tracts in its Newark Lending Area and will target advertising to generate mortgage loan applications from qualified applicants in these census tracts.  Lakeland's advertising may include print media, radio, Internet advertising, television, direct mail, and any other appropriate medium non-objected to by the United States in writing.  These advertisements must include similar information to other advertisements by Lakeland.  Lakeland must advertise its mortgage lending services and products to majority-Black and Hispanic census tracts in its Newark Lending Area at least to the same extent that it advertises its mortgage lending services and products to majority-white census tracts in its Newark Lending Area.

34.    Lakeland will create point-of-distribution materials, such as posters and brochures, targeted toward majority-Black and Hispanic census tracts to advertise products and services. Lakeland will place or display these promotional materials in its branch offices.

35.    All of Lakeland's print advertising and promotional materials referencing residential mortgage loans will contain an equal housing opportunity logo, slogan, or statement.  All radio or television advertisements will include an audible statement that Lakeland is an "Equal Opportunity Lender" or "Equal Housing Lender."

### ii.    Outreach

36.    Lakeland will provide four outreach programs per year for real estate brokers and agents, developers, and public or private entities engaged in residential real estate-related business in

majority-Black and Hispanic census tracts to inform them of Lakeland's products and services and to develop business relationships.

37.    Lakeland may underwrite or sponsor non-profit events in support of the majority-Black and Hispanic census tracts in its Newark Lending Area that are related to building relationships within those areas and designed to generate applications for home mortgages.

### iii.    Consumer Financial Education and Credit Counseling

38.    Lakeland will develop a consumer education program designed to provide information, training, and counseling services about consumer finance to individuals in majority-Black and Hispanic census tracts in the Newark Lending Area.

39.    Lakeland will provide a minimum of four seminars per year targeted toward residents in majority-Black and Hispanic census tracts in its Newark Lending Area.  These seminars will cover credit counseling, financial literacy, and other related education, to help identify and develop qualified loan applicants from those areas.

40.    Lakeland may develop and provide the consumer education seminars described in Paragraphs 38 and 39 in conjunction with the community-based or governmental organization that Lakeland partners with as described in Section III.H.

41.    Beginning after the Effective Date and during the first year of the term of this Consent Order, Lakeland may conduct the outreach programs and consumer education seminars described in Paragraphs 36, 38, and 39 by hosting in-person events offered at a location reasonably convenient to the attendees or by hosting virtual events.  Beginning 12 months after the Effective Date, Lakeland will submit to the United States a list of its planned outreach programs and consumer education seminars, specifying whether those events will be in-person or virtual, as part of its annual reporting requirement under Paragraph 44.  The virtual nature of these programs and seminars will be subject to non-objection by the United States.

14

## IV.    EVALUATING AND MONITORING COMPLIANCE

42.    Lakeland will retain all records related to its obligations under this Consent.  The United States has the right to review and copy these records upon request.

43.    Every year, within 30 days of its submission of data to the Federal Financial Institutions Examination Council ("FFIEC") in accordance with the Home Mortgage Disclosure Act of 1975, 12 U.S.C. §§ 2801–2811, Lakeland will provide this data to the United States in the same format, including the record layout.

44.    Beginning 12 months after the Effective Date, Lakeland will submit annual reports to the United States on its progress in complying with the terms of this Consent Order and associated plans and programs.  The final report will be delivered to the United States at least 60 days prior to the expiration of this Consent Order.  The reports will provide a complete account of Lakeland's actions to comply with this Consent Order, Lakeland's assessment of the extent to which each obligation was met, an explanation of why Lakeland fell short of meeting its goals for any particular component, and recommendations for additional actions to achieve the goals set forth in this Consent Order and associated plans and programs.  With each report, Lakeland will attach copies of training materials and advertising and marketing materials distributed under this Consent Order since the prior report.  Lakeland's Board of Directors and CEO will review and approve the reports prior to submission to the United States.  If the United States raises any objections to a report, the Parties will have 14 days to confer and resolve their differences.  The Parties may mutually agree to additional time to confer, if necessary.  If the Parties are unable to resolve their differences, either party may bring the dispute to the Court for resolution.

45.    All material required by this Consent Order will be sent to the United States by email to the Department of Justice attorney(s) assigned to this matter, and by commercial overnight delivery service addressed as follows:

Chief, Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
150 M Street NE, 8th Floor
Washington, DC 20002
Attn: DJ# 188-48-17

Chief, Civil Rights Division
U.S. Attorney's Office, District of New Jersey
970 Broad Street, Suite 700
Newark, NJ 07102
Attn:  USAO 2021V00937

## V.    ROLE OF THE COMMUNITY DEVELOPMENT ACTION COMMITTEE

46.    Since 2016, the Bank has maintained a Community Development Action Committee ("the Committee") the mission of which is to coordinate efforts and strategies across business lines to drive the expansion of the Bank's existing loan portfolio focusing exclusively on CRA eligible community development activities, and to guide the development and implementation of a program to generate increased consumer and business loan application volume for low-to-moderate income individuals, households and communities, as well as majority-minority communities, within  the Bank's CRA assessment area.  The Committee facilitates communication between management and reports regularly to the Board of Directors.

47.    The Committee will review all submissions (including plans, reports, programs, policies and procedures) required by this Consent Order prior to submission to the United States.

48.    Until the termination of this Consent Order, the Committee will be responsible for monitoring and coordinating the Bank's adherence to the provisions of this Consent Order.

49.    The Committee will provide quarterly updates to the Board of Directors of the Bank on the steps the Bank has taken and plans to take to comply with this Consent Order, which update

will be attached to each annual report to the United States required by this Consent Order. These quarterly updates to the Board will include, but are not limited to, the following:

    a.   monitoring loan officers' solicitation and origination of loans in majority-Black and Hispanic census tracts in the Bank's Newark Lending Area, including the loan subsidy fund described herein;

    b.   reporting on the Bank's residential mortgage lending performance in the majority-Black and Hispanic census tracts within the Newark Lending Area and a comparison of the Bank's applications and originations to institutions in the Newark Lending Area with a similar volume of residential mortgage lending activity;

    c.   coordinating the Bank's involvement in community lending initiatives and outreach programs;

    d.   encouraging and developing more lending within majority-Black and Hispanic census tracts;

    e.   promoting financial education;

    f.   providing financial counseling; and

    g.   building relationships with community groups.

## VI.   ADMINISTRATION

50.    The requirements of this Consent Order will remain in effect for five years, except as provided in Paragraph 56.

51.    If, within five years of the Effective Date, Lakeland has not invested all money in the loan subsidy fund described in Section III.G, this Consent Order will remain in full effect until three months after Lakeland has invested all the money in the loan subsidy fund and has submitted a final report to the United States that demonstrates the fulfillment of this obligation.

52.     Lakeland will maintain all documents and records necessary to demonstrate full compliance with this Consent Order, including all submissions made to the United States, until the requirements of Paragraphs 55 and 56 are fulfilled.

53.     Lakeland must make the documents identified in Paragraph 52 available to the United States upon the United States' request.

54.     Any time limits for performance may be extended by mutual written agreement of the Parties.  Other modifications may be made only upon approval of the Court, by motion by any party. If there are changes in material factual circumstances, the Parties will work cooperatively to discuss and attempt to agree to proposed modifications to this Consent Order.

55.     If disputes arise about the interpretation of, or compliance with, this Consent Order, the Parties will endeavor in good faith to resolve any dispute before bringing it to the Court for resolution.  If Lakeland violates any provision of this Consent Order or fails to perform an act required by this Consent Order, the United States may move the Court to impose any remedy authorized by law or equity, including attorneys' fees and costs.

56.     Nothing in this Consent Order excuses Lakeland's compliance with any currently or subsequently effective provision of law or order of a regulator.

57.     Lakeland will notify the United States of any development that may materially affect compliance obligations arising under this Order, including but not limited to, a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor company; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; the filing of any bankruptcy or insolvency proceeding by or against Lakeland; or a change in Lakeland's name or address.  Lakeland will provide this notice as soon as practicable after learning about the development.

58.     Within 10 days of the Effective Date, Lakeland will:

    a.  Designate at least one telephone number and email, physical, and postal address as points of contact, which the United States may use to communicate with Lakeland;

    b.  Identify all businesses for which Lakeland is the majority owner, or that Lakeland directly or indirectly controls, by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; and

    c.  Describe the activities of each such business, including the products and services offered, and the means of advertising, marketing, and sales.

59.    Lakeland will report any change in the information required to be submitted under Paragraph 57 as soon as practicable, but in any case, at least 30 days before the change.

60.    This Order is binding on Lakeland, including all of its officers, agents, servants, employees, and all other persons in active concert or participation with them who have actual notice of this Consent Order, assignees, and successors in interest. If Lakeland seeks to transfer or assign all or part of its operations to a successor or assign that intends to carry on the same or similar business, Lakeland will obtain the written agreement of the successor or assign to obligations under this Consent Order as a condition of sale, merger, or other transfer.

61.    The Parties agree that litigation is not reasonably foreseeable. If any party implemented a litigation hold to preserve information, the party is no longer required to maintain it. Nothing in this paragraph relieves either party of any other obligations imposed by this Consent Order.

62.    The Parties to this Consent Order will bear their own costs and attorneys' fees.

63.    The Court will retain jurisdiction over this civil action to enforce the terms of this Consent Order.

IT IS SO ORDERED this 29th day of September , 2022.

_____

UNITED STATES DISTRICT JUDGE

The undersigned hereby apply for and consent to the entry of this Consent Order:

**FOR PLAINTIFF UNITED STATES OF AMERICA:**

Dated: September 27, 2022

Respectfully submitted,

PHILIP R. SELLINGER
United States Attorney
District of New Jersey

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

MICHAEL E. CAMPION
Chief
Civil Rights Division

SAMEENA SHINA MAJEED
Chief

JON M. SEWARD
Principal Deputy Chief

By:  *s/ Susan Millenky*
SUSAN MILLENKY
Assistant U.S. Attorney
970 Broad Street, Suite 700
Newark, NJ 07102
Phone: (973) 645-2700
Fax: (973) 297-2010
Email:
susan.millenky@usdoj.gov

By:  *s/ Jennifer A. Slagle Peck*
MARTA CAMPOS
JENNIFER A. SLAGLE PECK
Trial Attorneys
Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue NW–4CON
Washington, DC 20530
Phone: (202) 514-4713
Fax: (202) 514-1116
E-mails:
marta.campos@usdoj.gov
jennifer.slagle.peck@usdoj.gov

**FOR DEFENDANT LAKELAND BANK:**

Dated: September 27, 2022

LUSE GORMAN, PC

By:      *s/ John J. Gorman*
JOHN J. GORMAN
Partner
Luse Gorman, PC
5335 Wisconsin Avenue, NW
Washington, DC 20015
Phone: (202) 274-2001
Email: jgorman@luselaw.com

GARY A. LAX
Partner
Luse Gorman, PC
5335 Wisconsin Avenue, NW
Washington, DC 20015
Phone: (202) 274-2031
Email: glax@luselaw.com

AGATA S. TROY
Partner
Luse Gorman, PC
5335 Wisconsin Avenue, NW
Washington, DC 20015
Phone: (202) 274-2025
Email: atroy@luselaw.com