# Exhibit A

*Bureau of Consumer Fin. Prot. v. Townstone Fin.*, No. 20-cv-4176, slip op. (N.D. Ill. June 12, 2025)

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BUREAU OF CONSUMER FINANCIAL PROTECTION,<br><br>Plaintiff,<br><br>v.<br><br>TOWNSTONE FINANCIAL, INC. and BARRY STURNER,<br><br>Defendants. | No. 20-cv-4176<br>Judge Franklin U. Valderrama |

**ORDER**

The Bureau of Consumer Financial Protection (CFPB) sued Townstone Financial, Inc. (Townstone), a mortgage broker/lender, and its owner Barry Sturner (Sturner) (collectively, Defendants) for allegedly discouraging, via their radio show and podcast, prospective African-American applicants in the Chicago metropolitan area from applying for mortgages, in violation of the Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691(a), and its implementing regulation, Regulation B, 12 C.F.R. § 1002.4(b). R. 27, First Amended Complaint (FAC).[1]

Defendants moved to dismiss the FAC with prejudice, arguing that the ECOA did not extend to prospective applicants, and that they engaged in First Amendment protected speech. R. 31, Mot. Dismiss. The Court granted the motion, finding that the ECOA does not extend to prospective applicants. *Bureau of Consumer Fin. Prot. v. Townstone Fin., Inc.*, 2023 WL 1766484, at *11 (N.D. Ill. Feb. 3, 2023) (*Townstone I*).

---

[1] Citations to the docket are indicated by "R." followed by the docket number and, where necessary, a page or paragraph citation.

In light of that finding, the Court did not address Defendants' First Amendment argument. *Id.* The Seventh Circuit, however, reversed and remanded the case, concluding that Regulation B's prohibition on the discouragement of prospective applicants is consistent with the ECOA. *Consumer Fin. Prot. Bureau v. Townstone Fin., Inc.*, 107 F.4th 768, 777 (7th Cir. 2024) (*Townstone II*). The Seventh Circuit similarly did not address Defendants' First Amendment argument that they engaged in constitutionally protected speech on their radio show and podcast. *Id.*

Subsequently, the Parties agreed to and moved for entry of a Stipulated Final Judgment and Order, that, among other things, required Townstone to pay a $105,000 fine. R. 135, Mot. Judgment. The Court entered the Stipulated Final Judgment and Order on November 7, 2024. R. 138, Judgment Order.

Recently, CFPB and Defendants (collectively, the Parties) filed a Joint Rule 60(b)(6) Motion for Relief and Vacatur of the Stipulated Final Judgment and Order (the Motion). R. 145, Mot. Vacate. Amici Curiae, nonprofit organizations focused on fair housing and consumer protection, filed a brief in opposition to the motion. R. 147-1, Amici Resp. This fully briefed Motion is before the Court.

## Background[2]

The CFPB is an independent agency of the United States, created by the Consumer Financial Protection Act of 2010 (CFPA), with authority to enforce the CFPA and ECOA. FAC ¶ 8. Townstone is a mortgage broker/lender headquartered in Chicago, which operates in Illinois, Indiana, Michigan, Wisconsin, and Florida. *Id.*

---

[2]The Court assumes familiarity with the facts and recites only those facts necessary for resolution of the Motion.

2

¶ 9. Sturner, among other things, is Townstone's President and Chief Executive Officer. *Id.* ¶ 13.

Starting as early as 2014, Townstone marketed its services through its own radio show and podcast, "The Townstone Financial Show." *Id.* ¶ 24. The Townstone Financial Show is a long-form commercial advertisement, in which the hosts discuss mortgage-related issues and take questions from prospective applicants. *Id.* ¶ 26. The Townstone Financial Show has allegedly included statements that would discourage African-American prospective applicants from applying for mortgage loans from Townstone. *Id.* ¶ 32.

In 2020, after a three-year investigation during President Trump's first administration, CFPB sued Defendants alleging that: (1) Townstone violated the ECOA and its implementing regulation, Regulation B (Count I); (2) Townstone violated the CFPA, 12 U.S.C. § 5536(a)(1)(A) (Count II); and (3) Sturner fraudulently transferred assets in violation of 28 U.S.C. §§ 3301–3308. FAC ¶¶ 53–78.

Defendants moved to dismiss the FAC on the basis that the ECOA does not regulate behavior relating to prospective applicants who have yet to apply for credit. Mot. Dismiss. Defendants further argued that the speech they engaged in on their radio show was constitutionally protected speech. *Id.* The Court agreed with the former argument and granted the motion to dismiss. *Townstone I*, 2023 WL 1766484, at *11. The Court did not address Defendants' First Amendment argument. *Id.* The Seventh Circuit reversed and remanded the case, concluding that the ECOA did apply

3

to prospective applicants for credit. *Townstone II*, 107 F.4th 768, 777. The Seventh Circuit also declined to address Defendants' First Amendment argument. *Id.*

Following remand, the Parties agreed to, and moved for entry of a Stipulated Final Judgment and Order, that, among other things, enjoined Townstone from engaging in any acts that violate the ECOA in connection with offering or providing mortgage loans, provided for the implementation and maintenance of policies to test Townstone's compliance with the ECOA, and required Townstone to pay a fine of $105,000 to CFPB and to commit to various programmatic changes for a period of five years, during which time the Court retained jurisdiction. Mot. Judgment. The Court entered the Stipulated Final Judgment and Order[3] on November 7, 2024. Judgment Order.

On January 20, 2025, Donald J. Trump was inaugurated President of the United States for a second term. On the same day, President Trump ordered agency heads to "identify and take appropriate action to correct past misconduct by the Federal Government related to censorship of [constitutionally] protected speech" and "to review the activities of . . . agencies exercising civil and criminal enforcement authority . . . and identify any instances" reflecting improper targeting of enforcement actions "oriented more toward inflicting political pain than toward pursuing actual justice or legitimate governmental objectives." Exec. Order No. 14149 § 2(d), 90 Fed. Reg. 8,243 (Jan. 20, 2025); Exec. Order 14147 §§ 1, 3, 90 Fed. Reg. 8,235 (Jan. 20, 2025).

---

[3] Pursuant to the Stipulation, the parties stipulated to the dismissal of Sturner.

4

CFPB's new leadership, pursuant to the Executive Order, undertook a review of agency records concerning recent enforcement actions, including this case. CFPB maintains that it discovered that it commenced this action without a substantial predicate of actionable facts and targeted Defendants based on constitutionally protected speech. The Parties then filed a Joint Rule 60(b)(6) Motion for Relief from and Vacatur of the Stipulated Final Judgment and Order. Mot. Vacate.

Amici, fourteen nonprofit organizations focused on fair housing and consumer protection sought leave to file, pursuant to Local Rule 5.6, a brief in opposition since no other party before the Court opposed the Motion.[4] R. 147. The Court granted the motion, and Amici filed a brief in opposition to the Motion. Amici Resp. The Parties' fully briefed Motion is before the Court.

## Legal Standard

Federal Rule of Civil Procedure 60(b) allows a court to grant relief to a party from a final judgment or order for several listed reasons. Fed. R. Civ. P. 60(b). Rule 60(b)(6) contains a catchall provision providing a remedy for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6).

The two rules are mutually exclusive—Rule 60(b)(6), as a residual catchall, applies only if the other specifically enumerated rules do not. *BLOM Bank SAL v. Honickman*, 605 U.S. ---, 2025 WL 1583305, at *4 (U.S. June 5, 2025); *Pearson v. Target Corp.*, 893 F.3d 980, 984 (7th Cir. 2018). Rule 60(b)(6) is reserved for cases that present "extraordinary circumstances." *BLOM Bank SAL*, 2025 WL 1583305, at

---

[4] While Defendants opposed the motion, CFPB did not take a position.

*5 (collecting cases). "Rule 60(b)(6) is fundamentally equitable in nature." *Ramirez v. United States*, 799 F.3d 845, 851 (7th Cir. 2015) "The movant seeking relief under Rule 60(b)(6) must show extraordinary circumstances justifying the reopening of a final judgment." *Id*. at 850.

Courts may consider a wide range of factors in determining whether such circumstances exist, including the risk of injustice to the parties and the risk of undermining the public's confidence in the judicial process. *Buck v. Davis*, 580 U.S. 100, 103 (2017). That said, "[t]he need for the finality of judgments is an overarching concern." *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv.*, 131 F.3d 625, 628 (7th Cir. 1997). As the Seventh Circuit explained, "Rule 60(b) sets a higher value on the social interest in the finality of litigation." *Id*. (cleaned up).[5] The Supreme Court recently reaffirmed this principle, holding that the "very strict interpretation of Rule 60(b)," that is, applying it in only extraordinary circumstances, "is essential if the finality of judgments is to be preserved." *BLOM Bank SAL*, 2025 WL 1583305, at *5 (cleaned up).

Whether to grant a Rule 60(b)(6) motion is left to the discretion of the court. *See Bakery Mach. & Fabrication, Inc. v. Traditional Baking, Inc.*, 570 F.3d 845, 848 (7th Cir. 2009) ("The district court has great latitude in making a Rule 60(b) decision because that decision "is discretion piled on discretion." (cleaned up)). It is with this framework in mind that the Court analyzes the Parties' Motion.

---

[5]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

6

## Analysis

As a preliminary matter, the Parties argue that since the Motion is a joint motion, the requirements of Rule 60(b)(6) are relaxed. R. 145-1, Memo. Vacate at 3 (citing *Cummins v. Illinois*, 2010 WL 334514, at *2 (S.D. Ill. Jan. 25, 2010); *Marcus A.T. v. Comm'r of Soc. Sec.*, 2023 WL 3304727, at *2 (S.D. Ill. May 8, 2023); *Mayes v. City of Hammond Ind.*, 631 F. Supp. 2d 1082, 1088 (N.D. Ind. 2008)). As for the consent decree, Rule 60(b)(6), from the Parties' perspective, offers an even more flexible standard, which allows a court to adjust its final judgment, so as to harmonize it with changed circumstances in law or fact. *Id.* at 4 (citing *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 380, 393 (1992); *O'Sullivan v. City of Chicago*, 396 F.3d 843, 866 (7th Cir. 2005)). Therefore, reason the Parties, the Court may consider the parties' mutual interest. *Id.*

Amici counter that Parties' contention that Rule 60(b)(6)'s "extraordinary circumstance" standard should be relaxed in this case fails because the cases cited by the Parties in support of this proposition are all distinguishable, as they "arose in the context of parties entering into a settlement during the pendency of an appeal . . . ." Amici Resp. at 6. That is far from the case here, note Amici, as the Parties do not seek to vacate this Court's order to enable a settlement, but instead to undo a settlement. *Id.*

In reply, the Parties argue that nothing in the cases cited suggest that the standards under Rule 60(b)(6) can only be relaxed when two parties agree to settle on appeal. R. 151, Reply at 4. Here, submit the Parties, the judgment to be vacated is

7

not a merits decision by the Court, but rather, the result of a prior settlement between the two parties seeking vacatur. *Id.* at 5. Vacatur, posit the Parties, will not affect precedent, as the Seventh Circuit's decision remains; will not affect preclusion, as the judgment adjudicated no issues of fact or law; and will not waste judicial resources, as the settlement occurred soon after the Seventh Circuit's remand. *Id.* at 5. Nor does vacatur affect the interests of private parties, beyond Townstone, because the settlement contained no terms that benefitted private parties. *Id.* at 6.

The Court agrees with the Parties that the fact that they have not cited any similar case—involving a joint Rule 60(b)(6) motion to undo, rather than facilitate, a settlement—on its own, does not undermine the fact that courts have relaxed Rule 60(b)(6)'s requirement where the motion to vacate is a joint motion.[6] To be sure, the facts of the Motion are unusual and the Motion, therefore, unprecedented (as far as the Court can tell based on the materials before it). As correctly noted by the Parties, Rule 60(b)(6) is equitable in nature and courts focus on justice and equities and in doing so, consider the totality of the circumstances. Memo. Vacate at 3–4.

Here, the Court must balance the parties' desire to vacate the judgment with the public interest in the finality of judgments. What distinguishes this case from the cases cited by the Parties, among other reasons, is the fact that Defendants' alleged

---

[6]Whether courts should continue doing so on joint motions is debatable, in light of the Supreme Court's recent decision, in which it held that a "very strict interpretation of Rule 60(b)," that is, only applying it in extraordinary circumstances, "is essential if the finality of judgments is to be preserved." *BLOM Bank SAL*, 2025 WL 1583305, at *5. *Blom Bank SAL* did not involve a joint request, and the Court need not definitively determine whether it impacts the analysis, as the Court declines to relax 60(b)(6)'s requirement for the reasons discussed above.

8

wrongdoing affected the public. This was not a private matter between private parties. CFPB's complaint alleged that Defendants discouraged prospective African-American applicants in the Chicago metropolitan area from applying for mortgage loans. Indeed, the consent decree enjoined Townstone from engaging in the allegedly improper practices.

Under these circumstances, the Court finds that relaxing Rule 60(b)(6)'s requirement would be improper. Supreme Court and Seventh Circuit precedent is clear: the movant seeking Rule 60(b)(6) relief "must show extraordinary circumstance justifying the reopening of a final judgment." *Ramirez*, 799 F.3d at 850; *BLOM Bank SAL*, 2025 WL 1583305, at *5. With that hurdle cleared, the Court turns to the substance of the Parties' arguments.

The Parties argue that the Court should vacate the judgment in the interest of justice. Memo. Vacate at 4. The Parties contend that once new leadership reviewed the history of the case, "it became clear from the totality of internal evidence that this case has suffered from deficiencies on the merits and Townstone was targeted because of its protected speech." *Id.* In support, the Parties submit the Declaration of Dan Bishop, a Senior Advisor to the Office of Management and Budget detailed part time to CFPB. R. 145-2, Bishop Decl. ¶ 2.

Remarkably, CFPB maintains that it launched this lawsuit "without substantial evidence of discrimination and based on the expressed political views of Mr. Sturner, Townstone's principal." Memo. Vacate at 4–5 (citing Biship Decl. ¶ 5). CFPB posits that, had Defendants "been able to access the internal agency records

9

demonstrating that the Bureau failed to wrestle with the deficiencies in this case and that [they were] targeted, [they] would have been able to advance a more strongly supported First Amendment, viewpoint-based targeting defense against the Bureau." *Id.* at 5.

The Parties point out that Defendants sought such discovery but were rebuffed by the Magistrate Judge. Memo. Vacate at 5. The Parties assert that CFPB used a "variety of undisclosed tactics to gain access" to Defendants' statements on which the CFPB predicated the ECOA enforcement action. *Id.* at 6. At bottom, from CFPB's new leadership's point of view, the civil enforcement action undertaken by the previous CFPB leadership was based on protected speech, and therefore, improper. *Id.* at 10.

Amici respond that the Parties' motion fails to clear the high bar set by Rule 60(b)(6) of "extraordinary circumstances." From Amici's perspective, the Parties seek to "unwind the final judgment because the new leadership at the CFPB regrets that the previous Trump administration filed the case, suggesting that Townstone was improperly targeted based on its 'viewpoints.'" Amici Resp. at 7.

Amici raise concerns with the Bishop declaration in which he states that CFPB lawyers misled their superiors, specifically suggesting that former CFPB Director Krainger "may have made her decision to litigate based on incomplete or inaccurate information." *Id.* at 7–8 (citing Bishop Decl. ¶ 7). This missing or omitted information, posit Amici, was merely the exclusion of irrelevant case law outside of Regulation B. *Id.* at 8 (citing Bishop Dec. ¶ 12). As for the "undisclosed tactics," that was nothing more than the "use of a software program that automated the process of searching

10

hours of publicly available audio programming for key terms." *Id*. Such use, submit Amici, was an efficient use of government resources. *Id*. Regarding discovery not disclosed, there is no support for the proposition that "the target of a government investigation is entitled to work-product information while litigation is being contemplated or is underway." *Id*. As for the Parties' argument that Defendants' statements were protected First Amendment speech, the issue fully was litigated, but not addressed by any court, but rather than litigating the issue on remand, the Parties resolved the case through a stipulated final judgment. Amici Resp. at 10. Rule 60(b)(6), according to Amici, does not afford CFPB an opportunity to revisit this issue. *Id*.

Next, Amici advance a public policy argument. Amici point out that the Parties "cite no case in which a court vacated a final judgment and ordered return of civil penalties under Rule 60(b) because new agency leadership disagreed with the litigation choices made by their predecessors." Amici Resp. at 10. And this Court should not be the first to do so. *Id*. Amici posit that if the Court granted the motion, it would incentivize private parties "to view every new administration as an opportunity for renegotiation of completed litigation." *Id*. at 11. Defendants who have entered into consent decrees with government agencies would seek to undo those decrees merely based on a new administration, presumably, one whose viewpoints align with the defendants. *Id*.

Lastly, Amici contend that since Townstone seeks the return of a $105,000 civil penalty, such a precedent "raises the specter that payments made to third parties as part of consent decrees may also be clawed back." Amici Resp. at 11.

In reply, the Parties insist that the "extraordinary circumstances" of this case warrant vacatur. Reply at 3. The Parties challenge Amici's contention that the Parties filed the Motion because of a change in CFPB's leadership. Rather, maintain the Parties, they filed the motion because CFPB "discovered that the Townstone case lacked any evidence of actual discrimination, lacked any actual consumers who complained about anything Townstone did, and was both brought and pursued because CFPB disliked Townstone's speech . . . ." Reply at 3–4.

Having considered the arguments presented, the issue before the Court is whether the Parties have met their substantial burden of showing an extraordinary circumstance that justifies vacatur of the final judgment and consent decree. The Court finds they have not.

Notably, the Motion, as observed by Amici, is unprecedented. The Parties in this case—a government agency and private parties—voluntarily entered into a settlement and consent decree to resolve the dispute. As previously noted, the consent decree, among other things, enjoined Townstone from engaging in any acts that violate the ECOA in connection with offering or providing mortgage loans. The voluntary nature of the resolution of this case cannot be overemphasized. It was only after a change at the leadership at CFPB that CFPB now seeks—along with Defendants—to unwind the very settlement and consent decree that it negotiated.

12

*Contra BLOM Bank SAL*, 2025 WL 1583305, at *5 (quoting *Ackermann v. United States*, 340 U.S. 193, 198 (1950) (explaining "[t]here must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from.")).

The Parties insist that CFPB made the decision to file the Motion not because of change in leadership, but rather because it "discovered that the Townstone case lacked any evidence of actual discrimination, lacked any actual consumers who complained about anything Townstone did, and was both brought and pursued because CFPB disliked Townstone's speech . . . ." Reply at 3–4. This assertion, while breathtaking, is unpersuasive.

Recall that the investigation and initiation of the lawsuit occurred during President Trump's first term, not under some previous administration. Presumably, CFPB launched the lawsuit after it determined that there was a legal and factual basis for the suit. Apparently, that was not the case. Now, current CFPB leadership under the second Trump administration, in an act of legal hara-kiri that would make a samurai blush, falls on the proverbial sword and attests that the lawsuit lacked a legal or factual basis.[7] That's not all, as current CFPB leadership lambasts CFPB leadership under the first administration for trampling Defendants' First Amendment rights.

---

[7] CFPB's argument implicates the specter of Federal Rule of Civil Procedure 11, as CFPB contends that it filed this lawsuit without a factual or legal basis. Fed. R. Civ. P. 11(b). While Amici did not raise Rule 11, the Court has inherent authority to impose sanctions for violations of the Rule. Since the Court is denying the motion, it need not determine whether CFPB violated Rule 11.

13

True, it is impermissible for government agencies to target people or entities because of protected speech. And nothing in this Order suggests anything to the contrary. However, neither this Court nor the Seventh Circuit addressed Defendants' First Amendment argument. Therefore, that issue was not adjudicated.

At bottom, to grant the Motion based on the arguments advanced by the Parties would be to undermine the finality of judgments. This, the Court declines to do. Indeed, the importance of preserving finality was illustrated by the Supreme Court just a few days ago, when it reaffirmed that it is "essential" to apply a strict standard to Rule 60(b) motions to preserve the finality of judgments. *BLOM Bank SAL*, 2025 WL 1583305, at *5.

Moreover, the Court agrees with Amici that granting the Motion would erode public confidence in the finality of judgments. It would set a precedent suggesting that a new administration could seek to vacate or otherwise nullify the voluntary resolution of a case between a prior administration (or the same administration ,but under different agency leadership) and a private party merely because its leadership thought the original litigation unwise or improperly motivated. That is a Pandora's box the Court refuses to open.

All in all, balancing the benefits vacatur against the public interest in the finality of judgment, the Court finds that the latter outweighs the former.

## Conclusion

For the foregoing reasons, the Court denies the Parties' Joint Rule 60(b)(6) Motion for Relief and Vacatur of the Stipulated Final Judgment and Order [145]. The

14

stipulated final judgment and order [138] remains in effect and this civil case remains terminated.

Dated: June 12, 2025

                                           United States District Judge
                                           Franklin U. Valderrama