Jehan A. Patterson
D. Jean Veta (*pro hac vice application pending*)
Nikhil V. Gore (*pro hac vice application pending*)
COVINGTON & BURLING LLP
850 Tenth Street NW
Washington, DC 20001
(202) 662-6000
jpatterson@cov.com

*Attorneys for Defendant
Lakeland Bank*

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>vs.<br><br>LAKELAND BANK,<br><br>       Defendant. | Case No. 2:22-cv-5746-CCC-SDA |

### DECLARATION OF ROXANNE CAMEJO

  1.  I, Roxanne Camejo, declare as follows:

  2.  I am Senior Vice President – Community Development Officer for Provident Bank, successor in interest of defendant Lakeland Bank ("Provident" or "Bank") pursuant to a merger completed May 16, 2024. As part of that merger, Provident assumed Lakeland's obligations pursuant to a consent order entered by this Court on September 29, 2022 ("Effective Date"). *See* ECF 4.

  3.  I submit this declaration in support of Provident's opposition to the motion for leave to appear *amicus curiae*. *See* ECF 10. This declaration is based on my personal

knowledge and review of business records and information within the knowledge of Provident. If called upon, I could competently testify thereto.

*   *   *

4.  Provident is committed to fair lending compliance. Following the closing of Provident's acquisition of Lakeland, I became one of the executives responsible for oversight of compliance with Lakeland's consent order. In connection with that responsibility, I reviewed the 2023 and 2024 annual submissions to DOJ that are required by Paragraph 44 of the consent order. Our objective—as articulated by Provident's CEO, its senior executive team, and its Board of Directors—has been to fully comply with the order, earning the right to exit the order. I believe we are meeting that objective. Not once have we been cited for a violation or deficiency under the consent order, and in some respects we have gone above and beyond what the order requires.

5.  The consent order required Lakeland to invest, over five years, at least $12 million in a loan subsidy fund, the purpose of which is to increase credit for applicants for home mortgage loans, home improvement loans, and home refinance loans in majority-Black and Hispanic census tracts in the Newark Lending Area. *See* ECF 4 at ¶ 23. We are on track to do so. To date, Lakeland, and now Provident, has invested $6.7 million, or 56% of the required $12 million subsidy.

6.  Achieving compliance with this provision has required investment of much more than the $6.7 million figure formally credited against the fund. To attract less-advantaged borrowers and offer them safe, secure and affordable home loans, the Bank developed a special purpose credit program and lent at below-market interest rates, in addition to providing lender-paid mortgage insurance and helping borrowers with down payment assistance or closing costs

from the subsidy fund. As of April 1, 2025, there were 451 residential mortgage loans within the lending portfolio related to the consent order. Because of the additional benefits offered by the Bank, under current conditions, the total cost of these loans over 8 years (the average life of a mortgage loan in our portfolio) will be approximately $71 million.

7. These costs translate directly to tangible benefits to borrowers in our community. For example, borrowers who are currently in the special purpose credit program benefit from an average interest rate reduction of 1.4% below market rate, yielding an estimated average savings per loan of approximately $140,000 over the life of the loan. Additionally, they can expect an average PMI savings per loan of approximately $10,000, bringing the total average savings per loan to over $150,000. These savings are in addition to the $15,000 down payment and/or closing cost assistance that is credited against the loan subsidy fund.

8. Simply put, Provident went above-and-beyond what was spelled out in the consent order in an effort to ensure the success of its loan subsidy commitment. And it will continue to do so: on May 28, 2025, Provident committed in writing to the Department of Justice that, because we saw the benefit of the mortgage loan subsidy to the community, we would continue to spend down the full $12 million loan subsidy fund even if the consent order were terminated early. *See* Exhibit 1.

9. Under the consent order, the Bank was also required within 18 months of the effective date, or March 29, 2024, to open two bank branches in majority-Black and Hispanic census tracts in Newark, New Jersey, and the Newark Lending Area, a term defined by the consent order to include the entirety of Essex, Morris, Somerset, Sussex, and Union counties in New Jersey. *See* ECF 4 at ¶¶ 3–4, 20. Lakeland timely obtained an extension from DOJ for this requirement with respect to the Newark branch because, among other reasons, once it entered

3

into a lease for the branch's location, the Bank was required to obtain permits to renovate and construct the branch. The branch opened in Newark on April 23, 2025, and held a grand opening ceremony on June 3, 2025, which was attended by the New Jersey Citizen Action Education Fund. The Bank satisfied the consent order's requirement to open a branch in the Newark Lending Area through its merger with Provident, which maintains several branches in majority-minority census tracts throughout the Newark Lending Area.

10. Proposed *amicus* New Jersey Citizen Action Education Fund suggests in its declaration in support of the motion for leave to appear *amicus curiae* that, were the consent order to be terminated early, Provident might elect to close its new Newark branch. *See* ECF 10-4 at ¶ 6. Provident has signed a 10-year lease for the location of this branch. Putting aside the fact that Provident cannot exit this lease transaction without significant financial consequences (nor does it intend to), the assertion that Provident would close this new branch is plainly at odds with the Bank's commitment to fulfilling its obligations under the consent order and the considerable efforts it has made toward compliance, as described above.

11. The consent order requires the Bank to provide training on an annual basis on the bank's compliance with the FHA, ECOA, and Regulation B, and its obligations under the consent order, to all employees and managers substantially involved in or responsible for mortgage lending, marketing, fair lending, or Community Reinvestment Act compliance, and to members of the Board of Directors. *See* ECF 4 at ¶ 10. Provident provides annual training on compliance with federal fair lending and housing laws to such employees and managers and has no intention of ceasing those trainings even if the Court grants DOJ's motion to terminate the consent order.

12. The Bank is also required to evaluate annually its Community Development Partnership Program. *See* ECF 4 at ¶ 29. The Community Development Partnership Program provides that the Bank will spend a minimum of $400,000 through partnerships established with community-based or governmental organizations that provide residents of majority-Black and Hispanic census tracts in the Newark Lending Area with services relating to credit, financial education, homeownership, and foreclosure prevention, the purpose of which is to increase access to home mortgage credit. *See id.* at ¶ 27. To date, Provident has delivered funds to twenty-two Community Development Partners totaling approximately $175,000. Provident intends to continue the Community Development Partnership Program and partner with not-for-profit organizations committed to promoting home ownership in majority-Black and Hispanic census tracts in the Newark Lending Area, even if the Court grants DOJ's motion to terminate the consent order.

13. In fact, both Provident's and Lakeland's annual contributions to proposed *amicus* New Jersey Citizen Action Education Fund preceded entry of the consent order. To the extent that New Jersey Citizen Action Education Fund's declaration implies that the funds they received from Lakeland and now Provident were made solely pursuant to the consent order, such implication unfairly ignores those prior contributions. Moreover, the order does not entitle New Jersey Citizen Action Education Fund to future payments. Provident has made no such commitment to the Department of Justice or New Jersey Citizen Action Education Fund, and Provident is free to choose appropriate partners to work with going forward, regardless of whether the consent order is terminated.

14. The consent order requires the Bank annually to evaluate its Advertising, Outreach, and Education Plan, under which Lakeland must spend at least $150,000 each year

during the order's term on advertising, outreach, consumer financial education, and credit counseling in the Newark Lending Area. *See* ECF 4 at ¶¶ 30, 32. Provident intends to continue spending on its advertising, outreach, consumer financial education, and credit counseling activities in the Newark Lending Area, even if the Court grants DOJ's motion to terminate the consent order.

*   *   *

15.  Provident was founded in Jersey City in 1839 and, for the better part of two centuries, it has continuously served its local community. We are proud of our community and we fully intend to continue to invest in it.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on June 20, 2025 at Hackensack, New Jersey.

*[signature]*
Roxanne Camejo