# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>LAKELAND BANK,<br><br>*Defendant*. | Civil Action No. 2:22-cv-5746-CCC<br><br>**Motion Day: July 7, 2025** |

## PROPOSED *AMICI CURIAE*'S BRIEF IN REPLY TO UNITED STATES' AND DEFENDANT'S OPPOSITION TO MOTION FOR LEAVE TO PARTICIPATE AS *AMICI CURIAE*

Eli Segal
John S. Stapleton
STAPLETON SEGAL COCHRAN LLC
1760 Market Street, Suite 403
Philadelphia, PA 19103
215-561-1500
esegal@stapletonsegal.com

Benjamin Geffen
Daniel Urevick-Ackelsberg*
PUBLIC INTEREST LAW CENTER
2 Penn Center
1500 JFK Blvd., Suite 802
Philadelphia, PA 19102
267-546-1308
bgeffen@pubintlaw.org

Attorneys for Proposed *Amici Curiae*

*Pro hac vice application filed

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

I.    Introduction ..................................................................................................... 1

II.    Facts ................................................................................................................ 2

III.    Argument ........................................................................................................ 3

    A.    Proposed *Amici Curiae* have a special, unrepresented, sufficiently impartial interest in the outcome of the case ............................................. 3

    B.    Proposed *Amici Curiae*'s participation is useful to the Court in analyzing the law that the Parties ignore. .............................................................. 7

        a.    Lakeland's call for absolute deference to the Parties is legally flawed. ………………………………………………………………...8

        b.    The Parties have again failed to demonstrate that termination is in the public interest. ................................................................................ 9

        c.    The terminations of previous consent orders demonstrate why termination is not appropriate here. .................................................... 11

IV.    Conclusion ................................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Acra Turf Club, LLC v. Zanzuccki*,
  No. CIV.A. 12-2775 MAS, 2014 WL 5465870 (D.N.J. Oct. 28, 2014) ..............4

*Argentum Med., LLC v. Noble Biomaterials*,
  No. 3:08-CV-1305, 2014 WL 4351531 (M.D. Pa. Sept. 2, 2014) .......................9

*BLOM Bank SAL v. Honickman*,
  145 S. Ct. 1612 (2025)..................................................................................8

*Budget Blinds, Inc. v. White*,
  536 F.3d 244 (3d Cir. 2008) .........................................................................9

*Bureau of Consumer Fin. Prot. v. Townstone Fin.*,
  No. 20-cv-4176, slip op. (N.D. Ill. June 12, 2025)..................................... 2, 4, 5

*Clarendon Ltd. v. Nu-West Indus., Inc.*,
  936 F.2d 127 (3d Cir. 1991) .........................................................................9

*Granillo v. FCA US LLC*,
  No. 16-153, 2018 WL 4676057, (D.N.J. Sept. 28, 2018)....................................3

*In re Meinen*,
  228 B.R. 368 (Bankr. W.D. Pa. 1998)..................................................................7

*James v. Glob. Tel\*Link Corp.*,
  No. 2:13-CV-04989-WJM-MF, 2020 WL 6194016 (D.N.J. Oct. 22, 2020) .......4

*Liberty Res., Inc. v. Phila. Hous. Auth.*,
  395 F. Supp. 2d 206 (E.D. Pa. 2005)..................................................................7

*Mayberry v. Maroney*,
  529 F.2d 332 (3d Cir. 1976) .........................................................................9

*Neonatology Assocs., P.A. v. Comm'r of Internal Revenue*,
  293 F.3d 128 (3d Cir. 2002) .........................................................................6

*New Jersey Prot. & Advoc., Inc. v. Twp. of Riverside*,
  No. 04-5914, 2006 WL 2226332, (D.N.J. Aug. 2, 2006) ..................................... 7

*Panzer v. Verde Energy USA, Inc.*,
  No. 19-3598, 2021 WL 2186422 (E.D. Pa. May 27, 2021) ............................... 7

*Sawka v. Healtheast, Inc.*,
  989 F.2d 138 (3d Cir. 1993) ............................................................................... 9

*SEC v. Ripple Labs*,
  20-cv-10832, ECF No. 989 at 4 (S.D.N.Y. June 26, 2025) ........................ 10, 11

*United States of America v. Trustmark National Bank*,
  2:21-cv-02664 (W.D. Tenn. May 20, 2025) ..................................................... 13

*United States v. Ameris Bank*,
  3:23-cv-01232 (M.D. Fla. May 19, 2025) ......................................................... 13

*United States v. Bancorpsouth Bank*,
  No. 16-cv-118 (N.D. Miss. Jan. 27, 2020) ........................................................ 12

*United States v. Bayer Corp.*,
  No. 07-0001, 2014 WL 12625934 (D.N.J. Oct. 23, 2014) .................................. 5

*United States v. ESSA Bank & Trust*,
  No. 23-cv-2065-MMB (E.D. Pa. June 17, 2025) ................................................ 4

*United States v. First Merchants Bank*,
  No. 19-cv-2365 (S.D. Ind. Dec. 28, 2022) ........................................................ 12

*United States v. Toyota Motor Credit Corp.*,
  No. 2:16-cv-725 (C.D. Cal. May 14, 2018) ...................................................... 12

*United States v. Union Sav. Bank*,
  16-cv-01172 (S.D. Ohio Dec. 28, 2016) ..................................................... 11, 12

*Waetzig v. Halliburton Energy Servs., Inc.*,
  145 S. Ct. 690 (2025) .......................................................................................... 8

*Waste Mgmt. of Pa., Inc. v. City of York*,
   162 F.R.D. 34 (M.D. Pa. 1995) ........................................................................................5

*Wharton v. Vaughn*,
   No. CV 01-6049, 2020 WL 733107, (E.D. Pa. Feb. 12, 2020) ...........................7

*Yip v. Pagano*,
   606 F. Supp. 1566 (D.N.J. 1985) ....................................................................................3

I.  **Introduction**

In 2022, after determining it was in the public interest, this Court entered a five-year-long Consent Order to remedy allegations of redlining by Lakeland Bank in and around the City of Newark. Last month, with more than two years of obligations remaining under the Consent Order, the United States filed a motion to terminate it. The ministerial appearance of that motion masked its serious deficiencies. While Rule 60(b)(6) requires exceptional circumstances, with an even greater burden upon a party seeking to modify a consent order, the United States provided no law and little justification. And it failed to disclose what is now apparent: Lakeland[1] has not come close to completing the terms of the Order.

Rather than grapple seriously with those failures, the United States and Lakeland (collectively, the "Parties") seek to keep three fair housing organizations from assisting this Court at all. Most critically, they argue this is a nonjusticiable matter of enforcement priorities, and therefore the Court seemingly need not analyze Rule 60 at all.

The Parties have it backward. This is not a question of current enforcement priorities; the enforcement action here ended long ago. This, rather, is a motion to vacate a court-approved consent order. Accordingly, compliance with Rule 60

---

[1] Lakeland has since been acquired by Provident Bank. For ease of reference, Proposed *Amici* will continue to refer to Lakeland.

1

comes first, and the Parties' failure to meet the Rule's standard dooms their effort. The United States is free to prioritize enforcement actions as it chooses; however, the relief it seeks *here* is granted only in extraordinary circumstances, and the Parties have identified none. In short, a party complying with an order of this Court is not extraordinary, it is expected, and the Pandora's Box the Parties seek to open should remain firmly shut. *See Bureau of Consumer Fin. Prot. v. Townstone Fin.*, No. 20-cv-4176, slip op. at 14 (N.D. Ill. June 12, 2025).

Accordingly, Proposed *Amici Curiae* respectfully request that their motion is granted, so that they may participate in this action and help the Court identify the full scope of the issues before it.

## II.  Facts

As is now apparent, a little more than halfway through the term of the Consent Order, Lakeland is about halfway through fulfilling its obligations. Lakeland has spent $6.7 million of the $12 million loan subsidy fund and $175,000 of the $400,000 minimum it is required to spend on its Community Development Partnership Program. ECF No. 24 at 2-3, 5. Moreover, halfway through the term of the Consent Order, Lakeland avers that it is meeting the Consent Order's ongoing terms, from its annual advertising requirements to recently opening a bank branch in Newark. *Id.* at 4-5. Lakeland does not aver that it has fully complied with any of

the Consent Order's terms but asserts that it can be depended upon to continue following those terms voluntarily even if they are no longer binding upon it.

### III. Argument

Proposed *Amici Curiae* have a special, unrepresented interest in this matter. And their participation has already proved useful, confirming that Lakeland has not fully complied with the terms of the Consent Order, while also continuing to offer what the Parties have failed to provide: an analysis of the law that governs the relief that the Parties seek. That law makes plain that the relief sought by the Parties should be rejected.

### A. Proposed *Amici Curiae* have a special, unrepresented, sufficiently impartial interest in the outcome of the case.

A party seeking *amicus* status must have a special interest in the case, unrepresented by the parties, with a sufficiently impartial position. *E.g.*, *Granillo v. FCA US LLC*, No. 16-153, 2018 WL 4676057, at *5 (D.N.J. Sept. 28, 2018) (quoting *Yip v. Pagano*, 606 F. Supp. 1566, 1568 (D.N.J. 1985)). Proposed *Amici* easily meet that standard.

To start, it is hard to imagine what other group would have a more sufficient interest in this case than three advocacy organizations with a decades-long history of working to ensure that the housing and lending markets of New Jersey, Pennsylvania, and the nation are free from discrimination. *See* ECF No. 10-2 at 4-5. This record of robust advocacy may be the reason the United States concedes

3

that New Jersey Citizen Action has a "particularized interest" in this matter. ECF No. 23 at 4.

Nor would Proposed *Amici*'s participation be unusual. That is, while Lakeland "is not aware of any previous court finding an *amicus* submission useful in these circumstances," ECF No. 24 at 17, Proposed *Amici* are aware of at least two. The National Fair Housing Alliance has sought and been granted *amicus* status in two other matters regarding the termination of analogous consent orders, while the Housing Equality Center of Pennsylvania has sought and been granted *amicus* status in one. *See Townstone*, No. 20-cv-4176, slip op. at 1-2 (N.D. Ill. June 12, 2025); *United States v. ESSA Bank & Trust*, No. 23-cv-2065-MMB, ECF No. 12 (E.D. Pa. June 17, 2025).

Moreover, the Parties' argument that they adequately represent Proposed *Amici*'s interests despite arguing a diametrically opposed position is self-evidently wrong. *See James v. Glob. Tel\*Link Corp.*, No. 2:13-CV-04989-WJM-MF, 2020 WL 6194016, at \*5 (D.N.J. Oct. 22, 2020) (allowing for *amicus* participation where "issues highlighted by [the proposed *amici*] . . . were not otherwise raised by either party to th[e] case," indicating that the interests of the proposed *amici* were "not represented by the parties in the case"); *Acra Turf Club, LLC v. Zanzuccki*, No. CIV.A. 12-2775 MAS, 2014 WL 5465870, at \*6 (D.N.J. Oct. 28, 2014) (granting leave to file an *amicus* brief where the *amicus* "wish[ed] to present

4

historical information to the Court . . . which the [*amicus*] claim[ed] ha[d] not been provided to the Court by the parties").

The participation of the United States does not change that outcome. *See Townstone*, No. 20-cv-4176, ECF No. 149 (N.D. Ill. April 8, 2025) ("[T]he motion for relief from and vacatur of stipulated final judgment and order is brought jointly by the parties, so the amici offer information and legal argument that the Court will not otherwise receive from the parties."); *United States v. Bayer Corp.*, No. 07-0001, 2014 WL 12625934, at *1 (D.N.J. Oct. 23, 2014) (granting *amicus* status to two trade organizations in a government enforcement action based on an alleged violation of a consent decree because they had "a strong interest in the outcome of [the] case, particularly as it relates to the federal regulatory and statutory scheme," and they "submitted thorough and informative briefs, which [were] of assistance to the Court").

Finally, Lakeland's arguments about impartiality are easily dismissed. "[B]y the nature of things an *amicus* is not normally impartial." *Waste Mgmt. of Pa., Inc. v. City of York*, 162 F.R.D. 34, 36 (M.D. Pa. 1995). However, in its duty of candor, Citizen Action identified for the Court that it received small grants from Lakeland pursuant to the Consent Order's Community Development Partnership Program. ECF No. 10-2 at 1-2. Lakeland describes the disclosure of these grants as factually

5

"incorrect[]" in one breath, while suggesting in the next that the grants are grounds for denying the motion. ECF No. 24 at 11.

Lakeland is wrong on both accounts. Citizen Action did receive small grants pursuant to the Order's provisions, as Lakeland's website and declaration here make clear,[2] and as Lakeland and Citizen Action agree may not occur in the future. Regardless, neither those small donations to Citizen Action nor Proposed *Amici*'s interest in a housing market free of discrimination bars their participation here, because a touchstone of the judicial system is that "strong (but fair) advocacy on behalf of opposing views promotes sound decision making." *Neonatology Assocs., P.A. v. Comm'r of Internal Revenue*, 293 F.3d 128, 131 (3d Cir. 2002) (Alito, J.). Accordingly, "parties with pecuniary, as well as policy, interests" in the outcome of cases who nevertheless "make[] a strong but responsible presentation in support of a party can truly serve as the court's friend." *Id.* at 131-32; *see also Panzer v. Verde Energy USA, Inc.*, No. 19-3598, 2021 WL 2186422, at *4 (E.D. Pa. May 27,

---

[2] *See Provident Bank Announces $88,000 in Grants to Nine New Jersey Non-Profit Organizations*, Provident Bank (Sep. 16, 2024), https://www.provident.bank/press-releases/provident-bank-announces-88-000-in-grants-to-nine-new-jersey-non-profit-organizations; ECF No. 24-1 at 5 ("To the extent that New Jersey Citizen Action Education Fund's declaration implies that the funds they received from Lakeland and now Provident were made *solely* pursuant to the consent order, such implication unfairly ignores those prior contributions.") (emphasis added).

6

2021) (large donations from various firms representing the plaintiffs did not disqualify the organization from *amicus* status); ECF No. 10-2 at 8-9.

    **B.    Proposed *Amici Curiae*'s participation is useful to the Court in analyzing the law that the Parties ignore.**

Most critically, courts ask whether a proposed *amicus* brief would be helpful, as "[t]he purpose of *amicus* appearances is to assist the Court in reaching the right decision in a case affected with the interest of the general public." *New Jersey Prot. & Advoc., Inc. v. Twp. of Riverside*, No. 04-5914, 2006 WL 2226332, at *5 (D.N.J. Aug. 2, 2006) (internal quotation omitted). Here Proposed *Amici* are especially useful. The Parties' arguments to the contrary—which ignore the standard for the motion they make—demonstrate that point best.[3]

---

[3] Lakeland cites out-of-circuit sources, including an article from Colorado Lawyer Magazine, to suggest that Proposed *Amici*'s inclusion of a declaration was improper. ECF No. 24 at 13 n.10. Putting aside that the facts in that declaration do not seem to be in dispute, Lakeland argues for a rule that does not exist in place of the rule that does: whether participation from *amici* is helpful to the Court. *See, e.g.*, *Wharton v. Vaughn*, No. CV 01-6049, 2020 WL 733107, at *3 (E.D. Pa. Feb. 12, 2020) (relying on *amicus* brief which pointed to new facts, evidence, and records, and produced new declarations); *Liberty Res., Inc. v. Phila. Hous. Auth.*, 395 F. Supp. 2d 206, 209 (E.D. Pa. 2005) (granting *amicus* status to an organization "offer[ing] information that [was] both timely and useful concerning the rights of nonparties who [were] affected by th[e] litigation"); *In re Meinen*, 228 B.R. 368, 376 (Bankr. W.D. Pa. 1998) (*Amicus* did not exceed its role by filing a supporting affidavit because, among other things, "the affidavit was only offered to assist the Court in considering [the] brief" and the "Court can either accept or reject the affidavit for consideration as it sees fit").

### a. Lakeland's call for absolute deference to the Parties is legally flawed.

Lakeland first argues that this Court should not bother to inquire about this matter at all. To Lakeland, this is all a "generalized disagreement with Department of Justice enforcement priorities." ECF No. 24 at 8. Accordingly, Lakeland argues, the matter is a "non-justiciable" attempt to have "a court . . . intervene to compel an agency to fulfill particular functions." *Id.* at 10, 15. This, Lakeland argues, "is not a fight in which the Bank should be required to engage—nor is it one that this Court need adjudicate." *Id*. at 2. In sum, Lakeland wants relief from its commitments through a motion it did not file, it wants that relief to be unreviewable, and it wants that relief without ever reaching the critical inquiry under Rule 60(b).

Lakeland has the sequence wrong. A party "must first satisfy Rule 60(b) on its own terms and obtain Rule 60(b) relief before" proceeding further. *BLOM Bank SAL v. Honickman*, 145 S. Ct. 1612, 1619 (2025); *see also Waetzig v. Halliburton Energy Servs., Inc.*, 145 S. Ct. 690, 696 (2025) (entitlement to Rule 60(b) relief "must be addressed before any subsequent jurisdictional question is considered").[4]

---

[4] The United States argues *BLOM Bank* is distinguishable because it is a motion to vacate. ECF No. 23 at 7 n.2. Lakeland makes a similar argument regarding the court's rejection of the United States' motion to vacate in *Townstone*. ECF No. 24 at 17-18. As explained by Proposed *Amici* in their brief, the Rule 60 analysis is indistinguishable. *See* ECF No. 10-3 at 10.

Absolute deference is not an option: "As emphasized by the Third Circuit, the Court's 'duty lies not in the direction of an automatic acquiescence to the parties' request, but rather with a deliberate consideration of the policy that will best serve the public good.'" *Argentum Med., LLC v. Noble Biomaterials*, No. 3:08-CV-1305, 2014 WL 4351531, at *3 (M.D. Pa. Sept. 2, 2014) (quoting *Clarendon Ltd. v. Nu-West Indus., Inc.*, 936 F.2d 127, 129 (3d Cir. 1991)). If the Parties want relief, they must demonstrate they are entitled to it.

### b. The Parties have again failed to demonstrate that termination is in the public interest.

Parties seeking relief under Rule 60(b)(6) need to demonstrate "extraordinary circumstances where, without such relief, an extreme and unexpected hardship would occur." *Sawka v. Healtheast, Inc.*, 989 F.2d 138, 140 (3d Cir. 1993). "[E]xtraordinary circumstances rarely exist when a party seeks relief from a judgment that resulted from the party's deliberate choices." *Budget Blinds, Inc. v. White*, 536 F.3d 244, 255 (3d Cir. 2008). Those extraordinary circumstances must include a demonstration that relief from an order is in the public interest. *Mayberry v. Maroney*, 529 F.2d 332, 335 (3d Cir. 1976).

Three years ago, pursuant to a counseled agreement, this Court entered a five-year Consent Order, declaring compliance with it to be "in the public interest." ECF No. 4 at 2. One motion, two memoranda, and one declaration later, "none of this has changed—and the parties hardly pretend that it has." *See SEC v.*

9

*Ripple Labs*, 20-cv-10832, ECF No. 989 at 4 (S.D.N.Y. June 26, 2025) (denying joint motion for an indicative ruling to dissolve an injunction and reduce a monetary penalty under Rule 60). Lakeland's argument that this case "concerns only one enforcement action against one bank," ECF No. 24 at 15, is wrong and of no moment. *Ripple Labs*, 20-cv-10832, ECF No. 989 at 4 ("The parties argue that the public interest here is—now, at least—'relatively small' because the injunction and Civil Penalty concern only 'the unique facts of this case.' Wrong.") (internal citation omitted). There is no pending enforcement action; that was disposed of long ago. At issue here, instead, is a court-approved consent order. And, putting aside Lakeland's description of its own "exemplary" efforts, the parties have now confirmed that this judgment is proceeding on the most ordinary course of all: approximately halfway through the term of the Consent Order, Lakeland is approximately halfway through its obligations.

Similarly, the Parties readily admit the next two-plus years of compliance with the terms of the Consent Order remain in the public interest. Indeed, Lakeland promises to continue with its terms, financial and otherwise, but only after converting those terms from obligations to unenforceable promises.[5] Little about

---

[5] Lakeland describes Proposed *Amici*'s characterization of these promises as unenforceable to be "partisan" and "inaccurate in some respects." ECF No. 24 at 12. The only support Lakeland provides for that contention are the same unenforceable promises. *Id.* at 12, n.9.

10

this argument makes sense. *See Ripple Labs*, 20-cv-10832, ECF No. 989 at 4 ("Indeed, if the Court should not be concerned about Ripple violating the law, why do the parties want to eliminate the injunction that tells Ripple, 'Follow the law'?"). It is understandable that Lakeland would prefer to convert legally binding requirements into promises of continued good behavior, but there is no reason why this Court should sign off on that request.

### c. The terminations of previous consent orders demonstrate why termination is not appropriate here.

Lakeland also argues that the termination is "consistent with many other early terminations pursued by both current and prior administrations, and approved by courts." ECF No. 24 at 5-6. Lakeland fails to analyze those decisions or explain how they fit within the Rule 60 analysis. Regardless, those terminations further demonstrate what is lacking here.

For example, Lakeland cites *United States v. Union Savings Bank*, where the United States alleged a financial institution discriminated based on race in urban lending markets in Ohio and Indiana. *See* 16-cv-01172, ECF No. 2 at 2-3 (S.D. Ohio Dec. 28, 2016). The consent order entered in that matter spelled out both time and monetary conditions which, if met, would allow the order to be terminated after three years:

> If, at any time after three years from the Effective Date, the Banks have invested all money in the Loan Subsidy Program and satisfied their other financial obligations under the Order (set forth in Paragraphs 22, 29, and

11

30), the United States will agree to the Order terminating three months after the Banks have provided the United States with documentation evidencing that they have satisfied their financial obligations under this Order.

*Id.* at 22 ¶ 45.

Three years and one month later, the parties returned to the court, and averred that those time and monetary conditions were met. *Id.* at ECF No. 6 (Feb. 20, 2020). Accordingly, the motion to terminate was granted. *Id.* at ECF No. 7 (Feb. 21, 2020). In other words, the order, *by its own terms*, was complied with and terminated. The remaining pre-2025 authorities relied upon by Lakeland are in accord.[6] No similar terms are present in the Consent Order entered here. In fact, the Bank's ongoing compliance is precisely what is mandated by the Order itself.

---

[6] *See United States v. First Merchants Bank*, No. 19-cv-2365, ECF No. 15 (S.D. Ind. Dec. 28, 2022) (settlement agreement and agreed order shall remain in effect for four years "except if substantial progress is shown by the Bank in increasing its lending in majority-Black census tracks in Indianapolis-Marion County, the parties may seek Court approval to terminate [the settlement agreement] after three years," and the parties sought termination pursuant to that term of the agreement after three years had passed and terms were "met or exceeded"); *United States v. Bancorpsouth Bank*, No. 16-cv-118, ECF No. 15 (N.D. Miss. Jan. 27, 2020) (Consent order stated that "[a]t any time after the [Consent] Order has been in effect for three years, the parties may file a joint motion to terminate this [Consent] Order, which motion may be proposed by Defendant if Defendant has fully complied with all its terms, including, but not limited to, the disbursement of all funds in the Loan Subsidy Program, and accomplished the remedial goals of the [Consent] Order, as determined by Plaintiffs," and the parties jointly moved for early termination pursuant to that term of the Order after three years had passed); *United States v. Toyota Motor Credit Corp.*, No. 2:16-cv-725, ECF 25 (C.D. Cal. May 14, 2018) (Consent order, by its terms, terminated "three (3) years from the Effective Date, unless Toyota conducts a portfolio-wide analysis, as described in this paragraph, that yields dealer markup disparities based on race or national

12

Even Lakeland's reliance on the recent early terminations in *United States v. Trustmark National Bank* and *United States v. Ameris Bank*, which were granted by courts that did not receive the benefit of adversarial briefing, elides a material distinction from Lakeland's effort here: the loan subsidy funds required by the consent orders in those cases were fully exhausted.[7] The Consent Order at issue here has a wide range of programmatic and monetary obligations beyond the loan subsidy fund, and Proposed *Amici* do not concede that merely exhausting that fund would be sufficient for termination in the first instance. But regardless, the Parties concede that Lakeland remains millions of dollars short of even that obligation but seek relief anyway. Rule 60(b) precludes it.

---

origin below the agreed upon target for both African-American and Asian and/or Pacific Islander borrowers, in which case the Consent Order shall terminate two (2) years after the Effective Date," and Toyota fulfilled the requirement for termination at the two year mark).

[7] *United States of America v. Trustmark National Bank*, 2:21-cv-02664, ECF No. 28 (W.D. Tenn. May 20, 2025); *United States v. Ameris Bank*, 3:23-cv-01232, ECF No. 15 (M.D. Fla. May 19, 2025).

## IV. Conclusion

Proposed *Amici Curiae* respectfully request that this Court grant their motion, grant them *amici* status, docket their Proposed Brief, and, if appropriate, hold argument on the United States' Motion.

Dated: June 30, 2025

Respectfully submitted,

By: */s/ Eli Segal*
Eli Segal
John S. Stapleton
STAPLETON SEGAL COCHRAN LLC
1760 Market Street, Suite 403
Philadelphia, PA 19103
215-561-1500
esegal@stapletonsegal.com

Benjamin Geffen
Daniel Urevick-Ackelsberg*
PUBLIC INTEREST LAW CENTER
2 Penn Center
1500 JFK Blvd., Suite 802
Philadelphia, PA 19102
267-546-1308
bgeffen@pubintlaw.org

Attorneys for Proposed *Amici Curiae*

**Pro hac vice* application filed

14

## **CERTIFICATE OF SERVICE**

I, Eli Segal, hereby certify that on this date, I caused the foregoing document to be filed electronically with this Court, where it is available for viewing and downloading from the Court's ECF system by the Court and all parties.

Dated: June 30, 2025                                          By: */s/ Eli Segal*
                                                                              Eli Segal