Eli Segal
John S. Stapleton
STAPLETON SEGAL COCHRAN LLC
1760 Market Street, Suite 403
Philadelphia, PA 19103
215-561-1500
esegal@stapletonsegal.com

Benjamin Geffen
Daniel Urevick-Ackelsberg*
PUBLIC INTEREST LAW CENTER
2 Penn Center
1500 JFK Blvd., Suite 802
Philadelphia, PA 19102
267-546-1308
bgeffen@pubintlaw.org

Attorneys for Proposed *Amici Curiae*

**Pro hac vice*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,

    *Plaintiff*,

    v.

LAKELAND BANK,

    *Defendant*.

Civil Action No. 2:22-cv-5746-CCC

## NOTICE OF SUPPLEMENTAL AUTHORITY

New Jersey Citizen Action Education Fund, Housing Equality Center of Pennsylvania, and National Fair Housing Alliance notify the Court of "pertinent and

significant authorit[y]" issued after the filing of their motion for leave to participate as *amici curiae* in this matter.[1]

On November 24, 2025, the United States District Court for the District of Maine considered a joint motion to modify a settlement agreement reached by the United States and the State of Maine in a matter brought by the United States "to enforce the rights of Maine children with behavioral health disabilities who are unnecessarily segregated—or at serious risk of segregation—in institutions because Maine has failed to provide them access to the behavioral health services they need in the community." *United States v. Maine*, No. 1:24-cv-00315-SDN, slip op. at 1 (D. Me. Nov. 24, 2025). A group of public interest organizations filed an *amicus* brief opposing the anticipated joint motion. *Id*.

The Court determined that the settlement agreement at issue was akin to a consent decree and that, therefore, Federal Rule of Civil Procedure 60(b)— specifically, Rule 60(b)(5)—governed the joint motion for modification. The Court

---

[1] *See Patlan v. BMW of N. Am., LLC*, No. 18-CV-09546, 2024 WL 1328012, at *4 (D.N.J. Mar. 28, 2024) (Cecchi, J.) (quoting *Atkins v. Capri Training Ctr., Inc.*, No. 2:13-CV-06820 SDW, 2014 WL 4930906, at *10 (D.N.J. Oct. 1, 2014)) ("Generally, if pertinent and significant authorities come to a party's attention after the party's brief has been filed, the party may advise the court of the relevant authority through a Notice of Supplemental Authority; however, a Notice of Supplemental Authority should not advance new arguments that were absent from the movant's complaint.").

applied the strict Rule 60(b)(5) standard articulated in *Rufo v. Inmates of Suffolk County Jail*, "which requires a showing of a 'significant change' in facts or law rendering compliance 'onerous,' 'unworkable,' or 'detrimental to the public interest.'" *Id.* at 8 (quoting 502 U.S. 367, 384 (1992)). The Court rejected the United States' argument that a more "flexible" standard should apply, holding that the proposed modifications were not mere "'minor changes in extraneous details'" and that neither the joint nature of the motion nor the fact that the government filed it warranted relaxing Rule 60(b)(5)'s requirements. *Id.* at 8–10 (quoting Rufo, 502 U.S. at 383 n.7).

In applying Rule 60(b)(5), the Court concluded that neither party had shown that there had been "'a significant change either in factual conditions or in law [that] render[ed] continued enforcement detrimental to the public interest' such that modification [was] appropriate." *Id.* at 10 (quoting *Horne v. Flores*, 557 U.S. 433, 447 (2009) (quotation modified)). In discussing the parties' proposed elimination of an Independent Reviewer requirement—which the Court described as the "most contested" proposed modification——the Court found that the State's assertion that it would voluntarily retain the Reviewer going forward "cut[] against a conclusion that . . . the original agreement[] is unworkable." *Id.* at 1, 10.

After considering all relevant factors, the Court denied the joint motion.

Proposed *Amici* attach a copy of the decision in *United States v. Maine* for this Court's review, as Exhibit A.

Dated: December 3, 2025                Respectfully submitted,

                                       By: */s/ Eli Segal*
                                       Eli Segal
                                       John S. Stapleton
                                       STAPLETON SEGAL COCHRAN LLC
                                       1760 Market Street, Suite 403
                                       Philadelphia, PA 19103
                                       215-561-1500
                                       esegal@stapletonsegal.com

                                       Benjamin Geffen
                                       Daniel Urevick-Ackelsberg*
                                       PUBLIC INTEREST LAW CENTER
                                       2 Penn Center
                                       1500 JFK Blvd., Suite 802
                                       Philadelphia, PA 19102
                                       267-546-1308
                                       bgeffen@pubintlaw.org

                                       *Attorneys for Proposed Amici Curiae*

                                       *\*Pro hac vice*

# <u>EXHIBIT A</u>

2025 WL 3267693
Only the Westlaw citation
is currently available.
United States District Court, D. Maine.

UNITED STATES OF
AMERICA, Plaintiff,
v.
STATE OF MAINE, Defendant.

1:24-cv-00315-SDN
|
Filed 11/24/2025

**Attorneys and Law Firms**

Victoria Thomas, Danielle Beth Rosenthal, DOJ-CRT, Washington, DC, for Plaintiff.

Kimberly L. Patwardhan, Thomas A. Knowlton, Office of the Attorney General, Augusta, ME, for Defendant.

## ORDER ON JOINT MOTION TO AMEND SETTLEMENT AGREEMENT

Stacey D. Neumann United States District Judge

 **\*1** This issue is before the Court on a joint motion by the United States of America and State of Maine ("the Parties"), ECF No. 31, to modify the Settlement Agreement, ECF No. 20-1, in this case. The Parties seek to make several amendments to the original Settlement Agreement, including, among other things, the removal of an Independent Reviewer position. *See* ECF Nos. 31 at 1–2 (Motion to Amend), 31-1 (Proposed Modified Agreement). For the reasons that follow, the Parties' motion to amend is DENIED.

### I. Background

In September 2024, the United States brought this matter against the State of Maine, seeking "to enforce the rights of Maine children with behavioral health disabilities who are unnecessarily segregated—or at serious risk of segregation—in institutions because Maine has failed to provide them access to the behavioral health services they need in the community." ECF No. 1 at 1. On November 26, 2024, the Parties reached a Settlement Agreement and jointly moved to dismiss the action and for this Court to retain jurisdiction over the matter in order to enforce the Agreement. ECF No. 17. Among other provisions, the November 2024 Settlement Agreement included a provision for an "independent reviewer" to "gather, analyze, and report on information and data reflecting the State's progress in complying with all sections of this [Settlement] Agreement." ECF No. 20-1 at 25. On December 20, 2024, I entered an Order granting the motion to dismiss and retaining jurisdiction to enforce the Parties' Settlement Agreement, and attached the Settlement Agreement as an exhibit to the Order. *See* ECF No. 20 (Dismissal Order). The Clerk of Court entered a judgment of dismissal on December 20, 2024. ECF No. 21.

Seven months later, on July 28, 2025, a group of four public interest organizations—Disability Rights Maine, the American Civil Liberties Union of Maine, GLAD Law, and the Center for Public Representation (collectively "the Coalition")—filed a motion for leave to file

an amicus brief in anticipation of the Parties filing a joint motion to amend the Settlement Agreement, ECF No. 24, which the Parties opposed, ECF Nos. 28, 29. I granted the motion for leave to file an amicus brief. ECF No. 35.

On September 2, 2025, the Parties filed the instant joint motion to amend the Settlement Agreement. ECF No. 31. The Coalition urges me to reject the joint motion to modify the Agreement. ECF 37. After further briefing by the Coalition and the Parties, *see* ECF Nos. 41, 43, I set the matter for oral argument on October 22, 2025, ECF No. 51. Following the hearing, the Parties and Coalition submitted another round of briefing addressing the Court's authority to grant or deny the Proposed Modified Agreement. *See* ECF Nos. 53, 54, 55, 56, 57.

## A. Proposed Modifications

There are several requested modifications to the Settlement Agreement, which can be organized into general categories. *See* ECF No. 31-2. The first modification concerns individual assessments for children who have been arrested and adds language that the arrest must be made known to the Maine Department of Health and Human Services ("DHHS") in order to trigger review. ECF No. 31-2 at III.A.3.iv; *id.* at III.B.7.x.b. The second lowers the frequency of reporting about children whose families reject home services or who are found to need services that cannot be provided at home. *Id.* at III.B.8.v. The third— and seemingly most contested point—removes the Independent Reviewer position, to whom the State was obligated to provide data on its

compliance with the Agreement.[1] *Id.* at IX, XI. Downstream of removing that position, the Proposed Modified Agreement dispenses with the Independent Reviewer's assessments for certain children. *Id.* at III.B.8.vi. The fourth modification removes requirements for the State to engage in community outreach with families, children, and stakeholders, including members of the Coalition. *Id.* at V.A. The fifth and sixth modifications change the State's reporting and training requirements. *Id.* at VI.G, VI.I. The final change removes the State's requirement to conduct community reintegration planning for children committed to a juvenile correction facility. *Id.* at IX.H. The Proposed Modified Agreement also requires the State to submit to the United States a new implementation plan by November 1, 2025, a deadline which precedes the date of this Order. *Id.* at IX.B.

## II. Discussion

**\*2**  In the pending motion, the Parties seek to modify the Settlement Agreement—which they voluntarily entered into—over the objection of the Coalition, which is not a party to the Agreement. The Court's Dismissal Order of the underlying case—issued pursuant to Federal Rule of Civil Procedure 41(a)(2)[2]—states "the Court specifically retains jurisdiction to enforce the Parties' Settlement Agreement, attached to this Order as Exhibit A, in accordance with its terms and for its duration."[3] ECF No. 20 at 1. The Court thus retains ancillary jurisdiction over the enforcement of the Settlement Agreement for the duration of the Agreement's terms. *See Commw. Sch., Inc.*

*v. Commw. Acad. Holdings LLC*, 994 F.3d 77, 84 (1st Cir. 2021) ("[T]he district court may retain jurisdiction to enforce a settlement in a dismissed case as long as the order of dismissal either incorporates the settlement agreement or explicitly reserves jurisdiction to enforce the settlement."); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994) (recognizing "ancillary jurisdiction" over a "settlement agreement [that] had been made part of the order of dismissal"). Because this Court expressly retained jurisdiction in its Dismissal Order and incorporated the terms of the Settlement Agreement into its Order by attaching the Agreement as an exhibit, this Court "has jurisdiction to *enforce* the terms of the Settlement Agreement."[4] *Warren v. City of Chico*, No. 2:21-CV-00640, 2025 WL 974068, at *3 (E.D. Cal. Mar. 31, 2025) (emphasis in original); *see Riggs v. Johnson Cnty.*, 73 U.S. (6 Wall.) 166, 187 (1867) ("[T]he rule is universal, that if the power is conferred to render the judgment or enter the decree, it also includes the power to issue proper process to enforce such judgment or decree.").

The crux of the issue before the Court today is under what circumstances the Court may grant the relief requested. The operative modification clause in the Settlement Agreement states, "This Agreement may be modified only by consent of the Parties in writing, signed by both Parties and approval of the Court except that the Parties may extend any time limit or deadline in this Agreement, other than the termination date, by mutual written consent without Court approval." ECF No. 20-1 at XIV.G. The Parties and Coalition dispute the extent of the Court's authority to approve, or—more to the point —not approve, the joint modification. The Coalition contends the Settlement Agreement should be evaluated under the requirements of Federal Rule of Civil Procedure 60(b), which requires a heightened showing of a change in circumstances warranting the modification and heavily prioritizes protecting the finality of judgments. Thus, according to the Coalition, because the Parties cannot meet the 60(b) standard, the Court should deny the request to modify the Agreement. ECF No. 55 at 2. The Parties contend Rule 60(b) does not apply and the Court should grant the joint motion without applying Rule 60(b) because the jointly agreed-upon changes are "unrelated to remedying the violation" at issue and "do not lessen Maine's obligations to children with behavioral health disabilities under the Agreement." ECF No. 57 at 2. Alternatively, the United States posits the Proposed Modified Agreement meets the "flexible" Rule 60(b) standard, which should give "significant weight" to the views of government officials. ECF No. 53 at 2.

## A. Applicable Standard for Modification

### 1. Terms of the Agreement

Both the State of Maine and the United States argue the Court should grant the modification request because the express terms of the Agreement allow the Parties to jointly amend with court approval. *See* ECF No. 41 at 1; ECF No. 54 at 3. The Parties make several sub-arguments which are interwoven with this overarching concept. The Coalition asserts that the Settlement Agreement is effectively a consent decree, modifiable only upon a

heightened showing of changed circumstances pursuant to Rule 60(b). *See* ECF No. 55 at 2.

**\*3** *First*, the Parties urge the Court to confine its analysis to the terms of the Agreement itself, which does not specify a standard for modification or require an analysis under Rule 60(b). The Coalition contends that even if the Court considers only the terms of the Agreement, the language of the modification provision—with "consent of the Parties in writing ... and approval of the Court," together with the Court's retention of jurisdiction to enforce the Agreement, ECF No. 20-1 at XIV.G —parallels that of a conventional consent decree. Accordingly, the Coalition argues, the requirements of Rule 60(b) must be satisfied to reopen and modify the final judgment order. *See* ECF No. 55 at 6; *Hutchinson ex rel. Julien v. Patrick*, 636 F.3d 1, 11 (1st Cir. 2011) ("The need for court approval of revisions in the terms of the Agreement closely resembles the process for amending a conventional consent decree.").

The United States cites two cases in support of its position that a court is limited to considering only the terms of the agreement when evaluating a joint motion for modification. First, it cites to *United States v. City of Seattle*, No. C12-1282, 2023 WL 5803364 (W.D. Wash. Sept. 7, 2023), in which the parties sought termination of a consent decree that could occur, per the terms of the consent decree, only upon a finding of "sustained compliance" with its provisions. *Id.* at *1. Relevantly, the parties in *Seattle* were not seeking modification. *Id.* at *2. The *Seattle* court granted the joint motion solely "to the extent the Parties s[ought] a finding that the City ha[d] sustained full and effective compliance, for at least two

years, with the commitments set forth in the Consent Decree." *Id.* at *1. Because the decree there explicitly set the standard under which termination—not modification—could occur, it provides limited guidance here. What is instructive, however, is the *Seattle* court's observation that the consent decree "is an order of the court, and therefore it is the responsibility of the court—rather than of the Parties—to determine when it is appropriate to terminate the Consent Decree and dismiss this action." *Id.* at *2.

The United States also cites to *United States v. North Carolina*, No. 5:12-cv-557, slip op. (E.D.N.C. Dec. 12, 2024), Dkt. No. 48, in which the parties moved jointly for a modification to their court-ordered settlement agreement based on substantial compliance by the State. *See* Dkt. No. 47 at 4. The district court granted the motion without analysis or explanation in a one-paragraph order. *See* Dkt. No. 48. Thus, *North Carolina* does not support the parties' contention that the joint motion should be granted here, where the parties are not arguing compliance. *See* ECF No. 53 at 1.

By contrast, two First Circuit cases offer instructive guidance for evaluating a settlement agreement that has been incorporated into a court order to determine whether it functions, in substance, as a consent decree. In *Aronov v. Napolitano*, 562 F.3d 84 (1st Cir. 2009) (en banc), the First Circuit considered whether a court-ordered settlement agreement sufficed to support an award of attorneys' fees under a statute permitting fees for "court-ordered consent decree[s]." *Id.* at 89. To determine whether the court-ordered settlement agreement at issue was sufficiently akin to a

consent decree, the court instructed "that the formal label of 'consent decree' need not be attached [to the order at issue]; it is the reality, not the nomenclature[,] which is at issue." *Id.* at 90. The critical inquiry is not what the order's label says, but whether the order is the "functional equivalent of a consent decree" or "whether the order contains the sort of judicial involvement and actions inherent in a 'court-ordered consent decree.' " *Id.*

In *Hutchinson ex rel. Julien v. Patrick*, 636 F.3d 1, the First Circuit again considered in the attorneys' fees context whether a court-approved settlement agreement was sufficiently similar to a consent decree. In concluding the order at issue qualified as a consent decree, the court emphasized the "district court's ongoing role" with the settlement agreement and the fact that the agreement "is subject to modification only upon mutual written assent of the parties *and* with the court's concurrence." *Id.* at 11 (emphasis in original). The court took pains to note that "[t]he need for court approval of revisions in the terms of the Agreement closely resembles the process for amending a conventional consent decree." *Id.*

**\*4** According to *Aronov* and *Hutchinson*, the Court must assess the substance of an agreement incorporated into a court order to determine whether a dismissal order incorporating the agreement functions as a consent decree with its attendant obligations. Accordingly, the Court rejects the Parties' argument that it is constrained to consider solely the text and title of the Agreement rather than the substance of the Agreement and its relationship to the Dismissal Order,

which retains jurisdiction and incorporates the Agreement.

*Second*, the State of Maine asserts that the Order dismissing the matter and attaching the Agreement is not a consent decree and instead constitutes a conditional dismissal under Federal Rule of Civil Procedure 41(a)(2). *See* ECF No. 54 at 4. As such, according to the State, the Court should evaluate the proposed modification under the same standard it applied when granting the original Settlement in December 2024. *See id.* The Coalition disputes this premise, arguing that such a standard is unworkable and provides no clear benchmark for evaluation. ECF No. 56 at 4.

Under Rule 41(a)(2), "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). The purpose of such a dismissal is to permit the plaintiff, with the Court's approval, to voluntarily dismiss an action "as long as 'no other party will be prejudiced.' " *Doe v. Urohealth Sys., Inc.*, 216 F.3d 157, 160 (1st Cir. 2000) (quoting *P.R. Maritime Shipping Auth. v. Leith*, 668 F.2d 46, 50 (1st Cir. 1981)). According to the State, because the Court originally dismissed the case according to Rule 41(a)(2), it necessarily "determined the [original] dismissal terms were 'proper.' " ECF No. 54 at 6. The State argues that therefore the Court should apply the "same review" to the modification request, particularly where the "Modified Agreement is of limited duration and does not require ongoing Court involvement," and the "Parties have agreed to the modification, and the substantive relief in the Modified Agreement remains unchanged." *Id.*

Strangely, the Parties do not directly address the fact that Rule 41(a)(2) applies to "Dismissal of Actions" whereas what they seek here is a modification of an agreement that requires Court approval. In evaluating a voluntary *dismissal* under Rule 41(a)(2), the Court may consider factors such as " 'the defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation [of] the need to take a dismissal, and the fact that a motion for summary judgment has been filed by the defendant.' " *Colón-Cabrera v. Esso Standard Oil Co. (P.R.), Inc.*, 723 F.3d 82, 88 (1st Cir. 2013) (quoting *Doe*, 216 F.3d at 160). None of those considerations neatly map onto the question of whether the Proposed Modified Agreement should be granted, presumably because Rule 41 applies to dismissals, not modifications. "Because '[i]t is not the obligation of [the] court to research and construct the legal arguments open to parties, especially when they are represented by counsel,' a 'district court is free to disregard arguments that are not adequately developed.' " *Michnovez v. Blair, LLC*, No. 10-CV-110, 2011 WL 3665412, at *1 (D.N.H. Aug. 22, 2011) (quoting *Kauthar SDN BHD v. Sternberg*, 149 F.3d 659, 668 (7th Cir. 1998), then quoting *Higgins v. New Balance Ath. Shoe, Inc.*, 194 F.3d 252, 260 (1st Cir. 1999)). Here, the Parties evince no argument as to why the modification would be "proper" or not prejudicial, let alone why the Court should apply a rule governing dismissals to a proposed modification of a settlement agreement that the Court must approve, or not, for effectuation. The Court therefore finds no benchmark against which to measure whether

the proposed modifications would have been granted or denied in December 2024 and rejects this second argument.

**\*5** *Third*, the United States emphasizes that courts have routinely granted similar modifications without applying Rule 60(b). *See* ECF No. 53 at 1. The Coalition submits the cases the United States cites are inapposite and do not squarely address the question of whether Rule 60(b) applies in this context. *See* ECF No. 55 at 5–6.

Upon inspection of the cited cases, the Court agrees with the Coalition. In *Seattle*, 2023 WL 5803364, the parties sought termination of a consent decree and the court was therefore limited to determining whether the parties had substantially complied with its terms. There was no reason for the court to invoke Rule 60(b) because the consent decree itself spelled out the standard for termination. In *Stuart v. Roache*, No. 89-2348, 1991 WL 487238 (D. Mass. Apr. 12, 1991), one sentence in the factual background reflected that the district court granted a motion to modify a consent decree, presumably without applying Rule 60(b) but providing no analysis or explanation. *See id.* at *2 ("Judge McNaught granted the joint motion by MAMLEO and the Department to extend the consent decree to cover one additional round of promotions."). The same is true of the order in *North Carolina*, No. 5:12-cv-557, slip op., which applies no rationale for the district court's thinking. The Court finds none of these cases helpful, let alone persuasive or controlling.

*Finally*, the United States cites *N.A.A.C.P. v. Donovan*, No. CIV.A.78-850, 2009 WL

792301 (D. Mass. Mar. 17, 2009), to support its argument that this Court should grant the modification because it is a joint proposal of the parties. *See* ECF No. 53 at 1–2. In *N.A.A.C.P.*, the Massachusetts district court had apparently previously entered joint modifications of a consent decree without issuing an opinion and, presumably, without applying Rule 60(b). 2009 WL 792301, at *2. However, the court also expressly noted that it "maintains jurisdiction to exercise power to 'modify its decree in light of changed circumstances,' a power reflected in Fed. R. Civ. P. 60(b)(5)" but "can make modifications to consent decrees only on a showing of 'a significant change in circumstances' " and "[t]o the extent that NAACP requests further modifications to the Consent Decree, [the court] will evaluate such requests under the demanding standard outlined in" Rule 60(b)(5). *N.A.A.C.P.*, 2009 WL 792301, at *7. As such, to the extent this opinion—which does not discuss at all the circumstances of the prior joint motions to modify—is instructive, it is that it emphasizes the important role of Rule 60(b)(5).

The United States further contends that the cases the Coalition cites are inapposite because they involved single-party motions for modification. *See* ECF No. 57 at 1. Rule 60(b), however, draws no distinction between single-party and joint motions. *See generally* Fed. R. Civ. P. 60(b). By its terms, Rule 60(b) provides the governing framework for all post-judgment motions to modify or terminate judgments. The Parties' contrary arguments fail to provide a cogent standard and would undermine the finality of judgments. *See Paul Revere Variable Annuity Ins. Co. v. Zang*, 248 F.3d 1, 5 (1st Cir. 2001) ("Rule 60(b) relief is extraordinary

relief reserved for exceptional circumstances, given the countervailing interest in the finality of such orders." (quotation modified)). The Court will not read into the Federal Rules a requirement that the Rule itself does not impose. With respect to the Settlement Agreement's language, it, if anything, supports heightened scrutiny by the Court when asked to approve—or decline—proposed modifications. *See* ECF No. 20-1 at XIV.G. ("This Agreement may be modified only by consent of the Parties in writing, signed by both Parties and approval of the Court ....."). The requirement of court approval cannot be read as a mere formality; otherwise, it would serve no purpose, and the Parties' requests would be subject only to rote ratification. That interpretation would also conflict with the Agreement's separate provision permitting automatic extensions of deadlines "by mutual written consent [of the Parties] *without* Court approval." *Id.* (emphasis added).

**\*6** "In construing a settlement subsequently adopted by a court, [the court] appl[ies] the same basic rules that govern the interpretation of ordinary contracts." *Nault v. United States*, 517 F.3d 2, 4 (1st Cir. 2008). And general contract principles "avoid any interpretation that renders a provision meaningless." *Zhao v. CIEE Inc.*, 3 F.4th 1, 5 (1st Cir. 2021) (quotation modified). Reading the Agreement to erase the distinction between modifications requiring court approval and those granted automatically would render the approval requirement superfluous—an outcome contract law does not permit.

In sum, I do not adopt the Parties' reasoning that, in essence, the Agreement requires Court

approval on joint motions for modification without any analysis or workable standard of review.

*2. Goals of the Agreement*

The Parties' second principal argument is that the requested modifications should be granted because they do not disturb the Agreement's original "goals"—namely, "to enable children with behavioral health disabilities to receive services at home if consistent with their family's wishes and appropriate to their needs." ECF No. 53 at 5; ECF No. 57 at 5–7. The Coalition responds that the Parties offer no meaningful framework for ascertaining whether the proposed modifications in fact align with those goals, rendering the argument amorphous. *See* ECF No. 55 at 6.

The Parties cite no caselaw for the claim that a court may modify a settlement agreement—after it has been finalized and incorporated into a dismissal order—simply because the proposed *modifications* align with the agreement's goals. Rather, the caselaw indicates district courts evaluate whether the goals of a consent decree have been achieved when facing a motion for *termination* of an agreement. *See, e.g., Warren*, 2025 WL 974068, at *5 ("A court considering termination of a consent decree in light of performance of its specific terms 'must also consider the general goals of the decree which the terms were designed to accomplish.' " (quoting *Jeff D. v. Otter*, 643 F.3d 278, 288 (9th Cir. 2011)); *Lab./Cmty. Strategy Ctr. v. L.A. Cnty. Metro. Transp. Auth.*, 564 F.3d 1115, 1123 (9th Cir. 2009) (upholding district court's decision to terminate consent decree because "the decree accomplished its essential purposes and the situation improved greatly"); *United States v. City of Los Angeles*, No. 2:00-cv-11769, slip op. at 19 (C.D. Cal. July 17, 2009), Dkt. No. 416 (granting parties' motion to wind down a consent decree because "the decree accomplished its essential purposes" and L.A. had substantially complied with the decree (quoting *Metro. Transp. Auth.*, 564 F.3d at 1123)); *United States v. Essa Bank & Tr.*, No. CV 23-2065, 2025 WL 2087776, at *5 (E.D. Pa. July 23, 2025) ("Weighing any alleged hardship to [defendant] against the benefits of continued enforcement and considering whether the Order's objectives have been achieved, termination of the Consent Order is not warranted."). District courts have considered a goal-oriented perspective in motions to terminate because termination is usually predicated on "substantial compliance" with the terms of the decree. "Substantial compliance," in turn, does not require "perfection," but does require the district court to conclude that the decree " 'has served its purpose and will not be extended.' " *Metro. Transp. Auth.*, 564 F.3d at 1119. If anything, extending that concept to motions for modification would cut against the requested relief here, because the Parties have only just begun to implement the Settlement Agreement. Thus, even if a standard governing termination of a consent decree were applicable, it is plain that the Parties are not yet in substantial compliance with the Agreement.

**\*7** To the limited extent that courts have considered the issue in terms of modification, they still have required the moving party to " 'offer[ ] substantial evidence that ...

the modification was essential to attaining that goal [of the original consent decree].' " *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 381 n.6 (1992) (quoting *N.Y. State Ass'n for Retarded Child. Inc. v. Carey*, 706 F.2d 956, 969 (2d Cir. 1983)). The Parties have not presented such substantial evidence here. Indeed, there is no evidence that reducing the frequency of reporting, trainings, and community outreach and removing the Independent Reviewer will do anything to facilitate the State's compliance with the Agreement, and may in actuality make it harder to ascertain whether compliance is being achieved. Therefore, the Court disagrees both with the Parties' contention that modification should be granted if it aligns with the Agreement's goals and the concept that these current modifications, without more evidence, actually further the Agreement's goals of protecting Maine's children.

### 3. Application of *Rule 60(b)*

Because I find the Parties' arguments to apply other standards unavailing, I turn to the question of whether and to what extent *Rule 60(b)* applies to this joint motion to modify the Settlement Agreement.

*Federal Rule of Civil Procedure 60(b)(5)* governs modifications of a court's final judgment and permits a district court to relieve a party from a final order or judgment on grounds of: "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence ...; (3) fraud ... by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief." *Fed. R. Civ. P. 60(b)*. *Rule 60(b)(5)* generally applies to requests to modify federal consent decrees and allows for modification if the moving party makes a showing of a "significant change in circumstances." *Rufo*, 502 U.S. at 383; *see also BLOM Bank SAL v. Honickman*, 605 U.S. 204, 214 (2025) ("It is *Rule 60(b)*'s standard—and *only Rule 60(b)*'s standard—that applies when a party seeks relief from final judgment." (emphasis in original)). However, there is a dearth of caselaw in the First Circuit indicating whether *Rule 60(b)(5)* similarly applies to modifications of court orders of dismissal that retain jurisdiction and attach settlement agreements such as the one at issue here.

Ultimately, as I must, I turn to the Supreme Court and First Circuit to see what controlling precedent I can glean. In *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Services*, 532 U.S. 598 (2001), upon which the First Circuit's reasoning in *Aronov* is predicated, the Supreme Court explained that consent decrees and private settlements tend to be mutually exclusive. The *Buckhannon* Court wrote, "Private settlements do not entail the judicial approval and oversight involved in consent decrees. And federal jurisdiction to enforce a private contractual settlement will often be lacking unless the terms of the agreement are incorporated into the order of dismissal." *Id.* at 604 n.7. What distinguishes a consent decree from a private settlement is that "[t]he parties to a consent decree expect

and achieve a continuing basis of jurisdiction to enforce the terms of the resolution of their case in the court entering the order." *Smyth ex rel. Smyth v. Rivero*, 282 F.3d 268, 280 (4th Cir. 2002), *overruled on other grounds by Stinnie v. Holcomb*, 77 F.4th 200 (4th Cir. 2023).

Here, the Court maintains a "continuing basis of jurisdiction," *id.*, over the Settlement Agreement until its expiration by the express terms of the Dismissal Order, *see* ECF No. 20 at 1 ("[T]he Court specifically retains jurisdiction to enforce the Parties' Settlement Agreement ...."). The language of the Agreement and the Dismissal Order envision an ongoing role for this Court to oversee the enforcement of the Agreement until its expiration or termination. *See Kokkonen*, 511 U.S. at 381. In reaching their original decision to settle in December 2024, the Parties apparently agreed to submit themselves to the continuing jurisdiction of this Court. They could have elected to remove the provision that requires the Court's approval for all future modifications, or they could have moved for dismissal under Federal Rule of Civil Procedure 41(a)(1)(ii), "which does not by its terms empower a district court to attach conditions to the parties' stipulation of dismissal." *Kokkonen*, 511 U.S. at 381. But they did not do so.

**\*8** Because "[t]he need for court approval of revisions in the terms of the Agreement closely resembles the process for amending a conventional consent decree," *Hutchinson*, 636 F.3d at 11, the Court concludes that the Order of Dismissal here retaining jurisdiction and attaching the Settlement Agreement is akin to a consent decree and Rule 60(b) governs

the Parties' motion for modification. *See also id.* at 11 n.3 ("It is the presence of *continuing judicial oversight* that pushes the ball across the goal line and thus suffices to give a settlement the required judicial imprimatur." (emphasis in original)). This decision accords with numerous other federal courts which have found that modifying a settlement agreement attached to an order of dismissal for which a court has retained jurisdiction is a modification of a court order governed by Rule 60(b). *See, e.g.*, *Kelly v. Wengler*, 822 F.3d 1085, 1098 (9th Cir. 2016); *Keeling v. Sheet Metal Workers Int'l Ass'n, Local Union 162*, 937 F.2d 408, 410 (9th Cir. 1991); *United States v. Gov't of Guam*, No. CV 02-00022, 2015 WL 13776540, at *4–5 (D. Guam Mar. 25, 2015); *In re Black Farmers Discrimination Litig.*, 950 F. Supp. 2d 196, 199–201 (D.D.C. 2013); *Brown v. Dalton*, 312 F.R.D. 239, 242–44 (D.D.C. 2015); *Carter v. City of Charleston, S.C.*, 13 F. App'x 135, 138 (4th Cir. 2001).

*4. Required Showing Under Rule 60(b)(5)*

Because Rule 60(b)(5) applies, I now address the United States' argument that a more "flexible" 60(b) standard governs in this context. *See* ECF No. 57 at 5–6.

In proceeding under Rule 60(b)(5), courts, including in this district, generally apply what is known as the *Rufo* standard, which requires a showing of a "significant change" in facts or law rendering compliance "onerous," "unworkable," or "detrimental to the public interest." *Rufo*, 502 U.S. at 384; *see Consumer Advisory Bd. v. Glover*, 151 F.R.D. 496, 499 (D. Me. 1993) (applying the *Rufo* standard where

the parties allege there was a substantial change in facts or law). "If the moving party meets this standard, the court should consider whether the proposed modification is suitably tailored to the changed circumstance." *Rufo*, 502 U.S. at 383. As the Supreme Court has recently admonished, courts must interpret Rule 60(b) strictly. *BLOM Bank*, 605 U.S. at 212 (" 'This very strict interpretation of Rule 60(b) is essential if the finality of judgments is to be preserved.' " (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005))). The party—or in this instance, the parties—seeking the modification bears the burden of establishing that revision of the judgment is warranted. *See Rosie D. by John D. v. Baker*, 958 F.3d 51, 56 (1st Cir. 2020).

The United States argues that if this Court is to apply Rule 60(b) to the motion to modify the settlement agreement, the Proposed Modified Agreement meets the *Rufo* standard for three reasons: First, the proposed changes are minor and thus the strict Rule 60(b) showing is not necessary, ECF No. 57 at 2; second, a "flexible" standard should apply because the Parties moved jointly to modify, ECF No. 53 at 2; and third, significant deference should be afforded to government officials and the government (on both sides) is moving for the modification in this instance, *id.* The Coalition rejoins respectively that, first, the proposed modifications are not minor because "they will likely cause eligible children to be excluded from the agreement's benefits, delay access to necessary services, and erode accountability," ECF No. 37 at 2; second, *Rufo* does not distinguish between single-party and joint motions, ECF No. 55 at 5–6; and third, the parties moving for modification should

be awarded no deference in carrying their burden for modification, irrespective of their government status, *see id.* at 4.

**\*9** In the first instance, *Rufo* establishes the Rule 60(b) "showing is not necessary to implement minor changes in extraneous details that may have been included in a [consent] decree (*e.g.*, paint color or design of a building's facade) but are unrelated to remedying the underlying constitutional violation." 502 U.S. at 383 n.7. The color of a building is certainly "extraneous" to the "vindication of a constitutional right." *Id.* But the same cannot be said for changing the State of Maine's reporting requirements and frequency, training requirements, and removing the oversight mechanisms of the Independent Reviewer. Rather, those modifications are intrinsic to the nature of the Agreement at issue, which seeks to protect the rights of underprivileged children under the Americans with Disabilities Act.

Similarly, the United States' claim that courts have applied a "relaxed" Rule 60(b) standard in cases where there is a joint motion—rather than a motion by a single party—does not align with the caselaw it cites. *See* ECF No. 57 at 2–3. In *Bureau of Consumer Financial Protection v. Townstone Financial, Inc.*, 350 F.R.D. 32 (N.D. Ill. 2025), the district court declines to apply a relaxed standard for multiple reasons, chief among them that there was a substantial public interest in the finality of the judgment because the "alleged wrongdoing affected the [constitutional rights of the] public." *Id.* at 37. And although Seventh Circuit precedent indicated in the past that some courts had applied a more relaxed standard to joint motions, the *Townstone* court noted "[w]hether

courts should continue doing so on joint motions is debatable, in light of the Supreme Court's recent decision [in *BLOM Bank*], in which it held that a 'very strict interpretation of Rule 60(b),' that is, only applying it in extraordinary circumstances, 'is essential if the finality of judgments is to be preserved.' " *Id.* at 37 n.6 (quoting *BLOM Bank*, 605 U.S. at 213).[5] This line of reasoning is compelling, particularly given the Settlement Agreement in this case involves highly complicated medical issues which were the subject of extensive negotiations between the Parties in service of the original settlement. If the public interest in finality were ever to weigh heavily in a case, it certainly would do so here where children's legal, constitutional, and medical rights are at stake.

The United States' third argument is that "federalism concerns counsel in favor of deferring to the Parties' interests" as government officials. ECF No. 53 at 5. But its argument puts the cart before the horse. In *Rufo*, the Supreme Court stated "[n]o deference is involved in this threshold inquiry" of determining whether the moving party has borne its "burden of establishing that a significant change in circumstances warrants modification of a consent decree." 502 U.S. at 392 n.14. Only "once a court has determined that a modification is warranted" should the "principles of federalism and simple common sense require the court to give significant weight to the views of the local government officials who must implement any modification." *Id.* The Court is thus required to first ascertain whether the moving parties have met their burden for modification before deference can be given. The Court cannot

relax the Rule 60(b) standard as applied to a motion to amend merely because it is advanced by the government. To do otherwise would contravene all the cases where courts have applied the full strictures of Rule 60(b) even when the government is the moving party. *See, e.g.*, *Essa Bank*, 2025 WL 2087776, at *1 (applying the full *Rufo* standard under Rule 60(b) to United States' motion to terminate); *Warren*, 2025 WL 974068, at *6 (applying the "standard applicable to requests to modify a consent decree" under Rule 60(b) and *Rufo* to city government's motion to modify); *Rufo*, 502 U.S. at 378 (applying the heightened standard for a showing under Rule 60(b) to government official's motion to modify).

**\*10** The United States' citation to *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431 (2004), is similarly faulty. *See* ECF No. 53 at 2. In *Frew*, the Supreme Court weighed whether the Eleventh Amendment precludes enforcement of a federal consent decree which bound state officials to administer a federal program pursuant to federal law. *Frew*, 540 U.S. at 442. Although the Court cautioned that deference should be accorded to state officials "in deciding how best to discharge their governmental responsibilities," *id.*, the Court, as in *Rufo*, explained that such deference occurs only at the second stage of the inquiry: "If the State establishes reason to modify the decree, the court should make the necessary changes; *where it has not done so*, however, the decree should be enforced according to its terms." *Id.* (emphasis added). As the court further explained, the terms of the original consent decree established "a remedy the state officials themselves had accepted when they asked the District Court to approve the decree."

*Id.* at 439. Here, too, the State of Maine agreed to the terms of the original Settlement Agreement when it subjected itself to this Court's continued jurisdiction and oversight for modifications.

In *United States v. City of Los Angeles*, No. 2:00-cv-11769, slip op., another case the United States materially cites in support of its argument, *see* ECF No. 53 at 4–5, the district court considered a joint motion by the City and United States to terminate[6] a consent decree, while community intervenors opposed the request and presented their own motion seeking to extend the decree. *Los Angeles*, slip op. at 2. The district court ultimately granted the parties' motion to terminate. In doing so, it concluded the "Community Intervenors have failed to meet any burden that they may have had of showing 'changed circumstances' (failure to substantially comply) warranting modification, i.e., extension, of the Decree." *Id.* at 18 n.3. The court underscored the same point later, observing that "[b]y the same token, *where circumstances have changed*, the Court may exercise 'the traditional power of a court of equity to modify its decree in light of changed circumstances.'" *Id.* at 26 (quoting *Frew*, 540 U.S. at 441) (emphasis added). *Los Angeles* stands for the same proposition as *Frew* and *Rufo*: the moving party must establish changed circumstances before the Court can appropriately weigh the proposed modification.

Because deference to government officials is warranted only at the second step of the analysis, I must first determine under *Rufo* whether "changed factual conditions make compliance with the decree substantially more onerous" or whether the decree "proves to be

unworkable because of unforeseen obstacles," before approving the requested modifications. *Rufo*, 502 U.S. at 384. "The party seeking modification has the burden of showing 'a significant change either in factual conditions or in law.'" *Ricci v. Patrick*, 544 F.3d 8, 21 (1st Cir. 2008) (quoting *Rufo*, 502 U.S. at 384).

Here, it is not evident that there has been "a significant change either in factual conditions or in law [that] renders continued enforcement detrimental to the public interest" such that modification is appropriate. *Horne v. Flores*, 557 U.S. 433, 447 (2009) (quotation modified). Neither party makes a colorable showing that retaining the Independent Reviewer position is "onerous," "unworkable," or "detrimental to the public interest." *Rufo*, 502 U.S. at 384. The State notes the individual who would have served as the Independent Reviewer will instead assume a newly-created subcontractor role, ECF No. 43 at 6, but that point, if anything, cuts against a conclusion that the Independent Reviewer position, as set out in the original Agreement, is unworkable. And although the United States offers various reasons for the remaining proposed changes, *see* ECF No. 57 at 6–8, those justifications do not appear to rise to the level of a significant change in circumstances—particularly given the Agreement was finalized less than nine months prior to the motion to modify. In fact, the United States provides no substantive rationale for why these changes must be made now, rather than at the time the original settlement was negotiated. *See Rufo*, 502 U.S. at 385, 383 ("[M]odification should not be granted where a party relies upon events that actually were anticipated at the time it entered into a decree" or "when it is no

longer convenient to live with the terms of a consent decree."). Moreover, the Parties' claim that the State will save money by eliminating the Independent Reviewer position is unconvincing, *see* ECF No. 41 at 6, as other courts have held—and I agree— that "anticipated costs in complying do not constitute a significant change in factual circumstances," *Warren*, 2025 WL 974068, at *10. Thus, the Parties have failed to establish "a significant change either in factual conditions or in law" sufficient to justify modification. *Horne*, 557 U.S. at 447.[7]

 **\*11**   Other courts have likewise rejected "suggest[ions] that a change in administration, by itself, constitutes good cause or offers an equitable reason sufficient to justify modifying the terms of a settlement agreement under Rule 60(b)(5)." *Ctr. for Biological Diversity v. Env't Prot. Agency*, No. 11-CV-00293, 2025 WL 901944, at *8 (N.D. Cal. Mar. 25, 2025). The United States' representations at oral argument that the Government's changed legal position alone should justify modification lacks support in caselaw and, if accepted, would invite endless renegotiation of court-ordered agreements involving the United States. *See id.* ("Were courts to adopt such an approach, it would mean, essentially, that parties could not enter into settlement agreements or consent decrees with an agency of the United States that spanned more than one administration as they could not count on adherence to the terms of the settlement agreement by subsequent administrations.").

Because a relaxed Rule 60(b) standard does not apply and the Parties have not carried their burden to establish a change of circumstances

sufficient to justify modification, the Court cannot reach the second step of deferring to the government officials' positions. Accordingly, the Court finds the Parties have not satisfied the heightened *Rufo* standard and modification is not warranted at this time.

## III. Conclusion

"The voluntary nature of the resolution of this case cannot be overemphasized." *Townstone*, 350 F.R.D. at 39. As the Supreme Court succinctly stated, "There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from." *Ackermann v. United States*, 340 U.S. 193, 198 (1950); *see also Macias v. N.M. Dep't of Lab.*, 300 F.R.D. 529, 566 n.37 (D.N.M. 2014) ("[T]he fact that the movant consented to the obligations from which he is moving for relief, as well as the general policy of promoting settlement and the finality of judgments, support raising rule 60(b)(5)'s bar higher for orders that effectuate a settlement agreement than for orders by judicial fiat."). Here, the Parties seek to alter terms that were plainly bargained for and incorporated into the original Settlement Agreement. Absent a showing of changed circumstances under *Rufo* and given the strong public interest in finality, the Court must deny the Parties' present joint motion to amend.

For the foregoing reasons, the Court **DENIES** the Parties' joint motion to amend the Settlement Agreement without prejudice. ECF No. 31.

**So Ordered.**

Dated this 24th day of November, 2025.

**All Citations**

Slip Copy, 2025 WL 3267693

## Footnotes

1    In its reply in support of the motion to amend, the Parties represent that removing the Independent Reviewer position will save taxpayer dollars and the State will self-report the data to the United States that the Reviewer otherwise would have collected and reported. ECF No. 43 at 6; ECF No. 41 at 6.

2    Fed. R. Civ. P. 41(a)(2) says, "[A]n action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."

3    The Settlement Agreement states it shall terminate six years from its effective date "if the State is in substantial compliance with the Agreement, without further action of the Court," unless otherwise extended or terminated. ECF No. 20-1 at XIII.A.

4    According to the State, the Court did not incorporate the terms of the Agreement into the Dismissal Order. ECF No. 54 at 2. However, "embody[ing] the settlement contract in its dismissal order or ... retain[ing] jurisdiction over the settlement contract" has "the same effect." *Kokkonen*, 511 U.S. at 381–82.

5    Some courts have gone a step further to say that a more stringent standard should apply to dismissal orders than consent decrees. *See Warren*, 2025 WL 974068, at *4 ("It is certainly arguable that a more stringent standard should apply where, as here, defendants seek to modify a settlement agreement incorporated by a dismissal order rather than a consent decree."). In light of my analysis here, I need not address that contention.

6    The court construed the motion to terminate as a motion to amend the decree to apply a wind-down transition agreement, but noted "in the end the characterization does not control the outcome." *Los Angeles*, slip op. at 18 n.3.

7    Rule 60(b)(6) provides another potential framework for modifying the Agreement, which contains a catchall provision providing a remedy for modification for "any other reason that justifies relief," Fed. R. Civ. P. 60(b)(6), and applies only if the other parts of the Rule, including Rule 60(b)(5), do not apply. Rule 60(b)(6) requires an even higher standard than 60(b)(5), and "should only be applied in 'extraordinary circumstances.' " *BLOM Bank*, 605 U.S. at 212 (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988)). If the Parties cannot carry their burden under Rule 60(b)(5), then they cannot meet it under Rule 60(b)(6)'s higher standard.

---

**End of Document**                                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

## <u>CERTIFICATE OF SERVICE</u>

I, Eli Segal, hereby certify that on this date, I caused the foregoing document

to be filed electronically with this Court, where it is available for viewing and

downloading from the Court's ECF system by the Court and all parties.

Dated: December 3, 2025                    By: *<u>/s/ Eli Segal</u>*
                                           Eli Segal