**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff*, v. LAKELAND BANK, *Defendant*. | No. 22-cv-5746 **ORDER** |

**CECCHI, District Judge.**

Before the Court are (1) plaintiff the United States of America's (the "Government")
motion to (a) terminate a consent order between it and defendant Lakeland Bank ("Lakeland") and
(b) dismiss this action with prejudice, ECF No. 9; and (2) New Jersey Citizen Action Education
Fund, Housing Equality Center of Pennsylvania, and National Fair Housing Alliance's (the
"Proposed Amici") motion for leave to participate as amici curiae to oppose the Government's
motion, ECF No. 10; *see* ECF No. 10-2 ("Moving Br."). The Government and Lakeland both
opposed the Proposed Amici's request to participate, *see* ECF Nos. 23 ("Gov't Opp."), 24
("Lakeland Opp."), and the Proposed Amici replied, *see* ECF No. 25 ("Reply"). The Court decides
the Proposed Amici's motion for leave without oral argument. Fed. R. Civ. P. 78(b); L. Civ. R.
78.1(b). For the reasons stated below, the Court will grant the Proposed Amici's motion, direct
them to file their brief on the docket, allow the Government and Lakeland to respond, and
administratively terminate the Government's motion without prejudice pending submission of
further briefing.

**WHEREAS** on September 28, 2022, the Government filed a complaint against Lakeland,
alleging that the bank had discriminated in its "residential mortgage lending." ECF No. 1 ¶ 1.
Specifically, the Government alleged that between 2015 and 2021, Lakeland "engaged in a pattern

or practice of unlawful redlining," "avoided providing home loans and other mortgage services in majority-Black and Hispanic neighborhoods in . . . Newark," and "engaged in acts or practices directed at applicants and prospective applicants that discouraged those living in, or seeking credit to purchase properties in, these neighborhoods from seeking or applying for credit from Lakeland." *Id.* ¶ 4. Based on this alleged discrimination, the Government brought claims under the Fair Housing Act and the Equal Credit Opportunity Act. *Id.* ¶¶ 53–63; and

**WHEREAS** on September 29, 2022, the Court entered a consent order that "resolve[d] all claims . . . filed in [the] Complaint." ECF No. 4 at 1. Through the consent order, Lakeland made several guarantees and agreed to several conditions, including that it would (1) "ensure that it offers and provides all persons with an equal opportunity to apply for and obtain credit, regardless of the demographic composition of the area in which a person lives or the location of the property securing the loan"; (2) "conduct a detailed assessment of Lakeland's fair lending program in the Newark Lending Area"; (3) "provide training to the Relevant Bank Staff and Officials on Lakeland's obligations under ECOA, Regulation B, and the FHA and Lakeland's obligations under this Consent Order"; (4) conduct a "research-based market study to help . . . identify the needs for financial services" in Newark; (5) designate an executive to be responsible for "the Bank's lending in majority-Black and Hispanic census tracts in its Newark Lending Area"; (6) establish a "full-service branch in a majority-Black and Hispanic census track in Newark"; (7) "invest a minimum of $12 million in a loan subsidy fund to increase credit for home mortgage loans, home improvement loans, and home refinance loans for consumers applying for loans in majority-Black and Hispanic census tracts in its Newark Lending Area"; (8) "partner with one or more community-based or governmental organizations that provide the residents of majority-Black and Hispanic census tracts in the Newark Lending Area with services related to credit, financial education,

homeownership, and foreclosure prevention"; and (9) "spend at least $150,000 per year on advertising, outreach, consumer financial education, and credit counseling in the Newark Lending Area." *Id.* at 3, 5–12; and

**WHEREAS** on May 28, 2025, the Government requested termination of the consent order and dismissal of the case with prejudice. ECF No. 9. In support of the motion, which Lakeland did not oppose, the Government "advise[d] the Court that Lakeland Bank ha[d] demonstrated a commitment to remediation and ha[d] reached substantial compliance with the monetary and injunctive terms of the Consent Order." *Id.* at 2; and

**WHEREAS** on June 1, 2025, the Proposed Amici moved for leave to appear as amici curiae. ECF No. 10. The Proposed Amici seek to oppose the Government's motion to terminate the consent order and dismiss the case with prejudice. *See* Moving Br. at 1, 4, 6; and

**WHEREAS** the Court will grant the Proposed Amici's request for leave. "Whether to grant amicus status is within the 'broad discretion of the district court.'" *Granillo v. FCA US LLC*, No. 16-153, 2018 WL 4676057, at *4 (D.N.J. Sept. 28, 2018) (citation omitted); *see Smith v. Chrysler Fin. Co.*, No. 00-6003, 2003 WL 328719, at *8 (D.N.J. Jan. 15, 2003) (noting that "[d]istrict courts have inherent authority to appoint or deny *amici*" and that "there is no governing standard, rule or statute prescribing the procedure for obtaining leave to file an *amicus* brief in the district court" (citation omitted)). In determining whether to grant leave to file an amicus brief, district courts in the Third Circuit are often "guided by the . . . Circuit's application of Federal Rule of Appellate Procedure 29." *Bernard v. Cosby*, No. 21-18566, 2022 WL 3273877, at *1 (D.N.J. Aug. 11, 2022); *see also United States v. Alkaabi*, 223 F. Supp. 2d 583, 592 (D.N.J. 2002). Under Rule 29, leave to participate as amici is appropriate if the movant satisfies "the requirements of (a) an adequate interest, (b) desirability, and (c) relevance." *Neonatology Assocs., P.A. v.*

*Comm'r of Internal Revenue*, 293 F.3d 128, 131 (3d Cir. 2002) (Alito, J.); *see also C.P. v. N.J. Dep't of Educ.*, No. 19-12807, 2019 WL 6907490, at \*2 (D.N.J. Dec. 19, 2019) ("[T]he Court finds, after considering the parties' positions, that *Amici Curiae's* participation in this action would assist the Court, is relevant and desirable, and *Amici Curiae* present an adequate interest in this action, rendering participation appropriate."); and

**WHEREAS** the Proposed Amici satisfy these three requirements.  First, the Proposed Amici have an adequate interest in this litigation.  They are three organizations with long histories of "working to ensure that the housing and lending markets of New Jersey, Pennsylvania, and the [N]ation are free from discrimination."  Moving Br. at 4; *see also id.* at 1–3; Reply at 3.  Neither the Government nor Lakeland dispute this.  *See, e.g.*, Gov't Opp. at 3.  Instead, they make several points on the Proposed Amici's interest, all of which are unavailing.  For instance, Lakeland argues that the Proposed Amici's "partiality militates against admission of their brief."  Lakeland Opp. at 11.  But "this suggestion is contrary to the fundamental assumption of our adversary system that strong (but fair) advocacy on behalf of opposing views promotes sound decision making." *Neonatology Assocs.*, 293 F.3d at 131.  The Government and Lakeland also argue that the Proposed Amici lack a "cognizable 'special interest' in th[is] case."  Lakeland Opp. at 14; Gov't Opp. at 3 ("Movants have not shown that they have a particularized special interest in the parties' negotiation of the term of the Consent Order in this case.").  This argument, however, speaks to Article III standing, which is not required to participate as amici.  *See United States v. Essa Bank & Tr.*, No. 23-2065, 2025 WL 2087776, at \*3 n.3 (E.D. Pa. July 23, 2025) ("While amici must have a special interest in the litigation, they need not satisfy the Article III standing requirements because they are non-parties."); and

4

**WHEREAS** second, the Proposed Amici's participation is desirable, because the current posture of this litigation is atypical.  The Court faces an unopposed motion to terminate a comprehensive consent order, which could have significant consequences.  *See, e.g.*, *id.* at *5.  The Proposed Amici seek to "ensure [that] th[e] Court has a 'complete and plenary presentation of difficult issues so that the [C]ourt may reach a proper decision.'"  Moving Br. at 6–7 (quoting *Liberty Res., Inc. v. Phila. Hous. Auth.*, 395 F. Supp. 2d 206, 209 (E.D. Pa. 2005)).  In particular, they seek to apprise the Court of the consequences of the possible termination of the consent order and thus provide the Court with a more complete view of whether termination is appropriate.  *See id.* at 7.  The Government and Lakeland counter that "the United States adequately represents" any interest that the Proposed Amici have.  Lakeland Opp. at 15; *see* Gov't Opp. at 4 (arguing that the Government "competently represents" the Proposed Amici's interest given its commitment to ensuring fair and equal access to housing).  But this argument fails for two reasons.  First, given that the Proposed Amici seek to oppose the Government's motion, the two parties clearly have conflicting views on the consequences of terminating the consent order.  *See Alkaabi*, 223 F. Supp. 2d at 592 (explaining that whether the amicus's interest is "not represented competently or at all in the case" is relevant to the Court's decision on granting leave to proposed amici).  Second, "[e]ven when a party is very well represented, an amicus [can still] provide important assistance to the court."  *Neonatology Assocs.*, 293 F.3d at 132; and

**WHEREAS** third, the Proposed Amici's brief "discusses matters that are 'relevant to the disposition of the case.'"  *In re Nazi Era Cases Against German Defendants Litig.*, 153 F. App'x 819, 827 (3d Cir. 2005) (quoting *Neonatology Assocs.*, 293 F.3d at 129); *see* ECF No. 10-3.  Neither the Government nor Lakeland actively dispute this.  As such, the Court will grant leave to the Proposed Amici.

Accordingly, **IT IS** on this 22nd day of December 2025;

**ORDERED** that the Proposed Amici's motion for leave to participate as amici curiae (ECF No. 10) is **GRANTED**; and it is further

**ORDERED** that the Proposed Amici shall file their proposed brief (ECF No. 10-3) on the docket by January 5, 2026; and it is further

**ORDERED** that if they wish to file a response brief, the Government and Lakeland (either jointly or individually) shall do so by February 4, 2026; and it is finally

**ORDERED** that the Government's motion to terminate the consent order and dismiss this action with prejudice (ECF No. 9) is administratively terminated pending submission of the aforementioned briefing.

**SO ORDERED**.

*/s/ Claire C. Cecchi*
**CLAIRE C. CECCHI, U.S.D.J.**

6