## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,

        *Plaintiff*,

v.

LAKELAND BANK,

        *Defendant*.

Civil Action No. 2:22-cv-5746-CCC

## BRIEF OF *AMICI CURIAE* IN OPPOSITION TO UNOPPOSED MOTION TO TERMINATE CONSENT ORDER AND DISMISS WITH PREJUDICE

Benjamin Geffen
Daniel Urevick-Ackelsberg*
PUBLIC INTEREST LAW CENTER
2 Penn Center
1500 JFK Blvd., Suite 802
Philadelphia, PA 19102
267-546-1308
bgeffen@pubintlaw.org

Attorneys for Proposed Amici Curiae

*Pro hac vice application to be filed

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................... ii

I.   INTEREST OF *AMICI CURIAE* ...................................................................... 1

II.  INTRODUCTION .............................................................................................. 1

III. FACTUAL BACKGROUND .............................................................................. 2

   A.   The United States files a fair lending action against Lakeland Bank .......... 2

   B.   This Court enters a Consent Order between the United States and
   Lakeland Bank ........................................................................................... 4

   C.   Newark-area residents start benefitting from the Consent Order ............... 6

   D.   The Trump Administration enters an Executive Order and begins vacating,
   terminating or dismissing consent orders ................................................... 7

IV.  LEGAL STANDARD ......................................................................................... 9

V.   ARGUMENT .................................................................................................... 10

   A.   The United States is not entitled to relief under Rule 60(b)(5) ................ 11

   B.   The United States is not entitled to relief under Rule 60(b)(6) ................ 13

VI.  CONCLUSION ................................................................................................. 17

## TABLE OF AUTHORITIES

### Cases

*Agostini v. Felton*,
  521 U.S. 203 (1997)..........................................................................................11

*Argentum Med., LLC v. Noble Biomaterials*,
  No. 3:08-CV-1305, 2014 WL 4351531 (M.D. Pa. Sept. 2, 2014) ............... 10, 16

*Boughner v. Sec'y of Health, Educ. & Welfare*,
  572 F.2d 976 (3d Cir. 1978) .............................................................................1, 9

*Budget Blinds, Inc. v. White*,
  536 F.3d 244 (3d Cir. 2008) ........................................................................ 10, 13

*Clarendon Ltd. v. Nu-West Indus., Inc.*,
  936 F.2d 127 (3d Cir. 1991) ...............................................................................16

*Coltec Indus. v. Hobgood*,
  280 F.3d 262 (3d Cir. 2002) ...............................................................................14

*Devore v. City of Philadelphia*,
  No. 00-3598, 2003 WL 21961975 (E.D. Pa. June 24, 2003)...............................16

*Gonzalez v. Crosby*,
  545 U.S. 524 (2005)..............................................................................................9

*In re Fine Paper Antitrust Litig.*,
  840 F.2d 188 (3d Cir. 1988) ...............................................................................14

*Janssen Prods. v. Lupin Ltd.*,
  No. 10-5954, 2016 WL 1029269 (D.N.J. Mar. 15, 2016)...................................10

*Mayberry v. Maroney*,
  529 F.2d 332 (3d Cir. 1976) ...............................................................................14

*McGuire v. Neidig*,
  No. CV 14-1531, 2017 WL 1653609 (W.D. Pa. May 1, 2017) ...........................10

*Phila. Welfare Rts. Org. v. Shapp*,
  602 F.2d 1114 (3d Cir. 1979) .............................................................................10

*Rufo v. Inmates of Suffolk Cnty. Jail*,
  502 U.S. 367 (1992).................................................................................11, 12, 14

*Satterfield v. Dist. Att'y Phila.*,
  872 F.3d 152 (3d Cir. 2017) ...............................................................................14

*Sawka v. Healtheast, Inc.*,
  989 F.2d 138 (3d Cir. 1993) ...............................................................................13

*Sumitomo Dainippon Pharma Co. v. Emcure Pharms. Ltd.*,
 No. CV 15-280, 2018 WL 2221840 (D.N.J. Mar. 22, 2018) ...............................11

*Sys. Fed'n No. 91, Ry. Emps. Dep't v. Wright*,
 364 U.S. 642 (1961) ........................................................................................12

*Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*,
 576 U.S. 519 (2015) ........................................................................................14

*U.S. Steel Corp. v. Fraternal Ass'n of Steel Haulers*,
 601 F.2d 1269 (3d Cir. 1979) ...........................................................................10

*United States v. Alsol Corp.*,
 620 F. App'x 133 (3d Cir. 2015) .......................................................................13

## Statutes

15 U.S.C. § 1691(a) ..............................................................................................13
15 U.S.C. §§ 1691–1691f ........................................................................................4
42 U.S.C. § 3605(a) ..............................................................................................12
42 U.S.C. §§ 3601–3619 ..........................................................................................4

## Other Authorities

Exec. Order No. 14281, 90 Fed. Reg. 17537 (Apr. 23, 2025) ..................................8
LAKELAND BANK, PROVIDENT BANK, https://www.provident.bank/lakeland (last
 visited June 1, 2025) ........................................................................................2
*Provident Financial Services, Inc. Completes Merger with Lakeland Bancorp, Inc.*,
 PROVIDENT BANK (May 16, 2024), https://www.provident.bank/press-
 releases/provident-financial-services-inc-completes-merger-with-lakeland-
 bancorp-inc ..................................................................................................2

## Rules

Fed. R. Civ. P. 60(b)(1)–(4) ...................................................................................11
Fed. R. Civ. P. 60(b)(1)–(5) .....................................................................................9
Fed. R. Civ. P. 60(b)(6) ...........................................................................................9

## I.  INTEREST OF *AMICI CURIAE*

*Amici Curiae* New Jersey Citizen Action Education Fund, Housing Equality Center of Pennsylvania, and the National Fair Housing Alliance are fair housing organizations that seek to eradicate discrimination and increase opportunity in New Jersey, Pennsylvania, and the nation. Amici submit this memo to the Court to assist it in assessing the consequences of the Unopposed Motion to Terminate Consent Order and Dismiss with Prejudice filed by the United States.

## II.  INTRODUCTION

In 2022, the United States initiated this action, alleging that Lakeland Bank committed pervasive lending discrimination in and around Newark, New Jersey. Shortly thereafter, the parties settled the case through a Consent Order that requires Lakeland to take ongoing steps over five years to help remedy the harm the United States alleged Lakeland caused. *See* Consent Order, ECF No. 4. After less than three years, however, the United States seeks to have the Consent Order terminated and this matter dismissed, seemingly through Rule 60 of the Federal Rules of Civil Procedure. The United States' justification for such a Motion is that Lakeland is thus far living up to its obligations under the Consent Order.

Rule 60 requires more. Relief under Rule 60 is granted only in "exceptional circumstances," *Boughner v. Sec'y of Health, Educ. & Welfare*, 572 F.2d 976, 977 (3d Cir. 1978), none of which have been presented to this Court. This Court should

therefore hold the parties to the terms of the Consent Order to which they voluntarily agreed, require Lakeland to fully remedy the harm its practices allegedly caused, and allow the Newark community to continue to reap the benefit of Lakeland's obligations under the Consent Order for the remainder of its agreed-upon duration. The Unopposed Motion to Terminate Consent Order and Dismiss with Prejudice should be denied.

### III.   FACTUAL BACKGROUND

#### A. The United States files a fair lending action against Lakeland Bank

Lakeland Bank is a bank headquartered in New Jersey with a branch network stretching from throughout New Jersey to parts of Pennsylvania and New York. LAKELAND BANK, PROVIDENT BANK, https://www.provident.bank/lakeland (last visited June 1, 2025).[1] Lakeland offers commercial, consumer, mortgage, and wealth management banking services. Consent Order at 2.

---

[1] Lakeland merged with Provident Financial Services, Inc. in May 2024 and the combined company now operates under the "Provident Bank" name. *Provident Financial Services, Inc. Completes Merger with Lakeland Bancorp, Inc.*, PROVIDENT BANK (May 16, 2024), https://www.provident.bank/press-releases/provident-financial-services-inc-completes-merger-with-lakeland-bancorp-inc. For ease of reference, *Amici* will continue to refer to Lakeland Bank in this brief.

The United States began investigating Lakeland in 2021, alleging that it engaged in a pattern or practice of unlawful redlining[2] from 2015 until at least 2021 by avoiding "providing home loans and other mortgage services in majority-Black and Hispanic neighborhoods in the Newark, NJ-PA Metro Division." Compl. ¶ 4, ECF No. 1. During that period, Lakeland engaged in acts or practices directed at applicants and prospective applicants in those neighborhoods that discouraged them from applying for credit from Lakeland. *Id.*

For example, according to the Complaint, Lakeland maintained all of its Newark Metro Division ("MD") branches outside of majority-Black and Hispanic neighborhoods, created "an assessment area within the Newark MD that excluded the majority-Black and Hispanic neighborhoods in Essex, Somerset, and Union counties, . . . largely exclude[d] majority-Black and Hispanic neighborhoods from its marketing and outreach efforts," and assigned no loan officers at these branches to target customers within majority-Black and Hispanic neighborhoods. Compl. ¶¶ 5, 29. Additionally, "walk-in" residential mortgages services were not available in majority-Black and Hispanic neighborhoods in the Newark Lending Area. Compl. ¶ 30.

---

[2] "Redlining" is defined by the United States as occurring "when lenders deny or discourage applications by avoiding providing loans and other credit services in neighborhoods based on the race, color, or national origin of the residents of those neighborhoods." Compl. ¶ 3.

As a result, Lakeland "generated disproportionately low numbers of loan applications and home loans from majority-Black and Hispanic neighborhoods in the Newark MD compared to similarly-situated lenders." Compl. ¶ 5. From 2015-2021, only 4.7 percent of Lakeland's reportable mortgage loan applications within the Newark Lending Area came from individuals seeking credit for properties located in majority-Black and Hispanic census tracts, compared to 25 percent for Lakeland's peers. Compl. ¶ 43. Lakeland was aware of its redlining risk as far back as 2015, but "failed to conduct meaningful outreach or marketing directed toward borrowers within majority-Black and Hispanic neighborhoods." Compl. ¶¶ 36, 38.

Based on its investigation, the United States filed this case against Lakeland on September 28, 2022, alleging that Lakeland's actions violated the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601–3619, and the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691–1691f, which collectively prohibit creditors from discriminating on the basis of race, color, or national origin in housing and lending.

**B. This Court enters a Consent Order between the United States and Lakeland Bank**

Shortly after the United States filed this case, the parties reached a settlement agreement, which was memorialized in a final Consent Order entered by this Court on September 29, 2022. Among other obligations, the Consent Order requires Lakeland to:

- Permanently stop engaging in discriminatory practices that violate the FHA or ECOA and Regulation B, Consent Order § III(A), ¶ 1;

- Train relevant employees about their obligations under the Consent Order, *id.* ¶ 9;

- Have a "Community Development Officer" be designated to monitor Lakeland's compliance with fair lending laws, *id.* ¶ 17;

- Establish and maintain a full-service branch in a majority-Black and Hispanic census tract in Newark, New Jersey, and maintain a second full-service branch in a majority-Black and Hispanic census tract in the Newark Lending Area, *id.* ¶ 19;

- Assign mortgage loan officers to solicit mortgage applications in majority-Black and Hispanic census tracks in the Newark area, *id.* ¶ 22;

- Invest a minimum of $12 million in a loan subsidy fund to increase credit for consumers applying for loans in majority-Black and Hispanic census tracts in its Newark Lending Area, *id.* ¶ 23;

- Spend at least $400,000 in partnership with one or more community-based or governmental organizations to provide Newark residents with financial education, foreclosure prevention, and other services, *id.* ¶ 27;

5

- Spend at least $150,000 annually on advertising, outreach, consumer financial education, and credit counseling in the Newark Lending Area, create a plan detailing how those funds would be spent, and then annually evaluate the plan to better assist residents in obtaining credit, *id.* ¶¶ 30–32; and

- Develop a consumer education program "to provide information, training, and counseling services about consumer finance to individuals in majority-Black and Hispanic census tracts in the Newark Lending Area." *Id.* ¶ 38.

The requirements of the Consent Order, including this Court's jurisdiction, extend through September 28, 2027. *Id.* ¶¶ 50, 63.

### C. Newark-area residents start benefitting from the Consent Order

On the ground, the Consent Order has started—but has not come close to finishing—delivering benefits to Newark-area residents. For example, as explained by Leila Amirhamzeh, Director of Community Reinvestment at New Jersey Citizen Action Education Fund, Lakeland has hired loan officers to solicit applications for the Consent Order's loan subsidy fund; has conducted advertising and outreach to impacted communities; has partnered with local organizations to provide services promoting affordable housing, wealth creation, and asset preservation; and has

started making mortgages through the Consent Order's loan subsidy fund. *See* Amirhamzeh Decl., attached as Ex. B.

Still, many of the benefits of the Consent Order have yet to be fully realized. For example, the Consent Order required Lakeland to attempt to open and maintain a full-service bank branch in Newark by April 2024. *See* Consent Order ¶ 20. While that timeline was not met, the branch is now scheduled to open in the Ironbound neighborhood of Newark on *Tuesday*, June 3, 2025. Amirhamzeh Decl. ¶ 6. It then must stay open for at least two more years under the terms of the Consent Order. Consent Order ¶ 20.

Similarly, Lakeland's loan subsidy fund remains available for Newark residents. Amirhamzeh Decl. ¶ 10. Lakeland must provide more than two years of additional housing counseling and other financial services to Newark MD residents and continue its advertising and outreach efforts. Consent Order ¶¶ 27-41. Lakeland's loan officers must also continue to solicit loan applications from majority-Black and Hispanic census tracts. Consent Order ¶ 22. In sum, more than two years of comprehensive work to undo the vestiges of redlining remains mandated by the Consent Order.

### D. The Trump Administration enters an Executive Order and begins vacating, terminating, or dismissing consent orders

On April 23, 2025, the Trump Administration issued an executive order entitled "Restoring Equality of Opportunity and Meritocracy," which described

"disparate-impact liability" as a "key tool" of a "pernicious movement" which seeks "to transform America's promise of equal opportunity into a divisive pursuit of results preordained by irrelevant immutable characteristics, regardless of individual strengths, effort, or achievement." Exec. Order No. 14281, 90 Fed. Reg. 17537 (Apr. 23, 2025). The Executive Order requires, within ninety days of its issuance, that "all agencies shall evaluate existing consent judgments and permanent injunctions that rely on theories of disparate-impact liability and take appropriate action with respect to such matters consistent with the policy of this order." *Id.*

In recent days, the United States has started filing motions to terminate fair lending consent orders in the Third Circuit. First, on May 23, 2025, it filed a motion to terminate a fair lending consent order in the Eastern District of Pennsylvania. *See Consumer Fin. Prot. Bureau v. Trident Mortg. Co.*, No. 2:22-cv-02936 (E.D. Pa.), ECF No. 9. Next, on May 28, 2025, the United States filed the instant Motion before this Court.

The United States justifies its Motion here, in total, as follows: "Lakeland Bank has demonstrated a commitment to remediation and has reached substantial compliance with the monetary and injunctive terms of the Consent Order. Lakeland has also committed to continuing its disbursement of the loan subsidy fund . . . and to provide the United States confirmation of that disbursement upon completion."

8

Unopposed Motion and Memorandum in Support to Terminate Consent Order and Dismiss with Prejudice, ECF No. 9 ("Mot. to Terminate"). The United States provided no memorandum, no case law, no rules, vague assurances, and no further explanation in support of its Motion. And it provides no explanation as to how Lakeland's obligations will be enforced should this matter be dismissed.

## IV.    LEGAL STANDARD

Federal Rule of Civil Procedure 60(b) allows a party to seek relief from a final judgment outside the normal appellate procedure only "under a limited set of circumstances." *Gonzalez v. Crosby*, 545 U.S. 524, 528 (2005). Those circumstances are encompassed by six enumerated reasons. The first five are specific and allow for relief due to "mistake," "newly discovered evidence," "fraud . . . misrepresentation, or misconduct," where "the judgment is void," and where "applying [the judgment] prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(1)–(5). The sixth is a catch-all provision that allows for relief from a final judgment for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6).

Courts have made clear that the purpose of Rule 60(b) "is to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done." *Boughner*, 572 F.2d at 977. Courts have "cautioned that relief from a judgment under Rule 60 should be granted only in exceptional circumstances." *Id.* These principles apply with equal weight regardless of whether

9

a motion brought under Rule 60(b) is unopposed or filed jointly. *See, e.g.*, *Janssen Prods. v. Lupin Ltd.*, No. 10-5954, 2016 WL 1029269, at *3 (D.N.J. Mar. 15, 2016) (joint motion); *McGuire v. Neidig*, No. CV 14-1531, 2017 WL 1653609, at *1 (W.D. Pa. May 1, 2017) (same); *Argentum Med., LLC v. Noble Biomaterials*, No. 3:08-CV-1305, 2014 WL 4351531, at *1 (M.D. Pa. Sept. 2, 2014) (unopposed motion). And they apply regardless of whether a party seeks a vacatur of a judgment or a modification of one instead. *See, e.g.*, *Budget Blinds, Inc. v. White*, 536 F.3d 244, 246 (3d Cir. 2008) (vacatur); *U.S. Steel Corp. v. Fraternal Ass'n of Steel Haulers*, 601 F.2d 1269, 1274 (3d Cir. 1979) (modification); *Phila. Welfare Rts. Org. v. Shapp*, 602 F.2d 1114, 1119 (3d Cir. 1979) (same).

Rule 60's principles are even more stringent when a court is faced with a Rule 60 motion regarding a consent decree. As the Third Circuit has explained, when parties "made a free, calculated and deliberate choice to submit to an agreed upon decree rather than seek a more favorable litigated judgment, their burden under Rule 60(b) is perhaps even more formidable than had they litigated and lost." *U.S. Steel Corp.*, 601 F.2d at 1274.

## V.    ARGUMENT

In the face of Rule 60(b)'s exacting mandates, the United States presents no case law, no substantive argument, and no change of circumstances at all. In other words, the Third Circuit "sets forth a standard for Rule 60(b) modification of a

consent judgment that [the United States] has failed to recognize, much less satisfy." *Sumitomo Dainippon Pharma Co. v. Emcure Pharms. Ltd.*, No. CV 15-280, 2018 WL 2221840, at *1 (D.N.J. Mar. 22, 2018). The burden belongs to the United States, and it has failed to meet it. The Motion should be denied.

### A. The United States is not entitled to relief under Rule 60(b)(5)

To begin, the United States has not alleged any significant change in factual conditions or law that could justify relief under Rule 60(b)(5).[3] Relief under Rule 60(b)(5) is available where applying the judgment prospectively "is no longer equitable" due to a "significant change . . . in factual conditions or in law." *Agostini v. Felton*, 521 U.S. 203, 215 (1997) (quoting *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 388 (1992)).

The United States has alleged no change in factual conditions. For example, in support of its Motion, the United States claims that Lakeland "has demonstrated a commitment to remediation and has reached substantial compliance with the monetary and injunctive terms of the Consent Order." Mot. to Terminate at 2. It is unclear what the United States considers substantial compliance, particularly given

---

[3] While the Motion is brief, it does not allege, nor seemingly seek relief under, Rule 60(b)(1) through (b)(4). It does not, for example, allege any "mistake," "newly discovered evidence," or "fraud . . . , misrepresentation, or misconduct" that could support relief from the final judgment, nor does it allege that "the judgment is void." Fed. R. Civ. P. 60(b)(1)–(4).

that nearly half of the Consent Order's five years' worth of injunctive terms lie ahead. Regardless, Lakeland substantially complying with an ongoing order so far is not extraordinary—it is precisely what the parties and this Court would have expected when they entered into a consent order, and it does not therefore provide the United States cause for terminating the Consent Order early. *See Rufo*, 502 U.S. at 385 ("Ordinarily, however, modification should not be granted where a party relies upon events that actually were anticipated at the time it entered into a decree.").

Moreover, while Rule 60(b)(5) may provide relief where there has been a subsequent change in law, *see, e.g.*, *Sys. Fed'n No. 91, Ry. Emps. Dep't v. Wright,* 364 U.S. 642, 652–53 (1961) (consent decree should be vacated under Rule 60(b) in light of intervening amendments to the Railway Labor Act), there has been no such change here. The Fair Housing Act ("FHA") continues to include the following prohibition:

> It shall be unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin.

42 U.S.C. § 3605(a). Similarly, the Equal Credit Opportunity Act ("ECOA") continues to contain the following mandate:

> It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction—
>
> (1) on the basis of race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to contract);

15 U.S.C. § 1691(a).

New administrations have discretion to change policy priorities and to interpret and enforce the law differently, but that does not alter duly enacted legislation or otherwise amount to a change in law for these purposes. In sum, because the United States has not—and cannot—point to any intervening change in fact or law, Rule 60(b)(5) provides it no relief.

### B. The United States is not entitled to relief under Rule 60(b)(6)

For similar reasons, the United States cannot meet its burden under Rule 60(b)(6). "Relief under Rule 60(b)(6) may only be granted under extraordinary circumstances where, without such relief, an extreme and unexpected hardship would occur." *Sawka v. Healtheast, Inc.*, 989 F.2d 138, 140 (3d Cir. 1993). Such "extraordinary circumstances rarely exist when a party seeks relief from a judgment that resulted from the party's deliberate choices." *Budget Blinds*, 536 F.3d at 255; *see also United States v. Alsol Corp.*, 620 F. App'x 133, 135–36 (3d Cir. 2015). A party "may wish that it had not made [a] deal, but courts have not looked favorably on the entreaties of parties trying to escape the consequences of their own 'counseled and knowledgeable' decisions." *Coltec Indus. v. Hobgood*,

13

280 F.3d 262, 274 (3d Cir. 2002) (quoting *In re Fine Paper Antitrust Litig.*, 840 F.2d 188, 195 (3d Cir. 1988)).

Furthermore, relief under Rule 60(b) is inherently equitable in nature, so courts must weigh the public interest when considering whether to apply Rule 60(b) to modify or vacate a consent decree. *See, e.g.*, *Rufo*, 502 U.S. at 384. Courts deciding whether to grant a Rule 60(b)(6) motion should consider "the full panoply of equitable circumstances." *Satterfield v. Dist. Att'y Phila.*, 872 F.3d 152, 162 (3d Cir. 2017). Ultimately, a District Court's power under Rule 60(b) is the "discretion to modify a judgment *in the interest of justice*." *Mayberry v. Maroney*, 529 F.2d 332, 335 (3d Cir. 1976) (emphasis added).

No equities would be served by termination and dismissal, in fact, quite the opposite. The public interest would be harmed by the relief sought, starting with the interests of the people in and around Newark in a housing market free from discrimination. *Cf. Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 546–47 (2015) ("The [Fair Housing Act] must play an important part in avoiding the Kerner Commission's grim prophecy that our Nation is moving toward two societies, one black, one white—separate and unequal. . . . The Court acknowledges the Fair Housing Act's continuing role in moving the Nation toward a more integrated society." (citation omitted)).

For example, the United States represents that Lakeland "has reached substantial compliance with the monetary and injunctive terms of the Consent Order." Mot. to Terminate at 2. But compliance with the Consent Order includes two more years' worth of *future obligations* on Lakeland, including an obligation to provide annual fair lending training to its staff; to administer the loan subsidy fund; to spend $150,000 annually on advertising, outreach, consumer financial education, and credit counseling; to provide annual outreach programs; and to provide annual consumer education program seminars.

As Ms. Amirhamzeh explains, these are tangible benefits to the formerly redlined residents of the Newark MD. *See* Amirhamzeh Decl. ¶¶ 4-11. And absent the Consent Decree, nothing requires Lakeland to continue to deliver them. The loan subsidy fund could be terminated. The bank branch Lakeland is opening on Tuesday could close on Wednesday. The loan officers Lakeland is assigning to solicit applications from Newark MD residents could be reassigned at will. The community partnerships could cease. The premature loss of these services and programs would be detrimental to the majority-Black and Hispanic neighborhoods that the United States alleged Lakeland harmed and that the Consent Order was intended to support. Termination of the Order, therefore, would not be in the interest of justice.

15

That there remains important work ahead for Lakeland is made plain by the United States itself, which notes that it still intends to seek "confirmation of . . . disbursement [of the loan subsidy fund] upon completion." Mot. to Terminate at 2. In other words, the United States still believes accordance with at least one term of the Order, and confirmation of that accordance, is important. Left unsaid is why it makes sense to dismiss this matter with prejudice, rendering it impossible for the government to take action should Lakeland fail to comply with that or any other term to which it is currently bound.

In addition to serving the people of Newark, this Motion has broader implications for another critical constituent: the general public. It is not just the parties' interest at stake when seeking relief under Rule 60, but "the public's interest in the integrity of the judiciary." *Argentum Med., LLC*, 2014 WL 4351531, at *3 (denying motion under Rule 60(b)). "As emphasized by the Third Circuit, the Court's 'duty lies not in the direction of an automatic acquiescence to the parties' request, but rather with a deliberate consideration of the policy that will best serve the public good.'" *Id.* (quoting *Clarendon Ltd. v. Nu-West Indus., Inc.*, 936 F.2d 127, 129 (3d Cir. 1991)). This is because "[a] judgment belongs, not only to the litigants, but also to society, as a whole." *Devore v. City of Phila.*, No. 00-cv-3598, 2003 WL 21961975, at *2 (E.D. Pa. June 24, 2003). Nothing the United States has presented demonstrates the public should lose that judgment now.

16

New administrations inevitably mean new priorities, but that does not empower any administration to undo the final judgment this Court entered without meeting the established requirements to do so. The United States has made no showing that it meets the standard under Rule 60(b)(6), and it should therefore be granted no relief.

## VI.    CONCLUSION

The principles of Rule 60(b) counsel against granting the relief sought by the United States. This Court should deny the Motion of the United States.

Dated: June 1, 2025                     Respectfully submitted,

                                        By: /s/ Benjamin Geffen
                                        Benjamin Geffen
                                        Daniel Urevick-Ackelsberg*
                                        PUBLIC INTEREST LAW CENTER
                                        2 Penn Center
                                        1500 JFK Blvd., Suite 802
                                        Philadelphia, PA 19102
                                        267-546-1308
                                        bgeffen@pubintlaw.org

                                        *Attorneys for Amici Curiae*

                                        **Pro hac vice* application to be filed