UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,

                            *Plaintiff*,

        v.

LAKELAND BANK,

                            *Defendant.*

Civil Action No. 2:22-cv-5746-CCC

**UNITED STATES OF AMERICA'S
BRIEF IN SUPPORT OF MOTION TO TERMINATE
AND RESPONSE TO BRIEF OF *AMICI CURIAE***

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division
CARRIE PAGNUCCO
Chief
JENNIFER A. SLAGLE PECK (DC Bar
No. 990596)
Deputy Chief
Housing & Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
150 M Street, NE
Washington, DC 20530
Phone: (202) 514-4713
Fax: (202) 514-1116
jennifer.slagle.peck@usdoj.gov
*Attorneys for the United States of America*

**Table of Contents**

I.    BACKGROUND ............................................................................................. 1

II.   LEGAL STANDARD .................................................................................... 5

III.  THE MOTION TO TERMINATE SHOULD BE GRANTED AS EARLY
      TERMINATION IS SUPPORTED BY BOTH PARTIES, IS AUTHORIZED BY THE
      CONSENT ORDER, AND IS WITHIN THE COURT'S EQUITABLE POWERS ......... 6

IV.   THE MOTION TO TERMINATE SHOULD ALSO BE GRANTED UNDER RULE
      60(b)(5) AS LAKELAND HAS SATISFIED THE JUDGMENT .................................. 9

V.    *AMICI'S* NOTICES OF SUPPLEMENTAL AUTHORITY PROVIDE NO RELEVANT
      BASIS TO DENY THE MOTION TO TERMINATE..................................................... 11

VI.   CONCLUSION................................................................................................ 13

## Table of Authorities

**Cases**                                                                                      **Page(s)**

*Bd. of Educ. v. Dowell*, 498 U.S. 237 (1991)................................................................. 7

*BLOM Bank SAL v. Hickman*, 605 U.S. 204 (2025)........................................... 11, 12

*Bureau of Consumer Fin. Prot. v. Townstone Fin., Inc,*
   No. 20-cv-4176 (N.D. Ill. Jun. 12, 2025) ..................................................... 11, 12

*Consumer Fin. Prot. Bureau v. Trident Mortg. Co., LP*,
   No. 2:22-cv-2936-KNS (E.D. Pa. June 2, 2025) ................................................. 7

*Freeman v. Pitts*, 503 U.S. 467 (1992) ........................................................... 5, 9

*Frew v. Janek*, 780 F.3d 320 (5th Cir. 2015)......................................................... 6

*Halderman v. Pennhurst State Sch. & Hosp.*, 901 F.2d 311 (3d Cir. 1990)................... 7

*Holland v. N.J. Dep't of Corr.*, 246 F.3d 267 (3d Cir. 2001) ............................... 5, 8

*Horne v. Flores,* 557 U.S. 433 (2009) ............................................................ 6, 7

*Inmates of Suffolk Cty. Jail v. Rouse*, 129 F.3d 649 (1st Cir. 1997)............................ 12

*Jeff D. v. Otter*, 643 F.3d 278 (9th Cir. 2011)...................................................... 10

*Peery v. City of Miami*, 977 F.3d 1061 (11th Cir. 2020) ............................. 6, 7, 9, 10

*Pottinger v. City of Miami*, 359 F. Supp. 3d 1177 (S.D. Fla. 2019) ............................ 10

*Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242 (3d Cir. 1951)........................... 6

*United States v. Ameris Bank*,
   No. 3:23-cv-01232-MMH-LLL (M.D. Fla. May 20, 2025) ..................................... 7

*United States v. Bancorpsouth Bank*,
   No.1:16-cv-00118-MPM-DAS (N.D. Miss. Jan. 27, 2020) ..................................... 7

*United States v. Cadence Bank, N.A.*,
   No. 1:21-CV-03586-JPB (N.D. Ga. May 29, 2025)............................................. 7

*United States v. City of Miami*, 2 F.3d. 1497 (11th Cir. 1993) ................................. 9

*United States v. ESSA Bank*,
   No. 2:23-cv-02065-MMB (E.D. Pa. July 23, 2025)........................................ 7, 11

*United States v. First Merch. Bank*,
   No. 1:19-cv-02365-JPH-MPB (S.D. Ind. Dec. 28, 2022) ....................................... 7

*United States v. Maine*, 2025 WL 3267693 (D. Me. 2025)................................ 11, 13

*United States v. Patriot Bank*,
   No. 2:24-cv-02029-TLP-tmp (W.D. Tenn. June 6, 2025)................................... 7, 12

*United States v. Trustmark Nat'l Bank*,
No. 2:21-cv-02664-SHM-act (W.D. Tenn. May 21, 2025) ........................................................ 7

**Statutes**

Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691-1691f ........................................... 1

Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601-3619 ................................................................. 2

**Rules**

Fed. R. Civ. P. 60(b)(5) ............................................................................................................... 5

Plaintiff, United States of America ("United States") hereby files its response to the Brief of *Amici Curiae* in Opposition to the United States's Unopposed Motion to Terminate Consent Order and Dismiss with Prejudice [ECF No. 33].

On May 28, 2025, more than two and a half years after this Court entered the Consent Order, ECF No. 4, the United States filed an unopposed motion to terminate the Consent Order and dismiss this action with prejudice. *See* ECF No. 9 ("Motion to Terminate"). In so moving, the United States advised the Court that Lakeland Bank ("Lakeland" or "Bank") had (1) demonstrated a commitment to remediation, (2) reached substantial compliance with the monetary and injunctive terms of the Consent Order, and (3) remained committed to continuing its disbursement of the loan subsidy fund as required by the Consent Order and to provide the United States confirmation of that disbursement upon completion. *Id.* at 2.

*Amici* oppose termination on the sole ground that the Consent Order was proposed for a five-year duration and the Court should hold the parties to that term, regardless of whether the Order has achieved its purpose. This rigid and inflexible standard contravenes the court's inherent authority and the explicit terms of the Consent Order for the parties to seek modifications, as well as Federal Rule of Civil Procedure 60(b)(5)'s recognition that termination of judgments is appropriate where there is substantial compliance and therefore the judgement is satisfied. Under either the terms of the Consent Order itself or the standard under Rule 60(b), the Court should move to terminate the Consent Order and dismiss this action with prejudice, as other courts have done with similar motions, as outlined below.

## I.    BACKGROUND

On September 28, 2022, the United States filed a Complaint alleging that Lakeland violated the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691-1691f, and the Fair

Housing Act ("FHA"), 42 U.S.C. §§ 3601-3619, by engaging in unlawful redlining in the Newark, NJ-PA Metro Division ("Newark MD") as delineated in 2015. ECF No. 1.[1] On the same date, the parties filed a proposed Consent Order with the Court. ECF No. 2.

The Consent Order included provisions typical of redlining resolutions, which are designed to remediate harm to redlined census tracts by facilitating application of a lender's existing business model to those specific tracts. These provisions included Lakeland establishing a new full-service branch in an affected neighborhood in Newark, New Jersey; acquiring or establishing a full-service branch in an affected neighborhood in the Newark MD; hiring additional mortgage loan officers; and investing in community partnerships, outreach, marketing, and advertising of credit opportunities. ECF No. 2 ¶¶ 19, 22, 27. Lakeland also agreed to establish a $12 million loan subsidy fund, which would be used to disburse $15,000 loan subsidies to applicants who could qualify, under Lakeland's existing underwriting standards, for a home loan in the specific redlined census tracts. *Id*. at ¶ 23. The Consent Order also obligated Lakeland to undertake a detailed assessment of its fair lending program; submit a fair lending compliance plan; circulate the Complaint and Consent Order to all employees substantively involved in mortgage lending; conduct fair lending training; conduct an assessment of credit needs in the affected neighborhoods; and appoint a full-time Community Development Officer. *Id*. at ¶¶ 5-18.

On September 29, 2022, the Court entered the Consent Order, which also included a provision that the order may be modified "upon approval of the Court, by motion by any party." ECF No. 4 at ¶54.

---

[1] Redlining occurs when lenders intentionally avoid providing home loans and other credit services in certain neighborhoods based on the race, color, or national origin of a neighborhood's residents. *See, id.*, at ¶3.

Since entry of the Consent Order, Lakeland[2] has fulfilled completely the majority of the Consent Order's requirements and reached substantial compliance with the remaining requirements. In particular, Lakeland has established the new bank branches it was required to establish, hired the required staff, established training programs as required, hosted more outreach programs and consumer education seminars to date than what was required by the Consent Order,[3] conducted all assessments that were required, and created and submitted to the United States all plans outlining how the Bank was going to comply with the Consent Order. In addition, Lakeland has substantially complied with all of its financial obligations under the Consent Order. Lakeland established a $12 million loan subsidy fund and has utilized approximately 65% of the fund to date to provide loan subsidies in the previously redlined tracts. Lakeland has also committed to spending all required monies related to the loan subsidy fund, its community development partnership program, and its advertising, community outreach, and consumer financial education activities.[4] Through these actions, Lakeland has established protocols to ensure ongoing compliance. The only thing left for Lakeland to do is continue to serve all neighborhoods in its market area as required by federal law. Lakeland's submissions to the United States lay out specific plans on how to fulfill the requirements of the Consent Order and Lakeland's successor in interest has represented to the United States – and to the Court – that

---

[2] On May 16, 2024, Provident Bank acquired Lakeland Bank and is the successor entity that assumed the responsibility of the requirements of the Consent Order. *See* ECF No. 4 ¶¶ 57, 60.

[3] Lakeland was required to hold 4 outreach programs each year and 4 consumer education seminars. Lakeland has met, and exceeded, these obligations. For instance, in year three alone, Lakeland's successor in interest: hosted 4 outreach events for real estate brokers and related entities; underwrote and sponsored additional outreach events with 10 community partners; hosted 13 financial literacy workshops; and hosted 11 seminars with HUD certified counseling agencies.

[4] Lakeland has fully committed to spending $400,000 for community development partnerships ($237,500 spent as of Lakeland's third annual report), and $150,000 per year on advertising, outreach, consumer financial education, and credit counseling (completed in full for each year of the compliance period to date).

it will not walk away from its commitments or its ongoing obligation to comply with the FHA and ECOA. *See, e.g.*, ECF No. 24-2 (Correspondence from Provident Bank to the United States, May 28, 2025); Declaration of Roxanne Camejo, ECF No. 24-1 at 6 ("Provident intends to continue spending on its advertising, outreach, consumer financial education, and credit counseling activities in the Newark Lending Area, even if the Court grants DOJ's motion to terminate the consent order.").

On May 28, 2025, the United States filed an Unopposed Motion to Terminate. *See* ECF No. 9. In so moving, the United States advised the Court that Lakeland had (1) demonstrated a commitment to remediation, (2) reached substantial compliance with the monetary and injunctive terms of the Consent Order, and (3) remained committed to continuing its disbursement of the loan subsidy fund required by the Consent Order and providing the United States confirmation of that disbursement upon completion. *Id.* at 2. The United States relied on the Consent Order's explicit provisions permitting the parties to move the court for any modification.

On June 1, 2025, the New Jersey Citizen Action Education Fund, the Housing Equality Center of Pennsylvania, and the National Fair Housing Alliance (together, the "*Amici")* filed a motion seeking leave to participate as *amici curiae* "to assist this Court in assessing the consequences" of the Motion to Terminate. ECF No. 10; ECF No. 10-2 at 1. On June 13, 2025, *Amici* filed a Notice of Supplemental Authority. *See* ECF No. 18. On July 24, 2025, and December 3, 2025, *Amici* filed, respectively, a second and third Notice of Supplemental Authority. *See* ECF Nos. 26, 29.

On December 22, 2025, after receiving briefing by the parties on the *Amici's* motion to participate, the Court granted *Amici's* motion for leave to file their Brief in Opposition and ordered *Amici* to file their brief by January 5, 2026. ECF No. 32. The Court ordered that the

parties file a response, if they wish, by February 4, 2026. *Id. Amici* filed their brief on December 23, 2025. ECF No. 33. The United States hereby files its response in support of the pending Motion to Terminate.[5]

## II.    LEGAL STANDARD

There are two bases for termination of the Consent Order. The first, and upon which the United States's Unopposed Motion to Terminate relied, is the well-settled principle that a court retains the inherent authority to terminate or modify a consent decree as an exercise of that court's equitable power. *See Freeman v. Pitts*, 503 U.S. 467, 487 (1992); *Holland v. N.J. Dep't of Corr.*, 246 F.3d. 267 (3d Cir. 2001). "The essence of a court's equity power lies in its inherent capacity to adjust remedies in a feasible and practical way to eliminate the conditions or redress the injuries caused by unlawful action. Equitable remedies must be flexible if these underlying principles are to be enforced with fairness and precision." *Freeman*, 503 U.S. at 487. Recognizing the need for a flexible response to changing conditions, the parties to this action expressly agreed to – and the Court approved and entered – a Consent Order that permits modification "upon approval of the Court, by motion by any party." ECF No. 4 at ¶54.

Second, Federal Rule of Civil Procedure 60(b)(5) provides that a judgment or consent decree may be modified or terminated if (1) the judgment has been satisfied, released, or discharged, (2) it is based on an earlier judgment that has been reversed or vacated, or (3) applying it prospectively is no longer equitable. Fed. R. Civ. P. 60(b)(5). As Rule 60(b)(5) uses the disjunctive "or," each of the provision's three grounds for relief is independently

---

[5] The Court's December 22, 2025 Order, ECF No. 32, administratively terminated the Unopposed Motion to Terminate, ECF No. 9, pending the briefing schedule that will be completed February 4, 2026. At that point, the United States understands the motion will be fully briefed and ready for the court's ruling.

sufficient and a movant can prevail if any of the grounds apply. *See Horne v. Flores,* 557 U.S. 433, 454 (2009). Courts have uniformly held that Rule 60(b) should be liberally construed to do substantial justice. *See Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 245 (3d Cir. 1951); *Frew v. Janek*, 780 F.3d 320, 327 (5th Cir. 2015). "The rule is broadly phrased and many of the itemized grounds are overlapping, freeing Courts to do justice in hard cases where the circumstances generally measure up to one or more of the itemized grounds." *Frew*, 780 F.3d at 327. A judgment is satisfied if there is substantial compliance with the consent decree. *Peery v. City of Miami*, 977 F.3d 1061, 1075 (11th Cir. 2020) (citing *Frew v. Janek*, 780 F.3d 330–32). Indeed, the Supreme Court has said that if a "durable remedy" has been established, the consent decree should be terminated. *Horne*, 557 U.S. at 450; *Peery*, 977 F.3d at 1075.

III. **THE MOTION TO TERMINATE SHOULD BE GRANTED AS EARLY TERMINATION IS SUPPORTED BY BOTH PARTIES, IS AUTHORIZED BY THE CONSENT ORDER, AND IS WITHIN THE COURT'S EQUITABLE POWERS**

The Motion to Terminate should be granted as (1) a modification of the term is explicitly authorized under the Consent Order, and (2) the authority to approve such a modification is within the Court's inherent equitable powers.

While the Consent Order states that the requirements of the Order "will remain in effect for five years," ECF No. 4 at ¶50, the Consent Order also provides the parties with the flexibility to adjust the term of the Order after it has been entered. Paragraph 54 of the Consent Order provides that modifications to the Consent Order may be made "upon approval of the Court, by motion of any party." ECF No. 4 at ¶54. Given the degree of flexibility provided in paragraph 54, refusing to allow early termination when both parties agree that there has been substantial compliance would deny the parties the benefit of the modification provision as originally

bargained for in the Consent Order. A court should interpret a consent decree as written and should not impose terms that are inconsistent with those agreed to by the parties. *See Halderman v. Pennhurst State Sch. & Hosp.*, 901 F.2d 311, 319 (3d Cir. 1990).

Notably, the United States has previously filed similar motions to terminate in comparable redlining cases and such motions have been routinely and regularly granted. *See*, *e.g., United States v. Patriot Bank*, No. 2:24-cv-02029-TLP-tmp (W.D. Tenn. June 6, 2025); *Consumer Fin. Prot. Bureau v. Trident Mortg. Co., LP*, No. 2:22-cv-2936-KNS (E.D. Pa. June 2, 2025); *United States v. Cadence Bank, N.A.*, No. 1:21-CV-03586-JPB (N.D. Ga. May 29, 2025); *United States v. Trustmark Nat'l Bank*, No. 2:21-cv-02664-SHM-act (W.D. Tenn. May 21, 2025); *United States v. Ameris Bank*, No. 3:23-cv-01232-MMH-LLL (M.D. Fla. May 20, 2025); *United States v. First Merch. Bank*, No. 1:19-cv-02365-JPH-MPB (S.D. Ind. Dec. 28, 2022); *United States v. Bancorpsouth Bank*, No.1:16-cv-00118-MPM-DAS (N.D. Miss. Jan. 27, 2020); *but see United States. v. ESSA Bank*, No. 2:23-cv-02065-MMB (E.D. Pa. July 23, 2025) (denying motion to terminate).

The United States invoked the explicit language of the Consent Order to move for termination because Lakeland achieved the fundamental purpose of the Order, which is to remediate the effects of past lending discrimination and to prevent future discrimination from occurring. A consent order's purpose has been fully achieved where (1) there is current, substantial, good faith compliance with the consent order, and (2) the subject of the order "is unlikely. . . to return to its former ways" in the absence of the consent order. *Bd. of Educ. v. Dowell*, 498 U.S. 237, 247 (1991); *see also Peery*, 977 F.3d at 1075. Where a "durable remedy has been implemented, continued enforcement of the order is not only unnecessary, but improper." *Horne*, 557 U.S. at 450.

Lakeland's performance since entry of the Consent Order demonstrates both substantial, good faith compliance and implementation of a durable remedy making it unlikely Lakeland will resume intentionally avoiding serving all census tracts within its lending market. Under the Consent Order, Lakeland was required to update and enhance internal compliance protocols, take steps to ensure its business model was being used across its market area and did not avoid the affected neighborhoods, establish a loan subsidy fund, and engage in outreach and advertising to facilitate usage of the loan subsidy fund.

Since the Consent Order was entered, Lakeland has completed the required enhancements to its internal compliance protocols; engaged in business generation activities across its footprint, including establishing full-service bank branches staffed with mortgage loan officers; established the loan subsidy fund; and engaged in outreach and advertising of the loan subsidy fund. Lakeland's successful implementation of these steps is evident by the absence of the United States having to move this Court for enforcement and by Lakeland's good faith establishment of infrastructure to ensure compliance with the FHA and ECOA on a going forward basis. In terms of the monetary commitments, Lakeland has already disbursed 65% of the fund and has committed to fully disbursing the rest of the fund. Lakeland's substantial, good faith compliance and commitment to a durable remedy is further evidenced by Lakeland's own representations to this Court that it will continue activities undertaken under the Consent Order even if the Consent Order is terminated early. ECF No 24 at 3-5 (outlining the bank's ongoing commitments).

This Court has the inherent authority to approve proposed modifications agreed upon by both parties. A court's equitable power to modify a consent order is broad, especially where, as here, the order is aimed at remedying discrimination. *See Holland*, 246 F.3d at 282. Given the

remedial goals of such decrees, a court must be free to adjust the terms of a consent order "in a feasible and practical way" and—when appropriate—to withdraw the court's supervision and control when the defendant has achieved a durable remedy. *See, e.g., Freeman*, 503 U.S. at 487-98. The Court should use this authority to grant the Motion to Terminate.

## IV.     THE MOTION TO TERMINATE SHOULD ALSO BE GRANTED UNDER RULE 60(b)(5) AS LAKELAND HAS SATISFIED THE JUDGMENT

Federal Rule of Civil Procedure 60(b)(5) authorizes a court to terminate a consent decree if has been "satisfied" through substantial compliance with the decree's requirements. *Peery*, 977 F.3d at 1075. In evaluating a motion to terminate, a court should begin "by determining the basic purpose of the decree," and then "[i]f there is good-faith compliance, the decree is satisfied and the court may terminate it." *Id.*; *see also United States v. City of Miami*, 2 F.3d. 1497 at 1504 (11th Cir. 1993). As a consent decree is a contract, compliance with the decree is measured in terms of substantial performance, or substantial compliance. *Peery*, 977 F.3d at 1075. Substantial compliance "exists when the consent decree's fundamental purpose has been accomplished, and any deviations from the decree are unintentional and so minor or trivial as not substantially to defeat the object which the parties intended to accomplish." *Id.* (internal quotations omitted).

Termination of the Consent Order is appropriate in light of Lakeland's current, substantial, good faith compliance with the terms of the Order. Central components of this settlement are the establishment of a loan subsidy fund and creation of infrastructure to utilize the fund (*e.g.*, new physical locations to facilitate mortgage lending, advertising the fund, etc.). These steps serve a remedial purpose of addressing past discrimination by increasing the availability of credit to previously redlined census tracts. To distribute the loan subsidy fund, an institution must by necessity extend its marketing, outreach, staffing, and geographical footprint to promote

origination of loans in previously redlined tracts. And as set forth above, Lakeland has established this fund, created infrastructure to serve the affected neighborhoods, and is committed to complete disbursement of the fund, as well as continued advertising, outreach, and consumer education. These facts are in line with what other courts have determined are a durable remedy. For instance, in *Peery v. City of Miami*, the Eleventh Circuit affirmed the termination of a consent decree that required the city to make changes to how it interacted with homeless persons. 977 F.3d at 1076. The district court concluded the defendant reached substantial compliance even though there were allegations the defendant had violated terms of the consent decree, and noted that the defendant's changes to policies and creation of programs ensured compliance would continue after the termination of the consent decree. *Id.*

 *Amici* cite no evidence that Lakeland has, to date, failed to comply with the Consent Order, or that Lakeland will abandon or reverse its remedial efforts once the Consent Order is terminated. Instead, *Amici* argue that the United States should continue to monitor Lakeland's steps until September 2027 simply because that was the term the parties originally contemplated. ECF No. 33 at 7. But it is clear that strict and literal compliance with terms of a consent order is not required to establish substantial compliance. Indeed, in *Peery*, the Eleventh Circuit found substantial compliance existed even where there were alleged violations of the consent decree. 977 F.3d at 1075-76. A party may be found to be in substantial compliance so long as any deviations from provisions of the consent order do not substantially defeat the object which the parties intend to accomplish. *See Jeff D. v. Otter*, 643 F.3d 278, 284 (9th Cir. 2011); *Pottinger v. City of Miami*, 359 F. Supp. 3d 1177, 1197 (S.D. Fla. 2019).

 The five-year term, by itself, is not essential to the fundamental purpose of the Consent Order and *Amici* fail to cite any specific outstanding obligations that are critical to implementing a

durable remedy. The initial five-year term merely represents an estimate of the time that it would take for Lakeland to achieve substantial compliance and fulfill the basic objectives of the Consent Order. As set forth in the Declaration attached to Lakeland's memorandum in opposition to the motion for leave to participate as amici curiae, ECF No. 24-1, Lakeland has already substantially completed the compliance obligations imposed by the Consent Order. *See* Declaration of Roxanne Camejo, ECF No. 24-1. Given Lakeland's substantial compliance and its implementation of a durable remedy, shortening the term would not defeat the objective of the Consent Order, as its central purpose has been fully achieved. Therefore, the Court should grant the Motion to Terminate the Consent Order.

## V.    *AMICI'S* NOTICES OF SUPPLEMENTAL AUTHORITY PROVIDE NO RELEVANT BASIS TO DENY THE MOTION TO TERMINATE

Since filing their original motion, *Amici* filed three notices of supplemental authority. The first notice cites to a recently issued Supreme Court opinion, *BLOM Bank SAL v. Honickman*, 605 U.S. 204 (2025), and an order issued by a U.S. District Court Judge in the Northern District of Illinois in *Bureau of Consumer Fin. Prot. v. Townstone Fin., Inc,* No. 20-cv-4176 (N.D. Ill. Jun. 12, 2025). Neither case has any bearing on the United States's motion in this matter. The second and third notices cite district court decisions that are not binding on this court. ECF No. 26 (citing to *United States v. ESSA Bank*, No. 2:23-cv-02065-MMB, ECF No. 20 (E.D. Pa. July 23, 2025) (denying motion to terminate a consent order)); ECF No. 29 (citing to *United States v. Maine*, 2025 WL 3267693 (D. Me. 2025) (denying motion to amend settlement agreement)).

In this case, the United States seeks early termination because of Lakeland's substantial compliance with the terms of the Consent Order – a fact which distinguishes this case from those where parties have sought to revisit and vacate judgments that have not yet been satisfied. In

their first Notice of Supplemental Authority, *Amici* cite to a recently issued opinion by a district court in *Townstone*, denying the parties' joint motion for relief and vacatur of the stipulated final judgment and order. ECF No. 18-1. *Townstone* is distinguishable from this case because there the parties sought to vacate a stipulated final judgment pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure, arguing that the plaintiff should not have brought the action in the first instance. *Id.* at 14. In this case, the United States is not seeking to vacate the Consent Order, but to terminate it early due to Lakeland's substantial compliance and achievement of the fundamental purpose of the Consent Order. *See Inmates of Suffolk Cty. Jail v. Rouse*, 129 F.3d 649, 662 (1st Cir. 1997) (noting the difference between terminating and vacating a consent order). As such, the Motion to Terminate does not implicate the same concerns regarding the public interest in the finality of judgments that were cited by the court in *Townstone*. ECF No. 11-1 at 15. The other case cited in *Amici*'s first Notice of Supplemental Authority, *BLOM Bank SAL*, 605 U.S. 204, is similarly distinguishable as it involved a motion to vacate a final judgment of dismissal.

    With regard to the second and third notices of supplemental authority, this court is not bound by – and should not follow – the district courts in those matters. While the court in *United States v. ESSA Bank* declined to terminate a redlining consent order before the expiration of the parties' proposed five-year term, many other courts considering similar motions have granted those motions. *See, e.g., United States v. Patriot Bank*, No. 2:24-cv-02029-TLP-tmp, ECF No. 18 (W.D. Tenn. June 6, 2025) (terminating redlining consent order where the bank had reached substantial compliance and was committed to the continued disbursement of the loan subsidy fund).

The court's reasoning in *United States v. Maine* is likewise inapposite. That matter involved modifications to a settlement agreement that was barely seven months old rather than a consideration of whether a consent order has served its purpose and can be terminated without further need for court supervision. Indeed, the court noted repeatedly that the relevant metric in that matter was not whether substantial compliance had been achieved. *See Maine*, 2025 WL 3267693, at *3 (distinguishing cases that involved motions to terminate a consent order). Moreover, both *ESSA Bank* and *Maine* should be weighed against the many other examples of courts using their equitable authority to grant motions to terminate a consent order early. *See supra* Section III (citing cases where motions to terminate have been granted).

## VI.    CONCLUSION

The Court should grant the Motion to Terminate and dismiss this action with prejudice. As nonparties to the Consent Order, *Amici* fail to identify a practical benefit or concrete objective that would be served by obliging the parties to remain bound by a Consent Order after substantial compliance has been reached and a durable remedy has been implemented. For the foregoing reasons, the United States respectfully submits that the Motion to Terminate should be granted.

Respectfully submitted this 4th day of February, 2026.


HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

CARRIE PAGNUCCO
Chief

*/s/ Jennifer Slagle Peck*
JENNIFER A. SLAGLE PECK (DC Bar No. 990596)
Deputy Chief
Housing & Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
150 M Street, NE
Washington, DC 20530
Phone: (202) 514-4713
Fax: (202) 514-1116
jennifer.slagle.peck@usdoj.gov

*Attorneys for the United States of America*

## CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2026, I electronically filed the foregoing via

CM/ECF, causing a copy to be sent to all counsel of record.

<i>/s/ Jennifer Slagle Peck</i>
Counsel for United States