Jehan A. Patterson
D. Jean Veta (*admitted pro hac vice*)
Nikhil V. Gore (*admitted pro hac vice*)
COVINGTON & BURLING LLP
850 Tenth Street NW
Washington, DC 20001
(202) 662-6000
jpatterson@cov.com
jveta@cov.com
ngore@cov.com

*Attorneys for Defendant
Lakeland Bank*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    *Plaintiff*,<br><br>v.<br><br>LAKELAND BANK,<br><br>    *Defendant*. | Case No. 2:22-cv-5746-CCC-SDA |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF THE UNITED STATES' UNOPPOSED MOTION TO TERMINATE CONSENT ORDER AND DISMISS WITH PREJUDICE

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

FACTUAL BACKGROUND............................................................................... 1

ARGUMENT ........................................................................................................ 6

CONCLUSION ..................................................................................................... 9

CERTIFICATE OF COMPLIANCE.................................................................. 10

CERTIFICATE OF SERVICE ........................................................................... 11

## INTRODUCTION

Defendant Lakeland Bank—now succeeded by Provident Bank (the "Bank")—respectfully submits this memorandum in support of the United States' unopposed motion to terminate the Consent Order and dismiss this case with prejudice (ECF 9).

As explained in the Bank's memorandum in opposition to Amici's motion for leave to participate as *amici curiae*, the Department of Justice (the "Department" or the "United States") eight months ago exercised its enforcement discretion to move to terminate the Consent Order. The United States did so because the Bank has substantially complied with the Consent Order and has also made forward-looking compliance commitments. The Bank should not be trapped in a contest of wills between the Department and advocacy groups that oppose its policy priorities—the Bank has no dog in that fight. Prompt termination of the Consent order is thus appropriate and the ongoing delay in termination has caused undue prejudice to the Bank.

## FACTUAL BACKGROUND

On September 28, 2022, the United States filed both a complaint initiating this case and the proposed consent order agreed to by the parties. ECF 1, 2. Then, on September 29, 2022, the Court entered the agreed-upon

consent order (the "Consent Order") to resolve historical concerns about redlining. ECF 4.

The Bank has fulfilled or exceeded the following requirements set forth in the Consent Order:

- Pursuant to Section C, "Fair Lending Training," the Bank: provided a copy of the Complaint and Consent Order to all relevant employees and senior managers and to its Board of Directors, and provided copies of these materials to new hires, ECF 4, ¶¶ 8, 11; submitted the qualifications of the third-party trainer responsible for providing training to the individuals listed in Paragraph 8 of the Consent Order to the United States, *id.*, ¶ 9; submitted the training curriculum to the United States for non-objection, *id.*, ¶ 9; and delivered the training within 30 days of receiving non-objection to the training curriculum and on an annual basis to the individuals described in Paragraph 8, *see id.*, ¶¶ 9-10. *See* Declaration of Roxanne Camejo ("Camejo Decl."), ¶ 6.

- Pursuant to Section D, "Community Credit Needs Assessment," the Bank completed and submitted to the United States, and received non-objection, for: (1) the Community Credit Needs Assessment conducted

by an independent, qualified third-party consultant, ECF 4, ¶¶ 13-14; and (2) the remedial plan, *id.*, ¶ 16. *See* Camejo Decl., ¶ 7.

- Pursuant to Section E, "Community Development Officer," the Bank designated a Senior Vice President/Community Development Officer prior to the Consent Order, ECF 4, ¶ 17. The Bank intends to maintain this position post-termination. *See* Camejo Decl., ¶ 8.
- Pursuant to Section F, "Physical Expansion to Serve Majority-Black and Hispanic Census Tracts," the Bank established the required two full-service branches in majority-Black and Hispanic census tracts in Newark, NJ, and the Newark Lending Area, respectively, ECF 4, ¶ 19. The Newark branch opened on April 23, 2025, and the Newark Lending Area branch was acquired through Lakeland's merger with Provident on May 16, 2024. The Bank assigned 4 mortgage loan officers to solicit mortgage applications in majority-Black and Hispanic census tracts in the Newark Lending Area, with 2 assigned to a physical branch or loan production office located within majority-Black and Hispanic census tracts in the Newark Lending Area, *id.*, ¶ 22. *See* Camejo Decl., ¶ 9.
- Pursuant to Section G, "Loan Subsidy Fund," the Bank has invested $7,725,000, approximately 65% of the required $12 million subsidy as

3

of January 1, 2026, ECF 4, ¶ 23. The Bank has also gone above and beyond the terms of the Consent Order to ensure the success of its loan subsidy commitment. For example, to attract borrowers who qualify for the loan subsidy fund, the Bank has developed a special purpose credit program through which it lends at below-market interest rates. As a result of these efforts, as of January 1, 2026, 515 residential mortgage loans had received support from the loan subsidy fund. The borrowers on these loans receive benefits far in excess of the $15,000 maximum per-loan amount that can be credited against the subsidy fund, *see id.*, ¶ 24. Borrowers currently in the special purpose credit program benefit from an average interest rate reduction of 1.4% below market rate (yielding an estimated average savings per loan of approximately $140,000 over the life of the loan). They can expect an average additional private mortgage-insurance savings per loan of approximately $10,000, bringing the total average savings per loan to more than $150,000. These savings are in addition to the $15,000 down payment and/or closing cost assistance that is credited against the loan subsidy fund. Because of the additional benefits offered by the Bank, under current conditions, the total cost of these loans over 8 years (the

4

average life of a mortgage loan in the Bank's portfolio) will be approximately $77 million. *See* Camejo Decl., ¶ 10.

- Pursuant to Section H, "Community Development Partnership Program," the Bank has delivered funds to Community Development Partners totaling approximately $237,500 of the required $400,000, as of September 30, 2025, ECF 4, ¶27. The Bank has committed to delivering the remaining funds post-termination. *See* Camejo Decl., ¶ 11.

- Pursuant to Section I, "Advertising, Community Outreach, Consumer Financial Education, and Credit Counseling Initiatives," the Bank to date has met its required annual $150,000 spend, ECF 4, ¶ 30. Overall, the Bank has spent $476,816 to date on initiatives pursuant to Section I and intends to continue this effort post-termination. *See* Camejo Decl., ¶ 12.

On May 28, 2025, in recognition of the Bank's "commitment to remediation" and "substantial compliance" with the Consent Order, the United States filed an unopposed motion to terminate the Consent Order and dismiss this case with prejudice. ECF 9. Then, on June 1, 2025, *amici* moved for leave to participate to oppose the United States' motion. ECF 10. Following briefing by *amici* and the parties, on December 22, 2025, the

5

Court granted *amici's* motion, directing *amici* to file their brief in opposition, permitting the United States and the Bank to respond, and administratively terminating the United States' unopposed motion pending submission of further briefing. ECF 32.

## ARGUMENT

As the agency vested with enforcement discretion, *see* 42 U.S.C. § 3614(a); 15 U.S.C. § 1691e(h); *cf. United States v. Wright*, 913 F.3d 364, 373 (3d Cir. 2019) (recognizing "general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan" as factors that the United States is uniquely situated to assess in exercising its prosecutorial discretion), the Department has concluded that continued oversight of the Bank under the Consent Order is unnecessary given the Bank's sustained record of compliance and community-development commitments. *See* ECF 9. The Department has determined that, given the Bank's substantial compliance and commitment to fulfilling the obligations imposed by the Consent Order, continued maintenance of the Consent Order will not meaningfully advance the objectives that the Consent Order was designed to serve. *Id*.

In light of the Department's determination, continued maintenance of the Consent Order inflicts undue prejudice on the Bank that outweighs any benefit to the parties.

First, continued maintenance of the Consent Order subjects the Bank to reputational harm that is not commensurate with the United States' determination that the Bank has remedied the historical concerns underlying this case. Continuation of the Consent Order signals that continued supervision by the Department is necessary to ensure the Bank's compliance with its obligations under the federal fair lending laws. A denial would thus result in reputational harm that would not have existed had the Consent Order simply run its 5-year course: there is a risk of a false impression that the Bank has somehow failed to adequately comply with the order.

Second, continued maintenance of the Consent Order imposes ongoing and unnecessary supervisory, financial, and operational burdens on the Bank. For example, the Consent Order affects how the bank is supervised by banking regulators. *See, e.g.*, FDIC, Consumer Compliance Examination Manual at II-5 ("Examiners start the risk assessment process by describing the institution's … supervisory history," including its "[h]istory of compliance with fair lending laws and regulations.").[1] Moreover, when

---

[1] https://www.fdic.gov/consumer-compliance-examination-manual/entire-manual.

subject to an ongoing enforcement action, the Bank must reassure the market of its compliance posture, including issuing notices and diligence responses to transactional counterparties, preparing investor-relations disclosures, and providing periodic updates to federal and state regulators. See Camejo Decl., ¶ 5. These actions divert resources from the Bank's core operations and do not confer any marginal benefit on the parties or serve to further the Consent Order's objectives.

Third, considerations of equity favor prompt termination of the Consent Order. The United States and the Bank—the only parties to the Consent Order—believe that termination is appropriate. ECF 9, 23, 24. The Department has exercised its enforcement discretion in recognition of the Bank's achievements under the Consent Order and its continued commitments. *See* Camejo Decl., ¶¶ 8, 10-12. Thus, the Consent Order operates solely to the detriment of the Bank without advancing the interest of the parties or the public.

8

## CONCLUSION

For the foregoing reasons, the Bank requests that the Court grant the United States' unopposed motion to terminate the Consent Order and dismiss this case with prejudice.

Given the Department's exercise of enforcement discretion, and prejudice to the Bank under continued maintenance of the Consent Order, the Bank respectfully requests that the Court promptly issue a ruling.

February 4, 2026                                     Respectfully submitted,

*s/ Jehan A. Patterson*
Jehan A. Patterson
D. Jean Veta (*admitted pro hac vice*)
Nikhil V. Gore (*admitted pro hac vice*)
COVINGTON & BURLING LLP
850 Tenth Street NW
Washington, DC 20001-4956
(202) 662-6000
jpatterson@cov.com
jveta@cov.com
ngore@cov.com

*Attorneys for Defendant Lakeland Bank*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this Memorandum in Support of the United States' Unopposed Motion to Terminate Consent Order and Dismiss with Prejudice complies with the requirements of Local Civil Rule 7.2. This Memorandum contains 9 pages of double-spaced text (excluding the table of contents), prepared with 14-point Times New Roman typeface.


DATED:     February 4, 2026         By:    *s/ Jehan A. Patterson*
                                                  Jehan A. Patterson

## CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2026, a copy of this Memorandum in Support of the United States' Unopposed Motion to Terminate Consent Order and Dismiss with Prejudice was served via ECF upon all counsel of record.

DATED: February 4, 2026    By:  *s/ Jehan A. Patterson*
                                              Jehan A. Patterson