Jehan A. Patterson
D. Jean Veta (*admitted pro hac vice*)
Nikhil V. Gore (*admitted pro hac vice*)
COVINGTON & BURLING LLP
850 Tenth Street NW
Washington, DC 20001
(202) 662-6000
jpatterson@cov.com
jveta@cov.com
ngore@cov.com

*Attorneys for Defendant
Lakeland Bank*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>LAKELAND BANK,<br><br>*Defendant*. | Case No. 2:22-cv-5746-CCC-SDA |

### DECLARATION OF ROXANNE CAMEJO

1. I, Roxanne Camejo, declare as follows:

2. I am Senior Vice President – Community Development Officer for Provident Bank, successor in interest of defendant Lakeland Bank ("Provident" or the "Bank") pursuant to a merger completed May 16, 2024. As part of that merger, Provident assumed Lakeland's obligations pursuant to a consent order entered by this Court on September 29, 2022 (the "Effective Date"). *See* ECF 4.

3. I submit this declaration in support of Provident's memorandum in support of the United States' motion to terminate the consent order, ECF 9. This declaration is based on my

personal knowledge and review of business records and information within the knowledge of Provident. If called upon, I could competently testify thereto.

*   *   *

4. I am one of the Provident executives responsible for overseeing the Bank's compliance with the consent order. In that capacity, I am familiar with Provident's actions to implement the requirements of the consent order and have reviewed annual submissions to the Department of Justice (the "DOJ") required under Paragraph 44 of the consent order. Provident's objective has been to fully comply with the consent order and to demonstrate that the Bank has earned the right to exit the order.

5. Because Provident remains subject to the consent order, the Bank must devote substantial resources to reassure the market of its compliance posture, including issuing notices and diligence responses to transactional counterparties, preparing investor-relations disclosures, and providing periodic updates to the Federal Deposit Insurance Corporation, the Bank's primary federal banking regulator, as well as state regulators.

6. <u>Fair Lending Training</u>. Pursuant to Section C of the consent order, the Bank provided a copy of the Complaint and consent order to all relevant employees and senior managers and to its Board of Directors, and provided copies of these materials to new hires; submitted the qualifications of the third-party trainer responsible for providing training to the individuals listed in Paragraph 8 of the consent order to the United States; submitted the training curriculum to the United States for non-objection; and delivered the training within 30 days of receiving non-objection to the training curriculum and on an annual basis to the individuals described in Paragraph 8. *See* ECF 4, ¶¶ 8-11.

7. <u>Community Credit Needs Assessment</u>. Pursuant to Section D of the consent order, the Bank completed and submitted to the United States, and received non-objection, for: (1) the Community Credit Needs Assessment conducted by an independent, qualified third-party consultant; and (2) the remedial plan. *See id.*, ¶¶ 13-16.

8. <u>Community Development Officer</u>. Pursuant to Section E of the consent order, the Bank designated a Senior Vice President/Community Development Officer prior to the consent order. *See id.*, ¶ 17. The Bank intends to maintain this position post-termination.

9. <u>Physical Expansion to Serve Majority-Black and Hispanic Census Tracts</u>. Pursuant to Section F of the consent order, the Bank established the required two full-service branches in majority-Black and Hispanic census tracts in Newark, NJ, and the Newark Lending Area, respectively. *See id.*, ¶ 19. The Newark branch opened on April 23, 2025, and the Newark Lending Area branch was acquired through Lakeland's merger with Provident on May 16, 2024. The Bank assigned 4 mortgage loan officers to solicit mortgage applications in majority-Black and Hispanic census tracts in the Newark Lending Area, with 2 assigned to a physical branch or loan production office located within majority-Black and Hispanic census tracts in the Newark Lending Area. *See id.*, ¶ 22.

10. <u>Loan Subsidy Fund</u>. Pursuant to Section G of the consent order, the Bank has invested $7,725,000, approximately 65% of the required $12 million subsidy as of January 1, 2026. *See id.*, ¶ 23. The Bank has also gone above and beyond the terms of the consent order to ensure the success of its loan subsidy commitment. For example, to attract borrowers who qualify for the loan subsidy fund, the Bank developed a special purpose credit program through which it lends at below-market interest rates. As a result of these efforts, as of January 1, 2026, 515 residential mortgage loans had received support from the loan subsidy fund. The borrowers

on these loans receive benefits far in excess of the $15,000 maximum per-loan amount that can be credited against the subsidy fund. Borrowers currently in the special purpose credit program benefit from an average interest rate reduction of 1.4% below market rate (yielding an estimated average savings per loan of approximately $140,000 over the life of the loan). They can expect an average additional private mortgage-insurance savings per loan of approximately $10,000, bringing the total average savings per loan to more than $150,000. These savings are in addition to the $15,000 down payment and/or closing cost assistance that is credited against the loan subsidy fund. Because of the additional benefits offered by the Bank, under current conditions, the total cost of these loans over 8 years (the average life of a mortgage loan in our portfolio) will be approximately $77 million.

11. <u>Community Development Partnership Program</u>. Pursuant to Section H of the consent order, the Bank has delivered funds to Community Development Partners totaling approximately $237,500 of the required $400,000, as of September 30, 2025. *See id.*, ¶ 27. The Bank has committed to delivering the remaining amount of funds post-termination.

12. <u>Advertising, Community Outreach, Consumer Financial Education, and Credit Counseling Initiatives</u>. Pursuant to Section I of the consent order, the Bank to date has met its required annual $150,000 spend. *See id.*, ¶ 30. Overall, the Bank has spent $476,816 to date on initiatives pursuant to Section I and intends to continue this effort post-termination.

\*   \*   \*

13. The Bank's compliance efforts described above reflect Provident's enduring commitment to the communities it services—a commitment that has defined the Bank since its founding in Jersey City in 1839.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on February 2, 2026 at Hackensack, New Jersey.

*[signature]*

_____
Roxanne Camejo